IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:**<br><br>**1416 EASTERN AVE NE LLC**<br>**945 LONGFELLOW ST NW LLC**<br>**2501 NAYLOR RD SE LLC**<br>**4303-13 WHEELER RD SE LLC**<br>**4263 6TH ST SE APARTMENTS LLC**<br>**4935 NHB AVE NE LLC**<br>**3968 MLK LLC**<br>**4010 9TH ST SE LLC**<br>**2440 S ST SE LLC**<br>**4400 HUNT PL NE LLC**<br><br>　　　　　　**Debtor.** | **Case No. 24-180-ELG**<br>**Case No. 24-181-ELG**<br>**Case No. 24-182-ELG**<br>**Case No. 24-183-ELG**<br>**Case No. 24-184-ELG**<br>**Case No. 24-185-ELG**<br>**Case No. 24-186-ELG**<br>**Case No. 24-187-ELG**<br>**Case No. 24-188-ELG**<br>**Case No. 24-189-ELG**<br><br>**Chapter 11**<br><br>**(NOT JOINTLY ADMINISTERED)** |

**THE UNITED STATES TRUSTEE'S MOTION TO DIRECT THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a) OR, IN THE ALTERNATIVE, TO CONVERT CHAPTER 11 CASES**

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "U.S. Trustee"), by and through his undersigned counsel, moves this Court to direct the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a) or, alternatively, to convert the above-captioned cases to chapter 7, whichever is in the best interests of the creditors and the estate. In support of this motion the U.S. Trustee states as follows:

**JURISDICTION AND VENUE**

1.　　The Court has authority to hear and decide this matter. 28 U.S.C. § 1334.

2.　　This is a core matter. 28 U.S.C. § 157(b)(2)(A).

Kristen S. Eustis
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.s.Eustis@usdoj.gov

3. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.

4. The U.S. Trustee is also a recognized party-in-interest with standing to request conversion of a chapter 11 case, or to request the appointment of a chapter 11 trustee. *See* 28 U.S.C. § 586(a)(8) ("in any case in which the United States trustee finds material grounds for relief under Section 1112 of title 11, the United States trustee shall apply promptly after making that finding to the court for relief"); *see also* 11 U.S.C. § 1104(a).

5. The U.S. Trustee has standing to be heard on the issues raised by this Motion pursuant to 11 U.S.C. § 307.

6. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7. On May 29, 2024, the above-captioned Debtors each filed a petition for relief under chapter 11 of the Bankruptcy Code. Doc. No. 1.

8. To date, none of the Debtors have filed Schedules or a Statement of Financial Affairs.

9. Along with the Petition for 1416 Eastern Ave NE LLC (the "Eastern Ave Debtor"), the Eastern Ave Debtor filed Official Form 204, which is a list of the creditors having the 20 largest claims against the debtor. *See* Doc. No. 1.

10. T.D. Bank is listed as having a total claim in the amount of $897,130.86, the value of the collateral securing the claim is listed at $621,980 and the unsecured portion of the claim is listed as $275,150.86. *See* Doc. No. 1 at p. 8 of 14.

11. Ali Razjooyan signed Official Form 202 attesting under penalty of perjury that he examined the information in Official Form 240 and that he has a reasonable belief that the information is true and correct. *Id.* at p. 7 of 14.

12. Along with the Petition for 945 Longfellow ST NW LLC (the "Longfellow Debtor"), the Longfellow Debtor filed Official Form 204, which is a list of the creditors having the 20 largest claims against the debtor. *See* Doc. No. 1.

13. T.D. Bank is listed as having a total claim in the amount of $4,012,688.64, the value of the collateral securing the claim is listed at $1,650,640.00 and the unsecured portion of the claim is listed as $2,362,048.64. *See* Doc. No. 1 at p. 8 of 14.

14. Ali Razjooyan signed Official Form 202 attesting under penalty of perjury that he examined the information in Official Form 240 and that he has a reasonable belief that the information is true and correct. *Id.* at p. 7 of 14.

15. Each of the ten (10) voluntary petitions were signed on behalf of the Debtors by Ali Razjooyan. Doc. No. 1.

16. On May 29, 2024, proposed counsel for the Debtor, Maurice VerStandig of The VerStandig Law Firm, LLC, provided undersigned counsel with copies of operating agreements and rent rolls for each of the Debtors and their respective properties.

17. The operating agreement of the Longfellow Debtor is effective as of June 1, 2021 and lists Ali Razjooyan as the sole member of that entity. A true and correct copy of the Longfellow Debtor Operating Agreement provided by Debtors' proposed counsel is attached as **Exhibit A**.

18. The operating agreement of the Eastern Ave Debtor is effective as of February 8, 2021 and lists Mitra Dadashzadeh and Sadegh Jafari as its members. A true and correct copy of

3

the Eastern Ave Debtor's Operating Agreement provided by Debtors' proposed counsel is attached as **Exhibit B**.

19. The Eastern Ave Debtor's Operating Agreement has an addendum dated as of January 1, 2024 that provides "As of January 1, 2024, Ali Razjooyan will be named as a managing non-equity member, having the authority to sign on and conduct business activities on behalf of the entity." *See* Exhibit B.

20. On Friday, May 31, 2024, the Eastern Ave Debtor and the Longfellow Debtor filed Verified Motions (i) To Sell Eponymous Real Property; and (ii) For Authority – But Not Obligation – to Assume and Assign all Leases and Executory Contracts (Doc. No. 8) (the "Sale Motions").

21. Concurrently therewith, the Debtors filed motions to expedite the hearing on the Sale Motions, which the Court granted, setting the hearing to consider the Sale Motions for Tuesday, June 4, 2024 at 10:00 a.m.

22. On June 3, 2024, the District of Columbia filed its objections to the Sale Motions.

23. At the June 4, 2024 hearing, proposed counsel for the Debtors elicited testimony from Mr. Razjooyan in support of the Sale Motions.

24. During cross examination, counsel for the District of Columbia, undersigned counsel and counsel for TD Bank, a secured creditor of the Debtors, elicited hours of testimony from Mr. Razjooyan.

25. Mr. Razjooyan testified, among other things, that the contract purchase price with District Housing for 945 Longfellow was $7.6 million and the debt owed to TD Bank on this property was approximate $4 million.

26. He testified that the contract purchase price was a fair price and based on an appraisal that was previously obtained on the Longfellow Debtor's property.

27. He further testified that the contract purchase price for 1416 Eastern Ave was $1.8 million and that the debt owed to TD Bank on this property was approximately $900,000.

28. There was no testimony as to whether the proposed purchase price was fair r how the Eastern Ave Debtor came to list the property at that amount.

29. Mr. Razjooyan initially testified that he had no relationship with District Housing. When questioned further by the Court, Mr. Razjooyan testified that Richard Balles owns District Housing, and that Mr. Razjooyan has a business relationship with him.

30. On cross-examination, Mr. Razjooyan testified as follows:

```
Q. Are you aware that Mr. Balles is associated with a company
called Community Redevelopment Inc.?
A. Yes.
Q. And what is that?
A. I just know it's a publicly traded company.
Q. Um-hum. Do you have any stock in this publicly traded
company?
A. Yes, I do.
Q. When did you acquire that stock?
A. I had entered into a purchase contract with Mr. Balles over
a year ago, where I would be offered cash plus stock for some
of my assets.
Q. What assets?
A. My real estate holdings.
Q. Which holdings?
A. Which ones? A large percentage of my portfolio. The exact
list, I don't know off the top of my head.
Q. Does it include 945 Longfellow?
A. It may. It may, yes.
```

June 4, 2024 Hearing Transcript at p. 68.

31. Mr. Razjooyan continued to give conflicting testimony as to his ownership of stock in Mr. Balles publicly traded company:

5

```
Q. So you agreed to sell these five or six -- these twenty
properties to Mr. Balles. He gave you cash and stock in --
A. He -

Q. -- Community Redevelopment, Inc.?

A. He was supposed to give me cash and stock. I have a stock
certificate, which just hasn't been officially transferred. I
don't have the physical stock. We have an agreement so --
because no -- nothing has changed hands, nothing that -- that
comes --
Q. So he owes you stock in his company?
A. And money, if he was going to move forward with our
original agreement, which he did not.
…

Q. Where are these stock certificates?
A. I don't have them. I don't know.
```

*Id.* at p. 68-71.

32.    Mr. Razjooyan further testified on cross-examination that Jesper Nylen is a business associate of his that was the original borrower for 945 Longfellow during the purchase.

33.    Mr. Razjooyan stated that he acquired Mr. Nylen's interest in 945 Longfellow in 2022 when TD Bank financed a loan. *Id.* at 71:12-20.

34.    Mr. Razjooyan previously testified in December 2021 that he did not know who owned 945 Longfellow, that he dealt with Jesper Nylen in connection with that entity and that his involvement with the property was to consult on design and tenant related issues related to the construction.

35.    Masterpiece Property Management is a property management company that is owned by Mr. Razjooyan.

36.    Masterpiece Property Management loaned at least $100,000 to 2100 15th Street and 101 41st Street (two entities owned and controlled by Jesper Nylen) in the last several months.

6

37. Mr. Nylen testified at the 341 meetings of creditors in the 2100 15th Street and 101 41st Street cases, that these loans were made in an effort to show liquidity in their bank accounts in the entities efforts to refinance those properties. The refinance attempts by those entities were not successful, the monies were repaid to Masterpiece Property Management, and those entities are currently in bankruptcy before this Honorable Court.

38. Following a lunch break, and prior to what all defending parties believed would be closing argument on the Sale Motions, proposed counsel for the Debtors withdrew the Sale Motions. No reasoning for the abrupt withdrawal of the Sale Motions was given.

39. On June 11, 2024, proposed counsel for the Debtors filed motions to withdraw as counsel in all ten cases, citing "reasons mandated by the District of Columbia Rules of Professional Conduct" as its reason for withdrawing in certain (but not all) of the cases[1]. For the remaining cases, counsel states that it believes it contrary to the other Debtors' legal interests for it to continue in representation of the entities for which withdrawal is not mandated.

40. A hearing is scheduled for June 20, 2024 to consider the motions to withdraw as counsel in these cases.

41. As of the date of this Motion, no counsel has substituted their appearance into the case on behalf of the Debtors.

42. As of the date of this Motion, the Debtors have failed to provide proof of insurance on the properties.

43. The Debtors have also failed to provide certain reasonably requested documents to the U.S. Trustee, including proof of insurance and a certificate of insurance with the U.S. Trustee

---

[1] Notably, counsel does not disclose which of the cases his withdrawal is mandated.

Office listed as notification holder, bank accountant statements, proof of opening debtor in possession bank accounts, among other things.

## Argument

Section 1104 of the Bankruptcy Code provides that the court "shall order the appointment of a trustee—for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case…" 11 U.S.C. § 1104(a)(1). Under section 1104(a)(2), the court must order the appointment of a trustee if such an appointment "is in the best interests of creditors, any equity security holders, and other interests of the estate." *Id.* at §1104(a)(2). Section 1112(b)(1), provides that the court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) contains a non-exhaustive list of circumstances which constitute "cause" for dismissal or conversion. *See* 11 U.S.C. § 1112(b)(4).

Here, cause exists to appoint a chapter 11 trustee. Mr. Razjooyan, who manages all ten of the above-captioned Debtors, was not truthful during his testimony before the Court at the June 4, 2024 hearing on the Sale Motions. By way of example, he provided the U.S. Trustee an operating agreement listing Ali Razjooyan as the sole member of 945 Longfellow effective as of June 1, 2024. Yet Mr. Razjooyan testified in December of 2021 and then again at the June 4, 2024 hearing that Mr. Nylen was the owner of 945 Longfellow and that Mr. Razjooyan did not acquire his interest in the entity until sometime in 2022.

8

Additionally, notwithstanding the Longfellow Debtor's contract to purchase its real property for $7.6 million, the Longfellow Debtor listed the value of its real estate property at only $1,650,640.00 on its Official Form 204 and attested to the truth of the information. Similarly, notwithstanding the Eastern Ave Debtor's contract to purchase its real property for $1.8 million, the Eastern Ave Debtor listed the value of its real estate property on Official Form 240 at only $621,980.00. There has been no explanation for the conflicting values and the inflated purchase prices for these properties.

Mr. Razjooyan also gave conflicting testimony regarding his relationship with District Housing, which is owned and/or controlled by Richard Balles. District Housing was to be the contract purchaser for the 945 Longfellow property and it was also the proposed contract purchaser for two entities owned by Jesper Nylen that are currently debtors in cases pending before this Court. Mr. Razjooyan testified that he had stock in Mr. Balles' publicly held company, Community Redevelopment Inc. He testified that he had a stock certificate. He then testified that he didn't know where the stock certificate was and that he had no stock in Mr. Balles' publicly held company. Mr. Razjooyan is not credible, was not forthcoming and should not be in control of the above-captioned Debtors.

Finally, Mr. Razjooyan, through his defunct entity Masterpiece Property Management, lent over $100,000 to entities owned and controlled by Jesper Nylen in an effort to show liquidity on those entities' books for a short period of time while they attempted to refinance the properties. The monies borrowed from Masterpiece were quickly repaid. This conduct by Mr. Razjooyan should not be condoned. As the representative for these estates, he has fiduciary obligations to the Debtors' creditors and equity holders. Mr. Razjooyan has quickly shown that he is not "exceedingly credible", as argued by Mr. VerStandig at the June 4th hearing.

Additionally, Cause exists to grant the requested relief under 11 U.S.C. § 1112(b)(4)(C), and (H) for failure to provide proof of insurance, and failure to timely provide information reasonable requested by the United States Trustee.

The Debtors have failed to provide to the U.S. Trustee proof of insurance coverage on the properties. Lack of insurance is one of the biggest concerns for cases such as these where insurance is essential to preserve the assets and protect the bankruptcy estate. These are multi-family homes with tenants residing at the properties. Under § 1112(b)(4)(C) cause exists for "failure to maintain appropriate insurance that poses a risk to the estate or to the public". As the U.S. Trustee has not received proof of insurance showing that the Debtors have adequate insurance on their properties, cause exists to convert these cases.

The Debtors are also required to provide certain financial information to the U.S. Trustee pursuant to the Chapter 11 Guidelines established by the U.S. Trustee for cases filed in the District of Columbia as a means of performing his duty to "supervise the administration of cases". *See* 28 U.S.C. § 586(a)(3). Such financial and business information includes, but is not limited to: proof of insurance, bank account statements, rent rolls, and copies of certificate of insurance listing the Office of the U.S. Trustee as certificate holder. As of the date and time of filing this Motion, the U.S. Trustee has still not received: 1) proof of insurance; and 2) certificates of insurance listing the Office of the U.S. Trustee as a notice party; 3) bank account statements; 4) proof of closure of pre-petition bank accounts; 5) proof of opening debtor-in-possession account. Failure to provide these documents constitute cause under § 1112(b)(4)(H) to convert the case

As the U.S. Trustee has established a *prima facie* case that "cause" exists to convert or dismiss this case, the burden shifts to the Debtors to demonstrate that "unusual circumstances" exist that establish that converting or dismissing the case is not in the best interests of creditors

and the estate to avoid the mandatory conversion of their case. *See* 11 U.S.C. § 1112(b)(2). For the exception to apply, the court must find and specifically identify unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate. *Id.* The debtors or another party in interest must then: (1) establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and (2) that the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)— (i) for which there exists a reasonable justification for the act or omission; and (ii) that it will be cured within a reasonable period of time fixed by the court. *Id.*; *See In re Landmark Atl. Hess Farm, LLC,* 448 B.R. 707 (Bankr. D. Md. 2011). The U.S. Trustee is unaware of any unusual circumstances that would result in a finding that either conversion or dismissal of these cases is not in the best interest of creditors and the estates.

The U.S. Trustee does not believe that current management should stay in control of the Debtors—thus he believes that either conversion of the case to chapter 7 or appointment of a chapter 11 trustee is in the best interest of creditors and the estate. Moreover, in light of counsel's request to withdrawal for unstated reasons mandated by the Rules of Professional Conduct, the U.S. Trustee believes that the appointment of a Trustee is otherwise "in the interests of creditors, any equity security holders, and other interests of the estate…" 11 U.S.C. § 1104(a)(2). The U.S. Trustee reserves any and all rights to raise any additional arguments at any hearing held on this motion.

WHEREFORE, in consideration of the foregoing, the Acting United States Trustee respectfully requests that the Court enter an Order directing the appointment of a chapter 11 trustee or, alternatively, converting this case to chapter 7; and for such other and further relief as the Court deems just and proper.

11

Date: June 20, 2024                        GERARD R. VETTER
                                                                    Acting United States Trustee, Region 4

By: */s/ Kristen S. Eustis*
Kristen S. Eustis
DC Fed. Bar No. MD28984
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.S.Eustis@usdoj.gov

12