# MANAGEMENT AGREEMENT

THIS AGREEMENT is made as of this 14th day of August, 2024 between Noble Realty Advisors, LLC, a Maryland Limited Liability Company, ("Agent"), and Marc Albert as Chapter 11 Trustee for the jointly-administered bankruptcy cases of 1416 Eastern Ave NE LLC, *et al.* ("Trustee Owner").

1. **Properties.**  Trustee Owner hereby exclusively employs Agent to manage the following properties with their related improvements and facilities (the "Properties"), subject to the terms and conditions herein set forth:

> 1416 Eastern Avenue Northeast Washington, DC – (6 Units)
> 945 Longfellow Street Northwest Washington, DC – (15 Units)
> 2501 Naylor Road Southeast Washington, DC – (8 Units)
> 4301-4313 Wheeler Road Southeast Washington, DC – (49 Units)
> 4263-67 6th Street Southeast Washington, DC – (6 Units)
> 4935 Nannie Helen Burroughs Avenue Northeast Washington, DC – (6 Units)
> 3968 Martin Luther King Junior Avenue Southwest Washington, DC – (6 Units)
> 4010 9th Street Southeast Washington, DC – (14 Units)
> 2440 S Street Southeast Washington, DC – (14 Units)
> 4400 Hunt Place Northeast Washington, DC – (15 Units)

2. **Trustee Owner.**  Trustee Owner is the Chapter 11 Trustee for the jointly-administered bankruptcy cases of 1416 Eastern Ave NE LLC, *et al.* pending before the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") in main Case No. 24-00180-ELG (the "Bankruptcy Case"), and has authority to operate the Properties pursuant to the *Order Approving Appointment of Marc Albert as Chapter 11 Trustee* ("Chapter 11 Trustee Appointment Order") entered in the Bankruptcy Case on July 24, 2024, a copy of which is attached for reference as **Exhibit A**. Trustee Owner's employment of Agent is subject to approval by the Bankruptcy Court.

3. **Agent's Responsibility.**  Agent, through its employees, will have the general duty and responsibility of managing the Properties in a good and efficient manner and in compliance with all applicable laws, statues, and ordinances and any and all other regulations and procedures.

4. **Duties of Agent.**

   a)   Agent shall timely, in good faith, with due diligence and for the best interests and benefit of Trustee Owner, and, after consultation with Trustee Owner, perform the following duties:

   1.   Supervise and direct the general operations of the Properties.

   2.   Operate the Properties with proper economy consistent with property management techniques generally used by property management companies in the greater Washington, D.C. metropolitan areas.

   3.   Select, employ, train, supervise and discharge such manager(s), employees, agents, clerks and maintenance personnel as are necessary in order to operate the Properties in accordance with the terms of this Agreement; carry worker's compensation insurance

(and when required by law, compulsory non-occupational disability insurance) covering such employees and deliver to Trustee Owner certificates evidencing such policies, which policies shall provide that the Trustee Owner shall be provided at least 30-days prior written notice of any such cancellation thereof; and use reasonable care in the selection of such employees. Subject to Section 4(a)(5)(a) below, all such personnel shall be paid from the Operating Account(s) (hereinafter defined) and shall be employees of Agent. Trustee Owner and Agent shall be and will continue to be, through the term of this Agreement, Equal Opportunity Employers.

4. If necessary and with express approval of Trustee Owner, market vacant units within the apartment community and negotiate new apartment lease agreements and renewals of existing lease agreements in accordance with Trustee Owner's objectives, the Trustee Owner's organizational and other documents and policies approved in writing by Trustee Owner, which shall be executed Trustee Owner. All lease agreements shall be in compliance with any state or local requirements, and the requirements of any lender that may hold a Mortgage on any of the Properties now or in the future ("Lender"), including, but not limited to Section 8 and other housing subsidy programs and related agreements.

5. Collect, when due, all rent charges and any and all other amounts receivable on the Trustee Owner's accounts in connection with the management and operation of the Properties. Such receipts (except for tenant security deposits payments, which will be handled as specified below) will be deposited in account(s) established by Agent for the benefit of Trustee Owner and including Trustee Owner as a signatory with a bank insured by the Federal Deposit Insurance Corporation (FDIC). The account(s) shall be established specifically for the purpose of management of the Properties (the "Operating Account(s)"). The organization and number of Operating Accounts shall be at Agent's discretion for proper management of the Properties to account for all income and expenses associated with management of the Properties.

From the funds collected and deposited by the Agent in the Operating Account(s), the Agent will make the following disbursements promptly when payable after receiving prior written authorization from the Trustee Owner:

    a. To the Agent for compensation due pursuant to the terms of this Agreement.

    b. All sums otherwise due and payable by the Trustee Owner as expenses of the Properties authorized to be incurred by the Agent under the terms of this Agreement, including compensation payable to the Agent pursuant to Section 8 below for its services hereunder.

    c. To Trustee Owner, upon Trustee Owner's request, any remaining amounts left in the Operating Account(s) upon review of financial reports prepared by Agent required under this Agreement.

7. Keep the Properties, their furniture, furnishings, fixtures and other equipment therein and appurtenant thereto in good order and repair and fully insured, provided that Agent shall first obtain Trustee Owner's prior written approval for all repairs unless such repairs are of an emergency nature and are necessary to prevent imminent harm of the Properties, any portion thereof or any person residing thereon. In the event that the Agent undertakes such emergency repairs, it shall provide written notice thereof to

Trustee Owner within seventy-two hours, and does so with the understanding that to the extent that repair cost exceeds rental income, it may not be reimbursed until one or more the Properties has been sold.

8. Arrange for all needed replacements, improvements, supplies and changes in and to the Properties and in the furniture therein; provided that Agent shall first obtain Trustee Owner's prior written approval for all improvements.

9. Establish and maintain, at Trustee Owner's expense, a comprehensive system of records, books and accounts in a manner satisfactory to the Trustee Owner, including unit files, which contain all repairs, maintenance, and purchases for the individual units, serial numbers, move-in and move-out inspections. All records, books, and accounts will be maintained at the Agent's office and shall be subject to examination at reasonable hours by the Trustee Owner, his agents and representatives or Lender upon 48 hours notice.

10. Prepare the following monthly reports and submit them to the Trustee Owner at the following times:

    a. A report of actual figures for receipts and disbursements, and submit each such report to the Trustee Owner within fifteen (15) days after the end of the month covered. Such report to include copies of checks written, and invoices/bills paid.

    b. A statement of receipts and disbursements during the month, including copies of all invoices/bills paid, with a schedule of accounts receivable and payable, and a reconciled bank statement for the Operating Account(s) as of the end of the month, and submit each such statement to the Trustee Owner within fifteen (15) days after the end of the month covered; and

    c. An itemized list of all delinquent accounts, including rental accounts, as of the fifteenth (15th) day of each month, and submit each such statement to the Trustee Owner by the fifteenth (15th) day of the month covered.

11. Furnish such information and prepare suitable documents as may be requested by the Trustee Owner from time-to-time with respect to the financial, physical or operational condition of the Properties.

12. Deliver to the Trustee Owner any and all security deposits given by tenants within three (3) days of receipt for the Trustee Owner to deposit into an account maintained for such purposes by the Trustee Owner in accordance with the requirements of state and federal law. Agent shall promptly request from Trustee Owner any request for withdrawals from the Trustee Owner's security deposit account necessary for the purposes of refunding such deposits or taking such deposits into income resulting from a forfeiture of such deposits by the tenants and members all income earned thereon shall inure to the benefit of the Trustee Owner.

13. Make available to the Trustee Owner and Lender(s) upon request of Lender(s) or Trustee Owner and its agents and representatives, at a reasonable time and place, Agent's records and records of identity-of-interest companies, if any, which relate to goods and services charged to the Properties. Records and information will be sufficient to permit the Trustee Owner and the Lender to determine the service

performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per unit and total charges levied for said services.

14. Notify the Trustee Owner promptly of any of the following of which the Agent has knowledge: any violation of any governmental requirements, including without limitation, violations relating to the leasing, use, repair and maintenance of the Properties under federal, state, and local laws or ordinances; any lawsuits or threats thereof involving the Properties; any defect or unsafe condition in the Properties; any fire or other damage to the Properties. Agent will maintain complete customary loss reports in connection with fire or other damage to the Properties and will keep the Trustee Owner informed of the status of each matter through the resolution thereof.

15. Serve vacate or other appropriate notices upon tenants on a timely basis and prosecute in a lawful and non-actionable manner in the name of Trustee Owner, at Trustee Owner's expense and with the approval of Trustee Owner, legal actions to evict tenants and members and recover rents or other charges due Trustee Owner. Agent shall coordinate and cooperate with any reputable attorney employed by the Trustee Owner established for representation of the Trustee Owner in landlord/tenant matters and approved pursuant to the provisions of the Consent Order.

16. Perform all other acts necessary or desirable in the operation and maintenance of the Properties in accordance with the terms and conditions of this Management Agreement.

    a. Agent shall promptly respond to all emergency calls in no less than 24 hours. All other routine request for maintenance shall be responded to within 72 hours.
    b. Agent shall provide Trustee Owner and residents immediately in writing with a 24-hour emergency contact telephone number.

b) Agent hereby accepts this agency and agrees to perform faithfully and diligently the aforesaid duties. Agent does not guarantee the payment of rentals by the tenants, but will make every reasonable effort to collect the same when and as they become due.

c) Agent represents that it is adequately equipped for the performance of the duties described herein; that it is qualified to do business in the District of Columbia; that it has received all requisite permits or licenses required to operate in District of Columbia; that, for so long as this Agreement is in effect, Agent shall, at its own expense, continue to qualify to do business and to procure and maintain such licenses as may be required for performance of the Agent's service; and that it will furnish the full use of its organization and personnel without additional charge.

d) The Agent shall have the power and the authority, subject to the conditions and limitations set forth in any order approving the employment of Agent, to make all reasonable contracts and disbursements necessary to carry out the duties conferred and imposed upon Agent by this Management Agreement including, but not limited to, the authority to pay for all reasonable expenses of trash removal, extermination services and other aspects of operating and maintaining the Properties after obtaining prior written authority from the Trustee Owner; provided however, that Agent shall seek to include a

Docusign Envelope ID: 94680596-6BE7-49D8-87F1-ECA85803AD27

thirty (30) day notice of cancellation provision in service contracts, whenever possible. Service Contracts with any related entity will require Trustee Owner's prior approval.

e) Immediately upon execution of this Agreement, Agent shall obtain records from the previous owner and/or property managers in charge of the Properties and notify residents at the Properties of the change in management.

f) Agent shall meet with the Trustee Owner at least once per month unless otherwise agreed in writing, and/or otherwise as needed.

g) Agent will cooperate with and assist Trustee Owner in implementing rent increases.

5. **Insurance.** The Trustee Owner will inform the Agent of the insurance to be carried with respect to the Properties and its operations, and the Trustee Owner, with input and recommendations from the Agent will cause such insurance to be placed and kept in effect at all times. The Agent will pay premiums out of the Operating Account(s), and premiums will be treated as operating expenses. All insurance will be placed with such companies on such conditions, in such amounts, and with such beneficial interests appearing thereon as shall be acceptable to the Trustee Owner, and shall be otherwise in conformity with any mortgage; provided that the same will include public liability coverage, with the Trustee Owner and Agent named as insured, in amounts acceptable to the Agent as well as the Trustee Owner and the Lender, and subject to the provisions set forth in the Consent Order. The Agent will investigate and furnish the Trustee Owner with full reports as to all accidents, claims, and potential claims for damage relating to the Properties, and will cooperate with the Trustee Owner's insurers in connection therewith.

Agent shall carry insurance and bonding satisfactory to Trustee Owner at all times and provide written documentation of the same to Trustee Owner upon execution of this Agreement.

6. **Compliance with Governmental Orders.** The Agent will take such actions as may be necessary to comply with any and all governmental orders or other requirements affecting the Properties (licenses, permits etc.), whether imposed by Federal, state, county or municipal authority, subject, however, to the limitation stated with respect to repairs as stated in Paragraphs 3(a) 8 and 9 which exceed Two Thousand Five Hundred Dollars ($2,500.00) requiring the prior consent of the Trustee Owner.

7. **Non-Discrimination.** In the performance of its obligations under this Agreement, the Agent and those employees supervised by the Agent will comply with the provisions of any Federal, state or local law including, but not limited to prohibitions against discrimination in housing, on the grounds of race, color, sex, creed or national origin, including Title VI of the Civil Rights Act of 1964 (Public Law 88-352, 78 Stat. 241), all requirements imposed by or pursuant to the Regulations of HUD (24 CFR, Subtitle A, Part 1) issued pursuant to that Title, and the regulations issued pursuant to Executive Order 11063, and Title VIII of the 1968 Civil Rights Act, and the District of Columbia Human Rights Act. The Agent shall be responsible for ensuring that all Property personnel are adequately informed of all such requirements and applicable code requirements and that their compliance will at all times be monitored by Agent.

8. **Compensation.** For its services in managing the Properties, Agent shall be entitled to receive a flat fee per month for each of the Properties as follows:

- 1416 Eastern Avenue Northeast, Washington, DC – $1,000.00/mo. (6 Units)

- 945 Longfellow Street Northwest, Washington, DC – $2,500.00/mo. (15 Units)
- 2501 Naylor Road Southeast, Washington, DC – $1,333.00/mo. (8 Units)
- 4301-4313 Wheeler Road Southeast, Washington, DC – $9,800.00/mo. (49 Units)
- 4263-67 6th Street Southeast, Washington, DC – $1,000.00/mo. (6 Units)
- 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC – $1,000.00/mo. (6 Units)
- 3968 Martin Luther King Junior Avenue Southwest, Washington, DC – $1,000.00/mo. (6 Units)
- 4010 9th Street Southeast, Washington, DC – $2,333.00/mo. (14 Units)
- 2440 S Street Southeast, Washington, DC – $2,333.00/mo. (14 Units)
- 4400 Hunt Place Northeast, Washington, DC – $2,500.00/mo. (15 Units)

(collectively, the "Management Fee"). The Management Fee is subject to reduction upon the sale of one or more of the Properties in the amount corresponding to that Property. The Management Fee shall be paid to Agent monthly in arrears by the fifth day of each month from funds available in the Operating Account(s).

9. **Term of Agreement.**  This Agreement shall be effective for four (4) months beginning on August 15, 2024, and thereafter on a month-to-month basis unless otherwise agreed in writing. This Agreement is subject to receiving any necessary approvals as required by the Bankruptcy Court.

10. **Termination of Agreement.**

   a) In the event of default as defined in Paragraph 11 below, in the event of fraud, negligence, or embezzlement by the Agent, the Trustee Owner may terminate this Management Agreement immediately upon written notice, without any further liability.  In the event such actions by the Agent cause litigation due to fraud, negligence, or embezzlement, the non-prevailing party shall pay attorney's fees and costs of the litigation.

   b) Upon termination or expiration of this Agreement, the Agent is required to turn over to the Trustee Owner all of the Properties' cash, trust accounts, leases, unpaid bills, papers, documents and records relating to the Properties, including all funds maintained in the Operating Account(s), provided, however, that nothing herein shall relieve Trustee Owner of its obligation to reimburse the Agent for all expenses incurred by it and properly chargeable to the Properties.

   c) Trustee Owner may terminate this Management Agreement immediately upon a sale of the Properties or upon termination of the Trustee's duties in the Bankruptcy Case, without any further liability.

11. **Default and Remedies.**

   a) The following acts, if performed by Agent, shall constitute events of defaults ("events of Defaults"):

      1. Agent files a petition to be adjudicated as bankrupt or for reorganization under the bankruptcy laws of the United States.

Docusign Envelope ID: 94680696-6BF7-49D8-87F1-ECA85803AD27

2.  A petition is filed against the Agent to have it adjudicated, as bankrupt and such petition is not dismissed within sixty (60) days after filing.

3.  An assignment of the benefit of creditors is made by the Agent.

4.  A receiver or trustee or any of the Agent's rights or interests (which need not necessarily include or consist of the rights and interest of the Agent under this Agreement) is appointed pursuant to any judicial proceeding and such proceedings is not dismissed and the receiver or trustee discharged within thirty (30) days after such appointment.

5.  Agent fails to perform any terms, covenants, and conditions contained in this Management Agreement required on the part of Agent to be kept or performed, and any such default remains uncured for a period of thirty (30) days after written notice thereof from Trustee Owner, or, if such default is curable but cannot be cured within thirty (30) days, if cure is initiated promptly and pursued diligently.

b)  Upon the occurrence of any Event of Default by the Agent, Trustee Owner shall be entitled to exercise any one or more of the remedies listed below.  The remedies provided herein are cumulative.  Failure to exercise any such remedy upon the occurrence of an Event of Default shall not be deemed to constitute a waiver of the Event of Default or the right to exercise any one or more of the below listed remedies upon a subsequent occurrence of such Event of Default.

1.  Trustee Owner may exercise any remedy available to him at law or in equity;

2.  Trustee Owner may take possession of the Properties upon five-days advance written notice to Agent;

3.  Trustee Owner may cancel this Agreement upon five-days advance written notice to Agent.

In the event that Trustee Owner elects to cancel this Agreement upon an Event of Default, Agent shall be required to turn over to Trustee Owner all of the Properties' cash, trust accounts, investments, leases, unpaid bills, papers, documents and records relating to the Project including all funds maintained in the Operating Account(s), provided, however, that nothing herein shall relieve Trustee Owner of its obligation to reimburse the Agent all expenses incurred by it and properly chargeable to the Properties.

12. **Independent Operation.**  Nothing in this Management Agreement or in any other instrument shall cause the Trustee Owner in any way to be construed as a partner or joint venturer or to be associated in any way with the Agent in the operation of the Properties or subject Trustee Owner in a capacity of agent to any obligation, loss, charge or expense connected with or arising from the operation or use of such Properties or a part thereof.

13. **Leasing.**  Each and every lease, license agreement or other agreement for the use of space in the Properties shall be valid, bona-fide, effected in good faith, in arms-length transactions approved by the Trustee Owner and if required, the Lender.  All lease and/or occupancy forms and credit investigation forms and standards used in renting space in the Properties shall be approved by the Trustee Owner prior to their use.

**14. Indemnification.**

    a)  Agent shall indemnify and hold Trustee Owner harmless from and against all liabilities, claims, damages and costs, including, but not limited to, attorneys' fees and court cost, arising out of or in connection with Agent's acts of willful misconduct or gross negligence, or negligence in connection with the duties and obligations of Agent under this Management Agreement with respect to the Properties. The Agent will use reasonable care to keep the entire Properties safe from injury to all persons of the Properties.

    b)  The indemnities hereinabove contained shall not apply to any claim with respect to which the indemnified party is covered by insurance, provided that the foregoing exclusion does not invalidate the indemnified party's insurance coverage.

    c)  Within a reasonable period of time after receipt by an indemnified party under this Section 14 of notice of commencement of any action, such indemnified party will, if the claim in respect thereto is to be made against the indemnifying party under this Section 14, notifying party of the commencement thereof. In case any such action is brought against any indemnifying party, and it notifies the indemnifying party of the commencement thereof, the indemnifying party will be entitled to assume the defense thereof, with counsel who shall be to the reasonable satisfaction of such indemnified party, and after notice from the indemnifying party to such indemnified party of its election so to assume the defense thereof, the indemnifying party will not be liable to such indemnified party in connection with the defense thereof, other than reasonable costs of investigation. In case any such action is brought against the indemnified party, however, and the indemnifying party receives written notice of the commencement thereof and does not give written notice to such indemnified party of its election so to assume the defense thereof within sixty (60) days after receiving such notification of the commencement thereof from the indemnified party, the indemnifying party shall be liable to such indemnified party under this Section 14 on account of any settlement of any claim or action affected at any time after the expiration of the aforesaid sixty (60) day period without the consent of such indemnifying party.

**15. Miscellaneous Provisions.**

    a)  **Amendment.** This Agreement embodies the entire agreement between Agent and Trustee Owner as to the subject matter herein contained and any amendment, modification, or supplement to this Agreement must be in writing and signed by all of the parties hereto.

    b)  **Plurals and Genders.** For all purposes of interpretation or construction of this Agreement, the singular shall include the plural and the plural shall include the singular, and each gender shall include all other genders.

    c)  **Governing Law and Venue.** This Agreement shall be governed exclusively by its terms and the laws of the District of Columbia. In the event of a breach of this Agreement, the cause of action shall be deemed to have risen in the District of Columbia, and the parties hereto may commence litigation in the United States District Court for the District of Columbia, raising such concerns, at first instance, within the Bankruptcy Case.

    d)  **Captions.** Captions and paragraph heading used herein are for convenience only and are nor part of this Agreement and shall not be used in construing it.

e) **Notices.**  Any and all notices or other communications required or permitted by this Agreement or by law to be delivered, served on, or given to any party shall be in writing and shall be deemed properly delivered, given or served when personally delivered to the party to whom it is directed, or in lieu of such personal service, when deposited in the United States mail, registered or certified mail, return receipt requested, postage prepaid, addressed as follows on the signature page below.

Any party listed above may change its address for the purpose of this section by giving in writing notice of such change to the other parties listed above in the manner provided for in this section.

**Assignment.**  This Agreement shall not be assignable by Agent without the prior written consent of the Trustee Owner.

**WITNESS** the following hands and seals as of the day and year first above written.

**To the Agent:**

Noble Realty Advisors, LLC
11000 Broken Land Parkway, Suite #410
Columbia, Maryland 21044
Phone: (240) 972-2500 Fax: (240) 427-4699
Email: mario@noblerealtyadvisors.com

By: _____

Print Name &Title:  _Mario Lloyde / Director

Date: _____

**To the Owner:**

Marc Albert, Chapter 11 Trustee
Bankruptcy Estates of 1416 Eastern Ave NE LLC, *et al.*
1775 Pennsylvania Avenue, NW, Suite #800
Washington, DC 20006
Phone: (202)728-3020 Fax: (202) 572-9999
Email: marc.albert@stinson.com

DocuSigned by:
*Marc Albert*
By: _____
10A874035CBB48B...

Print Name &Title:  _Marc Albert as Chapter 11 Trustee for the Bankruptcy Estates of 1416 Eastern Ave NE LLC, *et al.*

08/15/2024
Date: _____

e) **Notices.** Any and all notices or other communications required or permitted by this Agreement or by law to be delivered, served on, or given to any party shall be in writing and shall be deemed properly delivered, given or served when personally delivered to the party to whom it is directed, or in lieu of such personal service, when deposited in the United States mail, registered or certified mail, return receipt requested, postage prepaid, addressed as follows on the signature page below.

Any party listed above may change its address for the purpose of this section by giving in writing notice of such change to the other parties listed above in the manner provided for in this section.

**Assignment.** This Agreement shall not be assignable by Agent without the prior written consent of the Trustee Owner.

**WITNESS** the following hands and seals as of the day and year first above written.

> **To the Agent:**
>
> Noble Realty Advisors, LLC
> 11000 Broken Land Parkway, Suite #410
> Columbia, Maryland 21044
> Phone: (240) 972-2500 Fax: (240) 427-4699
> Email: mario@noblerealtyadvisors.com

By: _____

Print Name &Title: _Mario Lloyde / Director_

Date: _____8/14/2024_____

> **To the Owner:**
>
> Marc Albert, Chapter 11 Trustee
> Bankruptcy Estates of 1416 Eastern Ave NE LLC, *et al.*
> 1775 Pennsylvania Avenue, NW, Suite #800
> Washington, DC 20006
> Phone: (202)728-3020 Fax: (202) 572-9999
> Email: marc.albert@stinson.com

By: _____

Print Name &Title: _Marc Albert as Chapter 11 Trustee for the Bankruptcy Estates of 1416 Eastern Ave NE LLC, et al._

Date: _____

# EXHIBIT A

The order below is hereby signed.

Signed: July 23 2024



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | |
| | |
| **1416 Eastern Ave NE LLC,** *et al.*,[1] | **Case No. 24-00180-ELG** |
| | **Chapter 11** |
| **Debtors.** | **Jointly Administered** |

### ORDER APPROVING APPOINTMENT OF
### <u>MARC ALBERT AS CHAPTER 11 TRUSTEE</u>

THE MATTER before the Court is the motion of the United States Trustee to approve the

appointment of Marc Albert as Chapter 11 Trustee in these jointly administered cases.

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

On July 18, 2024, the Court directed the United States Trustee to appoint one disinterested person to serve as the Chapter 11 Trustee in these jointly administered cases.

The United States Trustee consulted with parties-in-interest regarding the appointment of a Chapter 11 Trustee.

The United States Trustee pursuant to the order of this Court and 11 U.S.C. § 1104(d) appointed Marc Albert to serve as Chapter 11 Trustee in this case.

Based on Mr. Albert's verified statement, filed with the Court as an exhibit to the United States Trustee's motion, he neither holds nor represents any interests adverse to the Debtors, creditors and all parties-in-interest in this case.  Also based on Mr. Albert's statement, he is a disinterested person as defined by 11 U.S.C. § 101.

NOW THEREFORE, pursuant to 11 U.S.C § 1104(d), it is hereby

**ORDERED** that the Acting United States Trustee's appointment of Marc Albert as Chapter 11 Trustee in this case is hereby APPROVED; and it is further

**ORDERED** the Clerk shall serve a copy of this order by mail or serve through the Court's ECF system to the parties entitled to receive notice in this case.

I ask for this:

Gerard R. Vetter
Acting United States Trustee, Region Four

By: */s/ Kristen S. Eustis*
Kristen S. Eustis, Trial Attorney
Federal Bar No. MD28984
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.S.Eustis@usdoj.gov

Copies to:

Nancy L. Alper nancy.alper@dc.gov

Laura C. Beckerman laura.beckerman@dc.gov

Kristen S. Eustis Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

Emil Hirsch ehirsch@carltonfields.com, ewhittington@carltonfields.com; wdcecf@cfdom.net;tcarroll@carltonfields.com

William C. Johnson, Jr. William@JohnsonLG.Law, wcjjatty@yahoo.com; johnsonwr90391@notify.bestcase.com

Michael D. Nord mnord@gebsmith.com

Elizabeth Drayden Peters epeters@gebsmith.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mac@dcbankruptcy.com; verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

Stephon Woods stephon.woods@dc.gov

All parties on the creditor mailing matrix.

**END OF ORDER**