Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, et al.[1] | ) Chapter 11 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## TRUSTEE'S JOINT PLAN OF LIQUIDATION

## I.   INTRODUCTION

Pursuant to § 1121 of the Bankruptcy Code, Marc E. Albert, the chapter 11 trustee ("Trustee") of the bankruptcy estates of 1416 Eastern NE LLC, et al. ("Debtors"), by and through his undersigned attorneys, Stinson LLP, hereby respectfully submits the Chapter 11 Trustee's Plan of Liquidation pursuant to the provisions of the Bankruptcy Code. The Trustee is the proponent of the Plan within the meaning of Bankruptcy Code § 1129. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, businesses and operations, (ii) a summary and analysis of this Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019, the Trustee reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY.**

## II.   DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Expense Claim(s)"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b) or 28 U.S.C. § 1930. These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtors' estates after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; (c) Administrative Tax Claims; and (d) fees or charges assessed against the Debtors' estates under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

**"Administrative Expense Claims Objection Date"** means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court. The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Expense Claims Objection Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

**"Allowed Administrative Expense Claim"** means an Administrative Expense Claim that is allowed as set forth in Article IV.A.1 of the Plan.

**"Allowed Claim"** means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Case is not an Allowed Claim. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

"**Allowed Class '\*\*' Claim**" means an Allowed Claim in the particular class described.

"**Alternative Transaction**" means an offer for sale of the Properties to a party other than the Purchaser deemed to be a higher and better offer for purchase of the Properties and offering a purchase price of at least $7,020,00.00 plus the required break-up fee of $250,000 owing to Purchase if not selected.

"**Assets**" means, as to each Debtor, all assets the Debtor's estates including, but not limited to, "property of the estate" as described in § 541 of the Bankruptcy Code. Following the Closing of sale of the Properties, the Estates' assets will primarily consist of remaining Sales Proceeds currently held in the Trustee's account maintained for the case.

"**Avoidance Action**" means any Causes of Action arising under Bankruptcy Code §§ 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

"**Bankruptcy Code**" means Title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

"**Bankruptcy Court**" or "Court" means the United States Bankruptcy Court for the District of Columbia.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Bankruptcy Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtors, as the same may have been amended from time to time.

"**Business Day**" means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Carve Out**" means the agreement between TD Bank and Trustee providing for the use of funds serving as TD Bank's collateral for the payment of Allowed Administrative Expense Claims, including Professional Fee Claims, as provided for and more fully described in in Section VI.D. of this Plan.

"**Case**" means the above-captioned jointly administered case, which has been designated Case No. 24-00180-ELG.

"**Case Closing Date**" means the date the Bankruptcy Court enters an order closing the Debtors' Chapter 11 Case.

"**Cash**" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

"**Causes of Action**" means any and all claims, demands, rights, actions, causes of action and suits of the Debtors and their Estates, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to § 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to § 510 of the Bankruptcy Code, and (8) § 506(c) Claims; and (9) any other claims which may be asserted against third parties, unless previously settled by the Trustee.

"**Claim**" means a claim as that term is defined in Bankruptcy Code § 101(5).

"**Claims Bar Date**" means, with respect to Claims filed by Creditors other than Government Agencies, October 7, 2024, which is the last date for Creditors other than Government Agencies to file Claims against the Debtors' estates pursuant to the Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by Government Agencies, November 25, 2024, which is the last date for Government Agencies to file Claims against the Debtors' estates.

"**Claims Objection Deadline**" means the last day for filing objections to General Unsecured Claims, which shall be the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the Claims Bar Date, or (c) such other date as the Bankruptcy Court may order.  The Trustee may seek a one-time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional thirty (30) days after the current Claims Objection Deadline.  Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances.  In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline.  For the avoidance of doubt, after the Effective Date, no Person other than the Trustee shall be authorized to file objections to Claims other than Professional Fee Claims.

"**Class**" means a group of Claims as classified in Article V of the Plan.

"**Closing**" means consummation of the Sale of the Properties.

"**Closing Date**" means the date of the Closing.

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

"**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing regarding Plan Confirmation.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code § 1129.

"**Creditor**" means, as to each Debtor, any person who assets a Claim against that Debtor.

"**Debtor**" means one of 1416 Eastern Ave NE LLC, 945 Longfellow St NW LLC, 2501 Naylor Rd SE LLC, 4303-13 Wheeler Rd SE LLC, 4263 6th St SE Apartments LLC, 4935 NHB Ave NE LLC, 3968 MLK LLC, 4010 9th St SE LLC, 2440 S St SE LLC, and 4400 Hunt Pl NE LLC.

"**Debtors**" means 1416 Eastern Ave NE LLC, 945 Longfellow St NW LLC, 2501 Naylor Rd SE LLC, 4303-13 Wheeler Rd SE LLC, 4263 6th St SE Apartments LLC, 4935 NHB Ave NE LLC, 3968 MLK LLC, 4010 9th St SE LLC, 2440 S St SE LLC, and 4400 Hunt Pl NE LLC.

"**Debtors' estates**" means the bankruptcy estates of the Debtors.

"**Disclosure Statement**" means the Disclosure Statement with Respect to Trustee's Plan of Liquidation, as may be amended.

"**Disclosure Statement Order**" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

"**Disputed Claim**" means a Claim:

(a) as to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

(b) as to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

"**Distribution**" means any transfer under the Plan, or as previously approved by the Court, of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

"**Effective Date**" has the meaning set forth in Article XI.B of the Plan.

"**Entity**" has the meaning set forth in § 101(15) of the Bankruptcy Code.

"**Estate**" means, as to each Debtor, the estate created for that Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

"**Estate Assets**" means, as to each Debtor, all of the Debtor's property, rights, interests or Causes of Action existing as of the Confirmation Date, including, but not limited to, the Avoidance Actions, if any.

"**Executory Contracts**" means, as to each Debtor, those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

"**Final Fee Applications**" means the final requests or applications for payment of Professional Fee Claims.

"**Final Order**" means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) that has not been reversed, rescinded, stayed, modified, or amended;

(b) that is in full force and effect; and

(c) with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

"**General Unsecured Claim**" means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

"**Governmental Agency(y)(ies)**" means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

"**Holder**" means the holder of a Claim or interest.

"**Insider**" means an insider as that term is defined in Bankruptcy Code § 101(31).

"**Interest(s)**" means, as to each Debtor, the rights of the equity holder as owner and holder of any and all issued and outstanding Debtor Membership Interests.

"**Local Rules**" means the Local Bankruptcy Rules for the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

"**Lien**" means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interest, any restrictions imposed by applicable United States or foreign securities laws.

"**Non-Tax Priority Claim**" means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code §§ 507(a)(3), (4), (5), or (7).

"**Other Secured Claims**" means an Allowed Secured Claim, as against one of the Debtors, other than the Secured Claim of TD Bank.

"**Person**" means any natural person or Entity.

"**Petition Date**" means, as to each of the Debtors, the date on which that Debtor commenced its bankruptcy case.

"**Plan**" means this Trustee's Plan of Liquidation, as it may be amended or supplemented.

"**Plan Document**" means this Plan, and any Exhibits thereto.

"**Plan Objection Deadline**" means the deadline by which parties shall be required to file an objection to this Plan.

"**Prepetition Claim(s)**" means any Claim(s), as against any of the Debtors, arising or accruing prior to the Petition Date.

"**Post-Effective Date Expenses**" means any expenses incurred by the Estate after the Effective Date including, but not limited to, professional fees and expenses incurred by the Estate, fees payable to the United States Trustee, and premiums related to any bond or insurance policy, and reasonable expenses incurred by the Estate in the ordinary course of business.

"**Post-Petition**" means, as to each Petition, the time after the Petition Date.

"**Priority Claim(s)**" means all Claim(s) as defined in § 507 of the Bankruptcy Code, except Claims as defined in §§ 507(a)(1), (a)(2) and (a)(8) of the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority, as against one of the Debtors, under Bankruptcy Code § 507(a)(8), or which is secured by the Assets of that Debtor.

"**Priority Status**" means the priority in distribution which is afforded to certain Claims, as against each Debtor, pursuant to § 507(a) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim under Bankruptcy Code §§ 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estates.

"**Professionals**" means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to §§ 327 and/or 328 of the Bankruptcy Code.

"**Properties**" means the Debtors' real properties located at 1416 Eastern Avenue Northeast, Washington, DC 20019; 945 Longfellow Street Northwest, Washington, DC 20011; 2501 Naylor Road Southeast, Washington, DC 20020; 4301-4313 Wheeler Road Southeast, Washington, DC 20032; 4263-67 6th Street Southeast, Washington, DC 20032; 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019; 3968 Martin Luther King Junior Avenue SE, Washington, DC 20032; 4010 9th Street Southeast, Washington, DC 20032; 2440 S Street Southeast, Washington, DC 20020; and 4400 Hunt Place Northeast, Washington, DC 20019, with all improvements thereon and rights associated therewith.

"**Pro Rata**" means the proportion that the amount of an Allowed Claim or Interest in a particular Class or Classes bears to the aggregate amount of all Allowed Claims or Interests in such Class or Classes.

"**Purchase Agreement**" means the Purchase Agreement between the Trustee and Craig London for the sale of the Properties as defined herein.

"**Purchaser**" means the proposed purchaser provided for in the Purchase Agreement; Craig London or as assigned to a single purchase entity. Should the

"**Rejection Damage Claim**" means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Trustee rejects under Bankruptcy Code § 365 or pursuant to the terms of this Plan.

"**Representative(s)**" means (i) any and all officers, directors, attorneys, consultants and advisors of the Debtors or the Trustee, in each case, solely in their respective capacities as such, serving or holding interests immediately prior to the occurrence of the Effective Date.

"**Sale**" means a sale of the Properties.

"**Sales Proceeds**" means all Cash proceeds derived from the Sale of the Properties.

"**Section 506(c) Claim**" means any surcharge claim asserted by one of the Debtors after the Effective Date pursuant to § 506(c) of the Bankruptcy Code.

"**Secured Claim**" means a Claim existing on the Petition Date secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code § 506(a).

"**TD Bank**" or "**Secured Creditor**" means TD Bank, N.A.

"**Tenant**" means a party to a residential lease with one of the Debtors under which that Debtor is a landlord.

"**Tenant Lease**" means any agreement between any of the Debtors and any Tenant for the lease of real property, which was in effect prior to the Closing.

"**Unclaimed Property**" means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

## III.    RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code § 102 apply to this Plan.

1.    A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

2.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

3.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

4.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

5.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

6.    Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

7.    Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

8.    Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

9.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

10.    All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

## IV.   ALLOWINCE   AND   TREATMENT   OF   UNCLASIFIED   CLAIMS (ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS)

A.     Allowance of Unclassified Claims (Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims)

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

1.     Allowed Administrative Expense Claims Other than Professional Fee Claims

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if, on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Estate pay the Claim and served the motion or application on the Debtors, the Chapter 11 Trustee, and the U.S. Trustee.  Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline. Provided, however, that the Trustee may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtors' business, and also including administrative tax liabilities incurred on behalf of the Estate, to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

2.     Allowed Professional Fee Claims

Final Fee Applications must be filed no later than sixty (60) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Trustee, and the Office of the U.S. Trustee. Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

3.     Allowed Priority Tax Claims

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim. In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

B.    Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)

1.    <u>Administrative Expense Claims</u>

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by that Debtor. Holders of Administrative Expense Claims will be paid in full on account of their Claims and are not entitled vote on this Plan.

2.    <u>Professional Fee Claims</u>

Except to the extent that a holder of a Professional Fee Claim agrees to a different treatment, each holder of an Professional Fee Claim shall receive, in full and complete settlement, satisfaction and discharge of its Professional Fee Claim, Cash in an amount set forth in the Court's Order ruling on the holder's Final Fee Application and subject to the limitations on such claims provided for by the Carve Out.

3.    <u>Priority Tax Claims</u>

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Holders of Allowed Priority Tax Claims will be paid in full and are not entitled to Vote on the Plan.

## V.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors into Classes based on their legal rights and interests and provides for the satisfaction of Claims from the Sale of each of the Properties. This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including confirmation and distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description, and only to the extent the Claim relates to a specific Debtor. To the extent

that part of the Claim or Interest falls within a different Class description or relates to a different Debtor, the Claim or Interest is classified in that different Class.

With respect to each Debtor, this Plan generally provides for similar treatment with respect to the treatment of the Claims and Interests related to each Debtor. However, because the Debtor cases are not jointly consolidated, similar types of Claims are provided with their own Class for each Debtor. Although provided for in this singular Plan, these groupings do not affect each Debtors' status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Equity interests in each of the Debtors and each Class's respective treatment.

A.   Classification and Treatment of Claims of 1416 Eastern Ave NE LLC (Case No. 24-00180)

1.   <u>1416 Eastern Ave NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class A.1)</u>

**Classification:**   Class A.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 1416 Eastern Ave NE LLC and its related Property.

**Treatment:**   Provided that a Class A.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class A.1 Claim agrees to a different treatment, each holder of an Allowed Class A.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class A.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class A.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class A.1 Claims are not entitled to vote to accept or reject this Plan.

Class A.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.   <u>1416 Eastern Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class A.2)</u>

**Classification:**   Class A.2 consists of the Allowed Secured Claim of TD Bank with respect to 1416 Eastern Ave NE LLC and its related Property.

**Treatment:** Except to the extent that the Holder of the Allowed Class A.2 Claim agrees to a different and lesser treatment, the Holder of the Class A.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class A.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class A.2 Claim shall not exceed the Allowed balance of the Class A.2 Claim. Payment towards the Class A.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class A.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class A.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3. <u>1416 Eastern Ave NE LLC Classification of General Unsecured Claims (Class A.3)</u>

**Classification:** Class A.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class A.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class A.3 claims.

Holders of Class A.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4. <u>1416 Eastern Ave NE LLC Classification of Interests (Class A.4)</u>

**Classification:** Class A.4 consists of Holders of Interests in 1416 Eastern Ave NE LLC.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class A.4. Interests.

Holders of Class A.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

B.  Classification and Treatment of Claims of 945 Longfellow St NW LLC (Case No. 24-00181)

1.  945 Longfellow St NW LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class B.1)

**Classification:**   Class B.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 945 Longfellow St NW LLC and its related Property.

**Treatment:**   Provided that a Class B.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class B.1 Claim agrees to a different treatment, each holder of an Allowed Class B.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class B.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class B.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class B.1 Claims are not entitled to vote to accept or reject this Plan.

Class B.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.  945 Longfellow St NW LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class B.2)

**Classification:**   Class B.2 consists of the Allowed Secured Claim of TD Bank with respect to 945 Longfellow St NW LLC and its related Property.

**Treatment:**   Except to the extent that the Holder of the Allowed Class B.2 Claim agrees to a different and lesser treatment, the Holder of the Class B.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class B.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class B.2 Claim shall not exceed the Allowed balance of the Class B.2 Claim. Payment towards the Class B.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be

held by the Trustee. Any remaining Cash owing toward the Class B.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class B.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.   945 Longfellow St NW LLC Classification of General Unsecured Claims (Class B.3)

**Classification:**   Class B.3 consists of Holders of Unsecured Claims with respect to 945 Longfellow St NW LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class B.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class B.3 claims.

Holders of Class B.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.   945 Longfellow St NW LLC Classification of Interests (Class B.4)

**Classification:**   Class B.4 consists of Holders of Interests in 945 Longfellow St NW LLC.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class B.4. Interests.

Holders of Class B.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

C.   Classification and Treatment of Claims of 2501 Naylor Rd SE LLC (Case No. 24-00182)

1.   2501 Naylor Rd SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class C.1)

**Classification:**    Class C.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 2501 Naylor Rd SE LLC and its related Property.

**Treatment:**    Provided that a Class C.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class A.1 Claim agrees to a different treatment, each holder of an Allowed Class A.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class C.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class C.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class C.1 Claims are not entitled to vote to accept or reject this Plan.

Class C.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

    2.    <u>2501 Naylor Rd SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class C.2)</u>

**Classification:**    Class C.2 consists of the Allowed Secured Claim of TD Bank with respect to 2501 Naylor Rd SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class C.2 Claim agrees to a different and lesser treatment, the Holder of the Class C.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class C.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class C.2 Claim shall not exceed the Allowed balance of the Class C.2 Claim. Payment towards the Class C.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class C.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class C.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

    3.    <u>2501 Naylor Rd SE LLC Classification of General Unsecured Claims (Class C.3)</u>

**Classification:**    Class C.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class C.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class C.3 claims.

Holders of Class C.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.    <u>2501 Naylor Rd SE LLC Classification of Interests (Class C.4)</u>

**Classification:**    Class C.4 consists of Holders of Interests in 2501 Naylor Rd SE LLC.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class C.4. Interests.

Holders of Class C.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

D.    Classification and Treatment of Claims of 4303-13 Wheeler Rd SE LLC (Case No. 24-00183)

1.    <u>4303-13 Wheeler Rd SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class D.1)</u>

**Classification:**    Class D.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4303-13 Wheeler Rd SE LLC and its related Property.

**Treatment:**    Provided that a Class D.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class D.1 Claim agrees to a different treatment, each holder of an Allowed Class D.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class D.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim.

Class D.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class D.1 Claims are not entitled to vote to accept or reject this Plan.

Class D.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2. <u>4303-13 Wheeler Rd SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class D.2)</u>

**Classification:**   Class D.2 consists of the Allowed Secured Claim of TD Bank with respect to 4303-13 Wheeler Rd SE LLC and its related Property.

**Treatment:**   Except to the extent that the Holder of the Allowed Class D.2 Claim agrees to a different and lesser treatment, the Holder of the Class D.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class D.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class D.2 Claim shall not exceed the Allowed balance of the Class D.2 Claim. Payment towards the Class D.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class D.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class D.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3. <u>4303-13 Wheeler Rd SE LLC Classification of General Unsecured Claims (Class D.3)</u>

**Classification:**   Class D.3 consists of Holders of Unsecured Claims with respect to 4303-13 Wheeler Rd SE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class D.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out,

no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class D.3 claims.

Holders of Class D.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.  <u>4303-13 Wheeler Rd SE LLC Classification of Interests (Class D.4)</u>

**<u>Classification:</u>**   Class D.4 consists of Holders of Interests in 4303-13 Wheeler Rd SE LLC.

**<u>Treatment:</u>**   Following payment towards any necessary Unclassified Claims, Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class D.4. Interests.

Holders of Class D.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

E.   Classification and Treatment of Claims of 4263 6th St SE Apartments LLC (Case No. 24-00184)

1.  <u>4263 6th St SE Apartments LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class E.1)</u>

**<u>Classification:</u>**   Class E.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4263 6th St SE Apartments LLC and its related Property.

**<u>Treatment:</u>**   Provided that a Class E.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class E.1 Claim agrees to a different treatment, each holder of an Allowed Class E.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class E.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class E.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class E.1 Claims are not entitled to vote to accept or reject this Plan.

Class E.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.      <u>1416 Eastern Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class E.2)</u>

**Classification:**     Class E.2 consists of the Allowed Secured Claim of TD Bank with respect to 4263 6th St SE Apartments LLC and its related Property.

**Treatment:**     Except to the extent that the Holder of the Allowed Class E.2 Claim agrees to a different and lesser treatment, the Holder of the Class E.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class E.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class E.2 Claim shall not exceed the Allowed balance of the Class E.2 Claim. Payment towards the Class E.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class E.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class E.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.      <u>4263 6th St SE Apartments LLC Classification of General Unsecured Claims (Class E.3)</u>

**Classification:**     Class E.3 consists of Holders of Unsecured Claims with respect to 4263 6th St SE Apartments LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class E.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class E.3 claims.

Holders of Class E.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.      <u>4263 6th St SE Apartments LLC Classification of Interests (Class E.4)</u>

**Classification:**     Class E.4 consists of Holders of Interests in 4263 6th St SE Apartments LLC.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class E.4. Interests.

Holders of Class E.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

F.    Classification and Treatment of Claims of 4935 NHB Ave NE LLC (Case No. 24-00185)

1.    <u>4935 NHB Ave NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class F.1)</u>

**Classification:**    Class F.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4935 NHB Ave NE LLC and its related Property.

**Treatment:**    Provided that a Class F.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class F.1 Claim agrees to a different treatment, each holder of an Allowed Class F.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class F.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class F.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class F.1 Claims are not entitled to vote to accept or reject this Plan.

Class F.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.    <u>4935 NHB Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class F.2)</u>

**Classification:**    Class F.2 consists of the Allowed Secured Claim of TD Bank with respect to 4935 NHB Ave NE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class F.2 Claim agrees to a different and lesser treatment, the Holder of the Class F.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class

F.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class F.2 Claim shall not exceed the Allowed balance of the Class F.2 Claim. Payment towards the Class F.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class F.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class F.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.   <u>4935 NHB Ave NE LLC Classification of General Unsecured Claims (Class F.3)</u>

**Classification:**   Class F.3 consists of Holders of Unsecured Claims with respect to 4935 NHB Ave NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class F.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class F.3 claims.

Holders of Class F.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.   <u>4935 NHB Ave NE LLC Classification of Interests (Class F.4)</u>

**Classification:**   Class F.4 consists of Holders of Interests in 4935 NHB Ave NE LLC.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class F.4. Interests.

Holders of Class F.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

G.   Classification and Treatment of Claims of 3968 MLK LLC (Case No. 24-00186)

1.  <u>3968 MLK LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class G.1)</u>

**Classification:**    Class G.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 3968 MLK LLC and its related Property.

**Treatment:**    Provided that a Class G.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class G.1 Claim agrees to a different treatment, each holder of an Allowed Class G.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class G.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class G.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class G.1 Claims are not entitled to vote to accept or reject this Plan.

Class G.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.  <u>3968 MLK LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class G.2)</u>

**Classification:**    Class G.2 consists of the Allowed Secured Claim of TD Bank with respect to 3968 MLK LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class G.2 Claim agrees to a different and lesser treatment, the Holder of the Class G.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class G.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class G.2 Claim shall not exceed the Allowed balance of the Class G.2 Claim. Payment towards the Class G.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class G.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class G.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.       3968 MLK LLC Classification of General Unsecured Claims (Class G.3)

**Classification:**       Class G.3 consists of Holders of Unsecured Claims with respect to 3968 MLK LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class G.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**       Following payment towards any necessary Unclassified Claims, Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class G.3 claims.

Holders of Class G.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.       3968 MLK LLC Classification of Interests (Class G.4)

**Classification:**       Class G.4 consists of Holders of Interests in 3968 MLK LLC.

**Treatment:**       Following payment towards any necessary Unclassified Claims, Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class G.4. Interests.

Holders of Class G.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

H.       Classification and Treatment of Claims of 4010 9th St SE LLC (Case No. 24-00187)

1.       4010 9th St SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class H.1)

**Classification:**       Class H.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4010 9th St SE LLC and its related Property.

**Treatment:**       Provided that a Class H.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class H.1 Claim agrees to a different treatment, each holder of an Allowed Class H.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its

Allowed Class H.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class H.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class H.1 Claims are not entitled to vote to accept or reject this Plan.

Class H.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.    <u>4010 9th St SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class H.2)</u>

**Classification:**    Class H.2 consists of the Allowed Secured Claim of TD Bank with respect to 4010 9th St SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class H.2 Claim agrees to a different and lesser treatment, the Holder of the Class H.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class H.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class H.2 Claim shall not exceed the Allowed balance of the Class H.2 Claim. Payment towards the Class H.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class H.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class H.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.    <u>4010 9th St SE LLC Classification of General Unsecured Claims (Class H.3)</u>

**Classification:**    Class H.3 consists of Holders of Unsecured Claims with respect to 4010 9th St SE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class H.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class H.3 claims.

Holders of Class H.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.    4010 9th St SE LLC Classification of Interests (Class H.4)

**Classification:**     Class H.4 consists of Holders of Interests in 4010 9th St SE LLC.

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class A.H. Interests.

Holders of Class H.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

I.    Classification and Treatment of Claims of 2440 S St SE LLC (Case No. 24-00188)

1.    2440 S St SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class I.1)

**Classification:**     Class I.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 2440 S St SE LLC and its related Property.

**Treatment:**     Provided that a Class I.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class I.1 Claim agrees to a different treatment, each holder of an Allowed Class I.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class I.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class I.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class I.1 Claims are not entitled to vote to accept or reject this Plan.

Class I.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.      <u>2440 S St SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class I.2)</u>

**Classification:**    Class I.2 consists of the Allowed Secured Claim of TD Bank with respect to 2440 S St SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class I.2 Claim agrees to a different and lesser treatment, the Holder of the Class I.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class I.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class I.2 Claim shall not exceed the Allowed balance of the Class I.2 Claim. Payment towards the Class I.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class I.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class I.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

3.      <u>2440 S St SE LLC Classification of General Unsecured Claims (Class I.3)</u>

**Classification:**    Class I.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class I.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class I.3 claims.

Holders of Class I.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

4.      <u>2440 S St SE LLC Classification of Interests (Class I.4)</u>

**Classification:**    Class I.4 consists of Holders of Interests in 2440 S St SE LLC.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out,

no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class I.4. Interests.

Holders of Class I.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

J.    Classification and Treatment of Claims of 4400 Hunt Pl NE LLC (Case No. 24-00189)

1.    4400 Hunt Pl NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class J.1)

**Classification:**    Class J.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4400 Hunt Pl NE LLC and its related Property.

**Treatment:**    Provided that a Class J.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class J.1 Claim agrees to a different treatment, each holder of an Allowed Class J.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class J.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class J.1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class J.1 Claims are not entitled to vote to accept or reject this Plan.

Class J.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

2.    4400 Hunt Pl NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class J.2)

**Classification:**    Class J.2 consists of the Allowed Secured Claim of TD Bank with respect to 4400 Hunt Pl NE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class J.2 Claim agrees to a different and lesser treatment, the Holder of the Class J.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class J.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class J.2

Claim shall not exceed the Allowed balance of the Class J.2 Claim. Payment towards the Class J.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class J.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class J.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject this Plan.

    3.    <u>4400 Hunt Pl NE LLC Classification of General Unsecured Claims (Class J.3)</u>

**<u>Classification:</u>**    Class J.3 consists of Holders of Unsecured Claims with respect to 4400 Hunt Pl NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class J.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out.

**<u>Treatment:</u>**    Following payment towards any necessary Unclassified Claims, Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class J.3 claims.

Holders of Class J.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

    4.    <u>4400 Hunt Pl NE LLC Classification of Interests (Class J.4)</u>

**<u>Classification:</u>**    Class J.4 consists of Holders of Interests in 4400 Hunt Pl NE LLC.

**<u>Treatment:</u>**    Following payment towards any necessary Unclassified Claims, Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class J.4. Interests.

Holders of Class J.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject this Plan.

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim may have in or against the Debtors, the Debtors' Estates or their Properties.  This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtors, the Debtors' Estates or property of the Debtors

or the Debtors' Estates.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM**.

For reference, the Trustee has prepared a chart detailing the Holders of Claims against the Debtor Estates and under which Class they fall under the Plan. This chart, attached as Exhibit A to this Plan, is to be used for reference purposes only and shall not serve as conclusive proof of the whether the claim is considered Allowed under the Plan.

## VI.   MEANS OF EXECUTION OF THE PLAN

### A)   <u>Authority of Trustee</u>

By confirmation of the Plan, the Trustee is authorized to take all actions and execute all documents necessary to carry out his duties under the Plan. In carrying out such duties, the Trustee shall comply with all applicable laws.

### B)   <u>Rights, Duties and Obligations of Trustee</u>

On the Effective Date, the Trustee shall have the following rights, duties, and obligations, inter alia:

a.   to distribute funds to holders of Allowed Claims and Allowed Interests consistent with the terms of the Plan;

b.   to investigate and pursue any and all remaining Causes of Action, if any;

c.   to file a final report and move to close the Debtors Chapter 11 Cases; and

d.   any other duties of a trustee consistent with the Bankruptcy Code, payment to holders of Claims, and to implement the Plan.

### C)   <u>Sale of the Properties</u>

Marcus & Millichap ("the Realtors") engaged in a vigorous marketing process to find a buyer for the Properties and received several meaningful offers.  In conjunction with the Realtors, the Trustee narrowed the offers and then selected a prospective buyer that would close promptly upon a portfolio sale consisting of sale of each of the ten Debtor Properties, and be a successful and responsible owner of the Properties. A copy of the resulting Purchase Agreement with Purchaser is attached hereto as **<u>Exhibit B</u>**.  As described more fully in the Purchase Agreement, the purchase price for the Properties is $7,020,00.00. Purchaser has delivered an earnest money deposit of $1,200,000 as provided for in the Purchase Agreement (the "Deposit"). The Purchase Price, less the amount of Deposit, and subject to appropriate adjustments and prorations as provided for in the Purchase Agreement, shall be paid at the time of Closing following entry of a Court Order approving the sale as a component of the Debtors' Confirmed Plan.

Approval of the sale of the Properties is sought pursuant to confirmation of the Plan. Pursuant to § 363(f) of the Bankruptcy Code, Sale of the Properties is to be free and clear of the liens and interests of T.D. Bank, the D.C. Government Office of Tax and Revenue, the D.C. Water and Sewer Authority, and all other liens and interests attaching to the Properties including any recorded solar lease agreements, with all liens and interests attaching to the Sales Proceeds from the Properties in the order and amount that they attached to the Properties. Properties will be sold in their "as-is" condition as of the date of closing.  No sale commission will be due except upon successful sale and settlement.

As a component of this Chapter 11 Plan and to be further set forth in the Confirmation order, sale of the Properties is to be exempt from any transfer and recordation taxes imposed on the sale as proved by 11 U.S.C. § 1146(a).

The sale is subject to notice and hearing requirement of the Bankruptcy Code, Bankruptcy Rules and the Local Rules of the Bankruptcy Court and an Order of the Bankruptcy Court approving the sale as a component of the Confirmation Order.  This includes an opportunity for higher and better offers to be submitted at the Confirmation Hearing. If the Properties are sold to the maker of a higher and better offer at the Confirmation Hearing through an Alternative Transaction, Purchaser shall be entitled to a "Break-Up Fee" as the term is used and as provided in the Purchase Agreement attached as Exhibit B in the amount of $250,000, and must be acted for when considering whether any further offers represent higher or better offers for the Properties. If no higher and better offers are received, the Properties shall be sold to Purchaser under the terms of this Plan, the Purchase Agreement, and the Confirmation Order. The Closing Date shall occur no later than 30 days after an entry of this Court entering a Confirmation Order approving the sale.

### D)    TD Bank Carve Out

As described in this Plan, it is a near certainty that the Sales Proceeds to be derived from the sale of the Properties, both as a whole and in respect to each individual case and related Property, and the available Cash on hand derived from rents received by the Trustee during the course of the case will not be sufficient to cover the secured interests of TD Bank, with all Cash Assets in the case serving as TD Bank's Cash Collateral.

In order to facilitate administration of the Debtors' bankruptcy estates and sale of TD Bank's collateral properties, TD Bank and the Trustee previously reached an agreement providing for a carve out of TD Bank's Cash Collateral and Secured Claims to provide for payment of the Administrative Claims of each Debtor Estate and other claims necessary to allow for successful sale of the Debtor Properties. The terms of this agreed Carve Out are as follows:

TD Bank agrees to reduce the amount of its Secured Claim to allow for payment of the following:

1.    Payment of Real Estate Taxes owing to the District of Columbia for each Property up to the Sale closing date;

2.    Payment of all Chapter 11 United States Trustee Fees;

3.   <u>The payment of any Secured Claim that is ahead in priority of TD Bank's Secured Claims, including the payment of any Secured Claim owing to the District of Columbia Water & Sewer Authority for the Properties;</u>

4.   <u>Payment towards any Allowed Priority Tax Claims.</u>

5.   <u>The payment of all approved Professional Fee Claims, subject to the following limitations:</u>

    a.   Payment of all Allowed Professional Fee Claims of the Trustee's Counsel, Stinson, LLP, up to a limit of $372,760.44 plus $2,500.00 for each Case and Property for each month in which the Trustee was operating the Properties to the Sale closing date ($25,000 per month across all Debtors);

    b.   Payment of any Allowed Professional Fee Claim for the sale commission owing to the Trustee's Realtors, Marcus & Millichap, up to 4% of the derived purchase price for the Properties;

    c.   Payment of the Allowed Professional Fee Claim of the Trustee's Account, Arthur Lander, CPA PC, up to a limit of $50,000.00;

    d.   Payment of the commission due to the Trustee pursuant to 11 U.S.C. § 326, but only to the extent the Allowed Professional Fee Claims of Stinson, LLP do not reach the limit on such fees provided for herein in Section VI.D.5.a.

    e.   The Payment of any Administrative Expenses Claim owing at the time of closing of sale associated with operating the Properties, subject to the limitations for such claims provided for in the Order Authorizing Trustee's Final Use of Cash Collateral [ECF Dkt. No. 111], and any subsequent Cash Collateral Budget submitted thereto.

6.   <u>Any other payment deemed necessary by the Trustee and TD Bank to allow for closing on Sale of the Properties to occur.</u>

### E)   **Plan Funding**

The Sales Proceeds, and any other Cash held by the Trustee on behalf of the Debtors' estates will fund the distributions to creditors required under this Plan in accordance with the priorities set forth in Article V hereof, with payment of administrative Expense Claims, including professional Fee Claims subject to the Carve Out.

### F)   **Transfer of Property**

Holders of Claims and Interests shall be paid in accordance with their priorities set forth in the Bankruptcy Code and the terms set forth in the Plan. Upon confirmation of the Plan, the Trustee shall perform any act that is necessary for the consummation of the Plan.

## VII.   AVOIDANCE ACTIONS

The Trustee has determined that pursuing the Avoidance Actions will not be appropriate or necessary.

## VIII.    PROVISIONS GOVERNING DISTRIBUTIONS

### A)    Distributions

Commencing on the Effective Date, the Trustee shall make payments, in Cash, to the holders of all Allowed Claims and Interests in accordance with the terms and conditions of the Plan. The Trustee may pre-pay, in full or in parts, any payments under the Plan without penalty. The Trustee shall act as disbursing agent for the purpose of making those distributions provided under the Plan.

### B)    Distributions of Cash

At the option of the Trustee, any Cash payment to be made by the Trustee pursuant to the Plan may be made by check drawn on a domestic bank or by wire transfer.

### C)    Delivery of Distributions and Undeliverable Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such holders or other writing notifying the Trustee of a change of address. If any holder's distribution is returned as undeliverable, the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest unless the Trustee is notified of a new address within thirty (30) days of the Trustee's receipt of such returned distribution.

### D)    Withholding and Reporting Requirements

In connection with the Plan and all documents executed in connection therewith and distributed thereon, the Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### E)    Time Bar to Cash Payments

Checks issued by the Trustee in respect of Allowed Claims or Interests shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Trustee by the holder of the Allowed Claim or Interest to whom such check originally was issued. On the last distribution date, all distributions for which checks were not requested to be reissued shall be used to satisfy the costs of administering and fully consummating the Plan and the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest.

### F)    Setoffs

The Trustee may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors or the Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by any of the Debtors, or the Trustee of any such claims, rights and causes of action that the Debtors or the Trustee may possess against such holder; and provided further, however, that any claims of the any of the Debtors arising before the Petition Date shall first be setoff against Claims against that Debtor arising before the Petition Date. Unless otherwise stipulated in writing by the Debtors, or asserted pursuant to a timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Debtors' estates must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such claim at the time it answers such claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred.

### G)   <u>Professional Persons with Administrative Expense Claims</u>

Notwithstanding § 503(a) of the Bankruptcy Code, each Professional Person or firm retained with approval by order of the Bankruptcy Court requesting compensation in this Chapter 11 Case pursuant to §§ 330 or 503(b) of the Bankruptcy Code for any fees for services rendered or reimbursement of expenses incurred on or before the Effective Date, shall be required to file an application for the allowance of final payment of said fees and expenses on or before sixty (60) days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged. Objections to any such application shall be filed within fourteen (14) days after the filing of the application, or as otherwise provided by Local Rule. Each Secured Creditor seeking payment or reimbursement of fees for services rendered by a Professional Person in respect of this Chapter 11 Case and pursuant to § 506(b) of the Bankruptcy Code, shall be required to file an application for the allowance of final payment of said fees within thirty (30) days of its receipt of notice from the Trustee that the Trustee believes such fees to be unreasonable. In the event that the Trustee determines that such Professional Person's fees, incurred by a Secured Creditor and requested in accordance with § 506(b) of the Bankruptcy Code are not reasonable, the Trustee shall reserve and hold such disputed funds pending the Bankruptcy Court's entry of a Final Order resolving the allowance or disallowance of such fees.

### H)   <u>Retention of Professionals After the Effective Date</u>

From and after the occurrence of the Effective Date, the Trustee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Trustee shall not be required to file applications for compensation in order to receive the compensation provided for herein. The Trustee may pay any fees and expenses of its professionals incurred after the Effective Date without further order of the Bankruptcy Court. The payment of any professional engaged after the Effective date shall be subject to any limits on such compensation provided for in the Carve Out.

**I)      Transactions on Business Days**

If the date on which a transaction is scheduled to occur under the Plan falls on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day may instead occur on said day or the next Business Day.

## IX.   PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS AND INTERESTS

**A)      No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, the Trustee is not required to distribute Cash or other property under the Plan on account of any Disputed Claim or Interest, or portion thereof, unless and until such Claim or Interest becomes an Allowed Claim or Interest. In the event that the Effective Date occurs while disputes remain pending regarding the allowance of any portion of a Claim, the Trustee may, in his sole discretion, pay the undisputed portion of any such Claim, and, further, shall establish a reserve from the Sales Proceeds. The amount of Cash to be held in the reserve shall be in an amount equal to the total amount of any disputed Class of Claims less any undisputed portion paid on the Effective Date, or in such other amount as may be agreed to by the Trustee and the Claimant. The Trustee may request that the Court determine the amount to be held in the reserve. The reserve shall be held until such time as the Court has entered a Final Order allowing or disallowing the disputed portion of the Claim, or until holder of such claim authorizes in writing the release of the amount held in the reserve on account of its Claim.

**B)      Resolution of Disputed Claims or Interests**

The Trustee shall have the right to make and file objections to Claims or Interests and shall serve a copy of each objection upon the holder of the Claim or Interest to which the objection is made as soon as practicable. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Trustee elects to withdraw any such objection or the Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim or Interest without the approval or order of the Bankruptcy Court.

**C)      Estimation**

The Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Trustee or the Debtors have previously objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim or Interest at any time, including during litigation concerning any objection to such Claim or Interest. In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, that estimated amount may constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claims or Interests, the Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim or Interest. All of the aforementioned Claims or Interests objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims or Interests which have been estimated

subsequently may be compromised, settled, withdrawn or otherwise resolved without the approval or order of the Bankruptcy Court.

**D)** **Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Trustee shall, on or before ten (10) days after the Claim becomes an Allowed Claim (if disputed), distribute to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

## X.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.   Assumption/Rejection of Executory Contracts and Unexpired Leases

The assumption and assignment or rejection of tenant leases shall be handled in a separate Motion to be filed by the trustee on or reasonably near the time of filing of the plan and resolved prior to entry of the Confirmation Order, unless so ordered otherwise in the Confirmation Order. Purchaser reserves the right to accept assignment of some, all or none of any executory contract or unexpired lease, including tenant leases, in his/its sole discretion. The leases that Purchaser wishes to assume shall be identified at or before Closing by an addendum to the Purchase Agreement. The Trustee reserves the right to reject all executory contracts and/or unexpired leases in accordance with the Bankruptcy Code, except for leases specifically identified by Purchaser for assumption and assignment and for which Purchaser has provided any required cure amounts or assurances of performance.

In the event such an agreement is reached, the Trustee will provide and file one or more notice to counterparties of the Executory Contracts and Leases to be assumed and assigned ("Assumption Notice").  The cure amount with respect to any Executory Contract or Lease to be assumed and assigned by the Trustee under the Plan shall be deemed to be $0.00 unless otherwise set forth in a pleading filed by the Trustee prior to the Confirmation Hearing or unless otherwise ordered by the Bankruptcy Court in the Confirmation Order, or unless otherwise agreed to in writing by the Trustee and the party to such contract or lease.  Objections to proposed cure amounts for the assumption and assignment of Executory Contracts and Leases should be filed by the later of the deadline to object to the Plan or 14 days after the filing of the Assumption Notice.

If a higher and better offer is submitted at the Confirmation Hearing and the Properties are sold through an Alternative Transaction, the alternate purchaser shall have the rights with respect to assumption/rejection of executory contracts and unexpired leases as provided in a purchase agreement between Trustee and the alternate purchaser, and as provided in the Court's Confirmation Order or any other Plan Document.

Except as otherwise provided in the Purchase Agreement, the Confirmation Order, this Plan, the Assumption Notice, or any other Plan Document, on the Effective Date, the Trustee will be deemed to have rejected any and all other Executory Contracts and Leases that the Debtors executed before the Effective Date to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code § 365.  On the Effective Date, the

Confirmation Order will constitute a Court order approving this rejection pursuant to § 365(a) of the Bankruptcy Code.

2.    Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an Executory Contract or Lease must be filed with the Court and served on the Trustee, the Debtors and their counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims.  The Trustee reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

## XI.    EFFECTIVENESS OF THE PLAN

### A)    Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date of the Plan:

    a)    The Bankruptcy Court shall have entered an order confirming the Plan in form and substance satisfactory to the Trustee; and

    b)    All documents, instruments and agreements, in form and substance satisfactory to the Trustee, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

### B)    Occurrence of Effective Date

This Plan will not be consummated or become binding unless and until the Effective Date Occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

    1.    Fourteen (14) days have passed since the Confirmation Date;

    2.    The Confirmation Order is not stayed;

    3.    Sale of the Properties has successfully closed;

    4.    The Trustee has filed a notice with the Bankruptcy Court that the Effective Date has occurred.

### C)    Waiver of Conditions

Each of the conditions set forth in Articles XI.A and XI.B of this Plan, except for entry of the Confirmation Order, as set forth in Article XI.A of this Plan, may be waived in whole or in

part by the Trustee.  For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Trustee as a basis to not consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### D)   Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not timely occur, the Trustee reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void.

## XII.   EFFECT OF CONFIRMATION

### A)   Release of Assets

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors and the Debtors' estate Assets. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XIII of the Plan, and the Trustee shall perform its affairs as provided in the Plan.

### B)   Binding Effect

Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### C)   Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to § 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all obligations of the Trustee under the Plan have been performed and the Chapter 11 Case has been closed

### D)   Debtors' Directors and Officers

On the Effective Date, each of the Debtors' directors, officers, members, and managers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and shall have no continuing obligations to Debtors' following the occurrence of the Effective Date.

E)     **Wind-Up and Dissolution of the Debtors**

The Debtors shall be dissolved automatically effective on the Effective Date without the need for any corporate action or approval and without the need for any corporate filings and shall not be required to pay any taxes or fees to cause such dissolution.

## XIII.  RETENTION OF JURISDICTION

A)     **Retention of Jurisdiction**

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

2.   Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code §§ 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Trustee may be made in the ordinary course of business without the approval of the Bankruptcy Court;

3.   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.   Effectuate performance of and payments under the provisions of this Plan;

5.   Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

6.   Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

7.   Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including any disputes arising with respect to

the Carve Out, and any disputes arising under agreements, documents or instruments executed in connection with this Plan;

8.   Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

10.  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.  Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

12.  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

13.  Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estate, wherever located;

14.  Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

15.  Hear and determine motions for Bankruptcy Rule 2004 examinations;

16.  Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

17.  Hear and determine any Causes of Action;

18.  Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

19.  Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

20.  Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

21.  Enforce all orders previously entered by the Bankruptcy Court;

22.  Dismiss the Case; and

23.  Enter a final decree closing the Case and reopening the Case thereafter.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

## XIV.   ACCEPTANCE OR REJECTION OF THE PLAN

### A)   **Voting of Claims**

Each holder of an Allowed Claim or Interest in an impaired Class of Claims or Interest shall be entitle to vote to accept or reject this Plan.

### B)   **Acceptance by a Class of Creditors**

Consistent with § 1126(c) of the Bankruptcy Code and except as provided in § 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims or Interests of Such Class that have timely and properly voted to accept or reject this Plan.

### C)   **Cram Down**

The Trustee shall utilize the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

## XV.   MISCELLANEOUS PROVISIONS

### A)   **Effectuating Documents and Further Transactions**

The Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Trustee as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### B)   **Modification of Plan**

The Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Trustee (and after the Effective Date, the Trustee) may upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### C)    Withdrawal or Revocation

The Trustee may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Trustee revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the any of the Debtors or any other person or to prejudice in any manner the rights of the Debtors or the Trustee or any other person in any further proceedings involving the Debtors.

### D)    Injunction Against Interference With Plan

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, professionals, officers, director, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### E)    Courts of Competent Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### F)    Notices

Any notices to or requests of the Trustee by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage pre-paid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

The Counsel for the Chapter 11 Trustee:

Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com

The U.S. Trustee
U. S. Trustee for Region Four

U. S. Trustee's Office
1725 Duke Street Suite 650
Alexandria, VA 22314

**G)**    <u>**Severability**</u>

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Trustee, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**H)**    <u>**Transfer Tax Exemption**</u>

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of any and all of the Properties, and any deed of trust evidencing any loan obtained to purchase the Properties, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Properties.

**I)**    <u>**Governing Law**</u>

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia, without giving effect to the principles of conflicts of law thereof.

**J)**    <u>**Withdrawal by Proponent**</u>

The Trustee reserves the right to withdraw this Plan at any time prior to the entry of the Confirmation Order

**K)**    <u>**Exculpation**</u>

None of the Debtors, the Trustee or any of their respective members, officers, directors, employees, attorneys, agents, or Representatives shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of , the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for willful

misconduct or gross negligence, and, in all respects, the Debtors, the Trustee and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to reply upon the advice of counsel with respect to their duties and responsibilities under this Plan.

    **L)**    **Headings**

    Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

Dated:  March 21, 2025

                         Respectfully submitted,

                         /s/ Joshua W. Cox

                         Marc E. Albert, No. 345181
                         Bradley D. Jones, No. VA 68
                         Joshua W. Cox, No. 1033283
                         Ruiqiao Wen, No. 1743500

                         **STINSON LLP**

                         1775 Pennsylvania Ave., NW
                         Suite 800
                         Washington, DC 20006
                         Tel: 202-785-9100
                         Fax: 202-572-9943
                         marc.albert@stinson.com
                         brad.jones@stinson.com
                         joshua.cox@stinson.com
                         ruiqiao.wen@stinson.com
                         *Attorneys for Marc E. Albert,*
                         *Chapter 11 Trustee*