Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Tracey M. Ohm, No. 982727
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
tracey.ohm@stinson.com
ruiqiao.wen@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, *et al.*[1], | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## DISCLOSURE STATEMENT

Marc E. Albert ("Trustee"), the Chapter 11 Trustee for the bankruptcy estates of 1416 Eastern NE LLC, et al. ("Debtors"), by and through his undersigned counsel, Stinson LLP, hereby submits this Disclosure Statement (the "Disclosure Statement") pursuant to § 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") to all holders of Claims against or Interests in the Debtors, in conjunction with soliciting acceptances to the Trustee's Plan of Liquidation (the "Plan"), which is concurrently filed by the Trustee with the Clerk of the United States Bankruptcy Court for the District of Columbia.

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THIS CHAPTER 11 CASE AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE TRUSTEE BELIEVES THAT SUCH SUMMARIES**

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

**ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE FULL TEXT OF SUCH DOCUMENTS.  THE TRUSTEE DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.**

**THE TRUSTEE BELIEVES THAT THE PLAN WILL ENABLE THE ESTATES TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATE AND THE HOLDERS OF ALL CLAIMS AND INTERESTS.**

## I.    INTRODUCTION

Each of the Debtors in this jointly administered case are single asset entities named for residential real property that it owns, and the business of each Debtor is multi-family rental housing.  The locations of the residential multi-family real property buildings for the Debtors are as follows: 1416 Eastern Avenue Northeast, Washington, DC 20019, 945 Longfellow Street Northwest, Washington, DC 20011, 2501 Naylor Road Southeast, Washington, DC 20020, 4301-4313 Wheeler Road Southeast, Washington, DC 20032, 4263-67 6th Street Southeast, Washington, DC 20032, 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019, 3968 Martin Luther King Junior Avenue SE, Washington, DC 20032, 4010 9th Street Southeast, Washington, DC 20032, 2440 S Street Southeast, Washington, DC 20020; and 4400 Hunt Place Northeast, Washington, DC 20019 (collectively, the "Properties"). Marc E. Albert is presently serving as the duly appointed and qualified chapter 11 trustee for the Debtors' estates.

The Trustee wishes to sell the Properties through these chapter 11 cases. As such, the Trustee, with the Court's approval, retained Marcus & Millichap ("the Realtors"), who engaged in a vigorous marketing process to find a buyer for the Properties and received several meaningful offers.  In conjunction with the Realtors, the Trustee narrowed the offers and then selected a prospective buyer ("Purchaser") that would close promptly, upon a portfolio sale consisting of sale of each of the ten Debtor Properties and be a successful and responsible owner of the Properties, the Trustee entered into a Purchase Agreement with the Purchaser. As described more fully in the Purchase Agreement (which is attached to the Plan), the purchase price for the Properties is $7,020,00.00, of which $1,200,000 has already been delivered by the Purchaser as an earnest money deposit. With the Court's approval of the Plan, Sale of the Properties is to be free and clear of the liens and interests of secured creditors T.D. Bank, the D.C. Government Office of Tax and Revenue, the D.C. Water and Sewer Authority, and all other liens and interests attaching to the Properties including any recorded solar lease agreements, with all liens and interests attaching to the Sale Proceeds from the Properties in the order and amount that they attached to the Properties. As an additional component of the Chapter 11 Plan, sale of the Properties is to be exempt from any transfer and recordation taxes imposed on the sale.

Due to the relative amount of T.D. Bank's secured Claims with respect to the Properties compared with the purchase price achieved through realtors extensive marketing efforts, no distribution is expected to be available for any creditor lower in priority than T.D. Bank, including any party holding a lien junior to T.D. Bank or any other unsecured creditor.

CORE/3516991.0007/197246730.2

Based on the present conditions of the Properties and available funds on hand to address the Trustee's continued operation of the Properties through Sale, time is of the essence with respect to completing sale of the Properties. Accordingly, the Trustee is seeking sale of the properties, through confirmation of the Plan as quickly as reasonably practicable.

The purpose of this Disclosure Statement (the "Disclosure Statement") is to furnish information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, that would enable a hypothetical reasonable investor typical of the holders of Claims against or Interests in the Debtors to make an informed judgment about whether to accept or reject the Trustee's Plan filed in this bankruptcy case. The Trustee believes that this Disclosure Statement contains "adequate information," as that term is defined in § 1125(a)(1) of the Bankruptcy Code, for holders of Claims against or Interests in the Debtors as required by § 1125 of the Bankruptcy Code. The transmittal of this Disclosure Statement does not represent, and should not be interpreted as being, the Bankruptcy Court's recommendation to either accept or reject the Plan.

This Disclosure Statement sets forth certain information regarding significant events that have occurred during this Chapter 11 Case. This Disclosure Statement also describes terms and provisions of the Plan, certain effects of Confirmation of the Plan, and the way Distributions will be made under the Plan, including the successful closing of the sale of each Debtor's primary asset. In addition, this Disclosure Statement discusses the confirmation process.

## A.    Definition

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan.

## B.    List of Enclosures

Also accompanying the Disclosure Statement are the Plan and its exhibits, each of which is incorporated by reference.

## C.    Availability of Other Information

The entire Court file on this Bankruptcy Case is available for review at the Office of the Clerk, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, D.C. 20001, during the Bankruptcy Court's regular business hours. Additionally, certain items may be available online through the PACER website: Court's Pacer website: http://ecf.dcb.uscourts.gov. Persons with questions about the Plan or this Disclosure Statement may contact:

Marc E. Albert
Bradley D. Jones
Joshua W. Cox
STINSON LLP
1775 Pennsylvania Ave. NW
Suite 800
Washington, DC 20006

CORE/3516991.0007/197246730.2

Tel.: (202) 728-3023
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com

**D.     Voting, Disclaimer, and Supremacy of Plan Provisions**

After carefully reviewing the Plan and this Disclosure Statement, please indicate your vote on the enclosed Ballot and return your Ballot to the Chapter 11 Trustee's counsel at the following address: Bradley D. Jones & Joshua W. Cox Esq., Stinson LLP, 1775 Pennsylvania Ave, Suite 800, Washington, DC 20006.

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

THE PLAN AND THIS DISCLOSURE STATEMENT ARE NOT REQUIRED TO BE AND HAVE NOT BEEN PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. NONE OF THE SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL OR REGULATORY AUTHORITY HAS APPROVED THIS DISCLOSURE STATEMENT, THE PLAN OR ANY SECURITIES OFFERED UNDER THE PLAN, OR HAS PASSED ON THE ACCURACY OR ADEQUACY OF THE STATEMENTS IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

NO REPRESENTATION CONCERNING THE DEBTORS, THE DEBTORS' BUSINESS OPERATIONS, THE VALUE OF THE DEBTORS' PROPERTIES, OR THE PLAN, ARE AUTHORIZED BY THE TRUSTEE UNLESS SET FORTH IN THIS DISCLOSURE STATEMENT. ACCORDINGLY, NO REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD BE RELIED UPON IN EXERCISING THE RIGHT TO VOTE OR NOT TO VOTE ON THE ACCEPTANCE OF THE PLAN AND ANY SUCH REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED IMMEDIATELY TO COUNSEL FOR THE TRUSTEE.

THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ATTACHED THERETO. IF THERE IS A CONFLICT BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. YOU ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THE ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS, BEFORE DECIDING HOW TO VOTE WITH RESPECT TO THE PLAN.

THE FINANCIAL INFORMATION SUBMITTED WITH THE DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN SUBJECT TO AUDIT AND ANY ESTIMATES OF CLAIMS OR INTERESTS IN THIS DISCLOSURE STATEMENT MAY VARY FROM

THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE BANKRUPTCY COURT. FURTHER, ANY ESTIMATES OF RECOVERIES IN THIS DISCLOSURE STATEMENT MAY VARY FROM RECOVERIES ACTUALLY RECEIVED.

THE TRUSTEE BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF ALL CREDITORS. THE PLAN AND DISCLOSURE STATEMENT ARE COMPLEX INSOFAR AS THEY CONSTITUTE A LEGALLY BINDING COMMITMENT BETWEEN THE CREDITORS AND THE DEBTOR. ACCORDINGLY, CREDITORS AND PARTIES-IN-INTEREST ARE URGED TO SEEK LEGAL COUNSEL IF UNSURE OF THE EFFECT OF THE PLAN AND DISCLOSURE STATEMENT.

THE ABSENCE OF PENDING OBJECTIONS TO CLAIMS OR PENDING AVOIDANCE ACTIONS OR THE ABSENCE OF AN INDICATION HEREIN OF POTENTIAL OBJECTIONS TO CLAIMS OR AVOIDANCE ACTIONS, SHALL NOT SERVE AS A WAIVER OF SUCH RIGHTS, AND ALL CREDITORS AND PARTIES-IN-INTEREST ARE HEREBY EXPRESSLY ON NOTICE THAT THEY SHOULD NOT RELY ON THE DISCLOSURE STATEMENT OR ABSENCE OF NOTICE OF AN OBJECTION OR POSSIBLE AVOIDANCE ACTION UNDER SECTIONS 542-550 OF THE BANKRUPTCY CODE, AS A DEFENSE TO SUCH FUTURE OBJECTION OR AVOIDANCE ACTION.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE DISCLOSURE STATEMENT IS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER.

THE DESCRIPTION OF THE PLAN IN THE DISCLOSURE STATEMENT IS A SUMMARY ONLY, AND CREDITORS AND OTHER PARTIES-IN-INTEREST ARE URGED TO REVIEW THIS ENTIRE DISCLOSURE STATEMENT, THE DETAILED DESCRIPTION OF THE PLAN CONTAINED HEREIN AND THE PLAN ITSELF, WHICH IS ANNEXED HERETO, FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS.

## II.    HISTORY OF THE DEBTORS AND THE CHAPTER 11 CASES

### A.    Petition for Relief and Appointment of the Trustee

As stated above, each of the Debtors is named for residential real property that it owns, and the business of each Debtor is multi-family rental housing. The Debtors filed their voluntary Chapter 11 petitions on May 29, 2024 (the "Petition Date").  The Debtors' cases are jointly administrated, with the case of 1416 Eastern Ave NE LLC, 24-00180-ELG serving as the main case. See Order Directing Joint Administration, [Dkt. 64]. On July 24, 2024, this Court entered an order approving appointment of Marc E. Albert as Chapter 11 trustee of the Debtors' estates. [Dkt. No. 71].  Marc E. Albert serves as the duly appointed and qualified chapter 11 trustee for the Debtors' estates.

### B.    The Employment of Professionals by the Trustee

Following appointment of the Trustee, the Trustee filed an application to authorize retention of Stinson LLP on August 8, 2024, under the authority granted by § 327 of the Bankruptcy Code. This Court entered an Order granting the application to authorize retention of Stinson LLP as counsel for Trustee on August 27, 2024.  Trustee also filed employment applications for Marcus and Millichap Real Estate Investment Services of North Carolina, Inc. ("M&M"), as realtors for the estate to market the Properties for sale and for employment of Arthur Lander and Arthur Lander, C.P.A. P.C. as accountants for the estate, both of which were approved by the Court.

**C.    Trustee's Proposed Sale of the Properties and Plan Funding**

The Trustee wishes to sell the Properties through these chapter 11 cases. As such, Marcus & Millichap ("the Realtors") engaged in a vigorous marketing process to find a buyer for the Properties and received several meaningful offers.

As part of Realtors' marketing efforts, Realtors sent 36,853 emails (EBlasts), 9,611 of which were viewed, received 2,585 social media impressions, and 9,084 Costar/Loopnet/Crexi views. Realtor agent placed 1,815 telephone calls to solicit interest in the Properties. These efforts resulted in 26 tours of the properties with prospective purchasers, and resulted in 10 offers. Through these efforts the Properties were adequately marketing and the Purchaser's offer represents the highest and best offer for sale of the properties. Nevertheless, any higher and better offers may be submitted and considered up to the date of hearing on Confirmation of the Plan.

Based on the present conditions of the Properties and available funds on hand to address the Trustee's continued operation of the Properties through Sale, time is of the essence with respect to completing sale of the Properties. Accordingly, the Trustee is seeking sale of the properties, through confirmation of the Plan as quickly as reasonably practicable.

In conjunction with the Realtors, the Trustee narrowed the offers and then selected a prospective buyer that would close promptly and be a successful and responsible owner of the Properties. On March 4-5, 2025, the Trustee entered into a Purchase Agreement with Craig London, or as may be assigned by to any single purpose entity(ies) to be established for owning the Properties ("Purchaser").  As described more fully in the Purchase Agreement (a copy of which is affixed to the Plan), the purchase price for the Properties is $7,020,00.00. Purchaser has delivered an earnest money deposit of $1,200,000 as provided for in the Purchase Agreement (the "Deposit"). The Purchase Price, less the amount of Deposit, and subject to appropriate adjustments and prorations as provided for in the Purchase Agreement, shall be paid at the time of Closing following entry of a Court Order approving the sale as a component of the Debtors' Confirmed Plan, and serve along with any available remaining Cash on hand derived from rents at the Properties as the primary funding source of the Plan.

**D.    Summary of Claims and Bar Date**

The Debtors filed Schedules of Assets and Liabilities when filing their Chapter 11 Petitions. On July 17, 2024, each Debtor filed an Amended Summary of Assets and Liabilities and Financial Affairs. Among other things, the Schedules and Statements set forth, to the extent of the

Debtors' knowledge, the Claims of known Creditors against the Debtors, based upon the Debtors' books and records.

The Bankruptcy Court established October 7, 2024, as the general bar date for creditors to file Proofs of Claim against the Debtors, and November 25, 2024, as the bar date for government agencies to file Proofs of Claim against the Debtors.

## III.   PLAN DESCRIPTION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, AND TREATMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS ATTACHED THERETO. THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST THE DEBTORS.

### A.   Overview

The Trustee believes that the Plan will allow it to efficiently liquidate its assets and make prompt distributions to creditors. The Plan, itself providing for liquidation of the Debtor estates, will result in Creditors receiving a recovery on equal or more favorable terms than if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code and distributed in accordance with the statutory scheme of priorities contained in the Bankruptcy Code.

### B.   Provisions for Payment of Unclassified Claims (Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Priority Tax Claims)

1.   Allowance of Unclassified Claims (Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims)

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

a.   Allowed Administrative Expense Claims Other than Professional Fee Claims

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if, on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Estate pay the Claim and served the motion or application on the Debtors, the Chapter 11 Trustee, and the U.S. Trustee.  Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline. Provided, however, that the Trustee may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtors' business, and also including administrative tax liabilities incurred

7

on behalf of the Estate, to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

     2.     <u>Allowed Professional Fee Claims</u>

Final Fee Applications must be filed no later than sixty (60) days after the Effective Date, as described more fully in Article XII.G of the Plan. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Trustee, and the Office of the U.S. Trustee. Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application. Allowed Priority Tax Claims

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline. In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim. In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

     3.     <u>Treatment of Unclassified Claims (Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims)</u>

     a.     Administrative Expense Claims

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by that Debtor. Holders of Administrative Expense Claims will be paid in full on account of their Claims and are not entitled vote on the Plan.

     b.     Professional Fee Claims

Except to the extent that a holder of a Professional Fee Claim agrees to a different treatment, each holder of an Professional Fee Claim shall receive, in full and complete settlement, satisfaction and discharge of its Professional Fee Claim, Cash in an amount set forth in the Court's

8

Order ruling on the holder's Final Fee Application and subject to the limitations on such claims provided for by the Carve Out.

    4.    <u>Priority Tax Claims</u>

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Holders of Allowed Priority Tax Claims will be paid in full and are not entitled to Vote on the Plan.

**C.**    <u>**Treatment of Claims and Interests under the Plan**</u>

With respect to each Debtor, the Plan generally provides for similar treatment with respect to the treatment of the Claims and Interests related to each Debtor. However, because the Debtor cases are not jointly consolidated, similar types of Claims are provided with their own Class for each Debtor. Although provided for in this singular Plan, these groupings do not affect each Debtors' status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

    1.    <u>Classification and Treatment of Claims of 1416 Eastern Ave NE LLC (Case No. 24-00180)</u>

        a.    1416 Eastern Ave NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class A.1)

<u>**Classification:**</u>    Class A.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 1416 Eastern Ave NE LLC and its related Property.

<u>**Treatment:**</u>    Provided that a Class A.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class A.1 Claim agrees to a different treatment, each holder of an Allowed Class A.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class A.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class A.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class A.1 Claims are not entitled to vote to accept or reject the Plan.

Class A.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Columbia

CORE/3516991.0007/197246730.2

Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

b.     1416 Eastern Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class A.2)

**Classification:**     Class A.2 consists of the Allowed Secured Claim of TD Bank with respect to 1416 Eastern Ave NE LLC and its related Property.

**Treatment:**     Except to the extent that the Holder of the Allowed Class A.2 Claim agrees to a different and lesser treatment, the Holder of the Class A.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class A.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class A.2 Claim shall not exceed the Allowed balance of the Class A.2 Claim. Payment towards the Class A.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class A.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class A.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

c.     1416 Eastern Ave NE LLC Classification of General Unsecured Claims (Class A.3)

**Classification:**     Class A.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amounts of its Claim are unsecured following delivery of payment toward the Class A.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class A.3 claims.

Holders of Class A.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan

d.     1416 Eastern Ave NE LLC Classification of Interests (Class A.4)

CORE/3516991.0007/197246730.2

**Classification:**          Class A.4 consists of Holders of Interests in 1416 Eastern Ave NE LLC.

**Treatment:**          Following payment towards any necessary Unclassified Claims, Class A.1 Claims, Class A.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class A.4. Interests.

Holders of Class A.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    2.    Classification and Treatment of Claims of 945 Longfellow St NW LLC (Case No. 24-00181)

    a.    945 Longfellow St NW LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class B.1)

**Classification:**          Class B.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 945 Longfellow St NW LLC and its related Property.

**Treatment:**          Provided that a Class B.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class B.1 Claim agrees to a different treatment, each holder of an Allowed Class B.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class B.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class B.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class B.1 Claims are not entitled to vote to accept or reject the Plan.

Class B.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

    b.    945 Longfellow St NW LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class B.2)

**Classification:**          Class B.2 consists of the Allowed Secured Claim of TD Bank with respect to 945 Longfellow St NW LLC and its related Property.

**Treatment:**          Except to the extent that the Holder of the Allowed Class B.2 Claim agrees to a different and lesser treatment, the Holder of the Class B.2 Claim shall receive from the corresponding Debtor Estate payment in the amount

CORE/3516991.0007/197246730.2

equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class B.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class B.2 Claim shall not exceed the Allowed balance of the Class B.2 Claim. Payment towards the Class B.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class B.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class B.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

     c.     945 Longfellow St NW LLC Classification of General Unsecured Claims (Class B.3)

**Classification:**     Class B.3 consists of Holders of Unsecured Claims with respect to 945 Longfellow St NW LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class B.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class B.3 claims.

     Holders of Class B.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

     d.     945 Longfellow St NW LLC Classification of Interests (Class B.4)

**Classification:**     Class A.4 consists of Holders of Interests in 945 Longfellow St NW LLC. Following payment towards any necessary Unclassified Claims, Class B.1 Claims, Class B.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class B.4. Interests.

**Treatment:**     Holders of Class B.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan

3.    <u>Classification and Treatment of Claims of 2501 Naylor Rd SE LLC (Case No. 24-00182)</u>

a.    2501 Naylor Rd SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class C.1)

**Classification:**    Class C.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 2501 Naylor Rd SE LLC and its related Property.

**Treatment:**    Provided that a Class C.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class A.1 Claim agrees to a different treatment, each holder of an Allowed Class A.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class C.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class C.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class C.1 Claims are not entitled to vote to accept or reject the Plan.

Class C.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

b.    2501 Naylor Rd SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class C.2)

**Classification:**    Class C.2 consists of the Allowed Secured Claim of TD Bank with respect to 2501 Naylor Rd SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class C.2 Claim agrees to a different and lesser treatment, the Holder of the Class C.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class C.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class C.2 Claim shall not exceed the Allowed balance of the Class C.2 Claim. Payment towards the Class C.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class C.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made

CORE/3516991.0007/197246730.2

pursuant to the Carve Out and the Plan. TD Bank's Class C.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

    c.    2501 Naylor Rd SE LLC Classification of General Unsecured Claims (Class C.3)

**Classification:**    Class C.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class C.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class C.3 claims.

    Holders of Class C.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    d.    2501 Naylor Rd SE LLC Classification of Interests (Class C.4)

**Classification:**    Class C.4 consists of Holders of Interests in 2501 Naylor Rd SE LLC.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class C.1 Claims, Class C.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class C.4. Interests.

    Holders of Class C.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    4.    <u>Classification and Treatment of Claims of 4303-13 Wheeler Rd SE LLC (Case No. 24-00183)</u>

    a.    4303-13 Wheeler Rd SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class D.1)

**Classification:**    Class D.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4303-13 Wheeler Rd SE LLC and its related Property.

14

**Treatment:**    Provided that a Class D.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class D.1 Claim agrees to a different treatment, each holder of an Allowed Class D.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class D.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class D.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class D.1 Claims are not entitled to vote to accept or reject the Plan.

Class D.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date

      b.    4303-13 Wheeler Rd SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class D.2)

**Classification:**    Class D.2 consists of the Allowed Secured Claim of TD Bank with respect to 4303-13 Wheeler Rd SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class D.2 Claim agrees to a different and lesser treatment, the Holder of the Class D.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class D.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class D.2 Claim shall not exceed the Allowed balance of the Class D.2 Claim. Payment towards the Class D.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class D.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class D.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

      c.    4303-13 Wheeler Rd SE LLC Classification of General Unsecured Claims (Class D.3)

**Classification:**    Class D.3 consists of Holders of Unsecured Claims with respect to 4303-13 Wheeler Rd SE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class D.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the

15

collateral for payment towards the Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class D.3 claims.

Holders of Class D.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

d.      4303-13 Wheeler Rd SE LLC Classification of Interests (Class D.4)

**Classification:** Class D.4 consists of Holders of Interests in 4303-13 Wheeler Rd SE LLC.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class D.1 Claims, Class D.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist, and no payment or other consideration is expected to be delivered to the Holders of Class D.4. Interests.

Holders of Class D.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

5.      Classification and Treatment of Claims of 4263 6th St SE Apartments LLC (Case No. 24-00184)

a.      4263 6th St SE Apartments LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class E.1)

**Classification:** Class E.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4263 6th St SE Apartments LLC and its related Property.

**Treatment:** Provided that a Class E.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class E.1 Claim agrees to a different treatment, each holder of an Allowed Class E.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class E.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class E.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class E.1 Claims are not entitled to vote to accept or reject the Plan.

16

Class E.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

b.   1416 Eastern Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class E.2)

**Classification:**   Class E.2 consists of the Allowed Secured Claim of TD Bank with respect to 4263 6th St SE Apartments LLC and its related Property.

**Treatment:**   Except to the extent that the Holder of the Allowed Class E.2 Claim agrees to a different and lesser treatment, the Holder of the Class E.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class E.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class E.2 Claim shall not exceed the Allowed balance of the Class E.2 Claim. Payment towards the Class E.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class E.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class E.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

c.   4263 6th St SE Apartments LLC Classification of General Unsecured Claims (Class E.3)

**Classification:**   Class E.3 consists of Holders of Unsecured Claims with respect to 4263 6th St SE Apartments LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class E.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class E.3 claims.

CORE/3516991.0007/197246730.2

Holders of Class E.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    d.    4263 6th St SE Apartments LLC Classification of Interests (Class E.4)

**Classification:**    Class E.4 consists of Holders of Interests in 4263 6th St SE Apartments LLC.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class E.1 Claims, Class E.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class E.4. Interests.

    Holders of Class E.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    6.    Classification and Treatment of Claims of 4935 NHB Ave NE LLC (Case No. 24-00185)

    a.    4935 NHB Ave NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class F.1)

**Classification:**    Class F.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4935 NHB Ave NE LLC and its related Property.

**Treatment:**    Provided that a Class F.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class F.1 Claim agrees to a different treatment, each holder of an Allowed Class F.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class F.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class F.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class F.1 Claims are not entitled to vote to accept or reject the Plan.

    Class F.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

    b.    4935 NHB Ave NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class F.2)

**Classification:** Class F.2 consists of the Allowed Secured Claim of TD Bank with respect to 4935 NHB Ave NE LLC and its related Property.

**Treatment:** Except to the extent that the Holder of the Allowed Class F.2 Claim agrees to a different and lesser treatment, the Holder of the Class F.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class F.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class F.2 Claim shall not exceed the Allowed balance of the Class F.2 Claim. Payment towards the Class F.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class F.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class F.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

      c.    4935 NHB Ave NE LLC Classification of General Unsecured Claims (Class F.3)

**Classification:** Class F.3 consists of Holders of Unsecured Claims with respect to 4935 NHB Ave NE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class F.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class F.3 claims.

Holders of Class F.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

      d.    4935 NHB Ave NE LLC Classification of Interests (Class F.4)

**Classification:** Class F.4 consists of Holders of Interests in 4935 NHB Ave NE LLC.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class F.1 Claims, Class F.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and

CORE/3516991.0007/197246730.2

no payment or other consideration is expected to be delivered to the Holders of Class F.4. Interests.

Holders of Class F.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

7.   Classification and Treatment of Claims of 3968 MLK LLC (Case No. 24-00186)

    a.   3968 MLK LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class G.1)

**Classification:**   Class G.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 3968 MLK LLC and its related Property.

**Treatment:**   Provided that a Class G.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class G.1 Claim agrees to a different treatment, each holder of an Allowed Class G.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class G.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class G.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class G.1 Claims are not entitled to vote to accept or reject the Plan.

Class G.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date

    b.   3968 MLK LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class G.2)

**Classification:**   Class G.2 consists of the Allowed Secured Claim of TD Bank with respect to 3968 MLK LLC and its related Property.

**Treatment:**   Except to the extent that the Holder of the Allowed Class G.2 Claim agrees to a different and lesser treatment, the Holder of the Class G.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class G.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class G.2 Claim shall not exceed the Allowed balance of the Class G.2 Claim. Payment towards the Class G.2 Claim shall occur on the Closing Date (or

as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class G.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class G.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

  c.  3968 MLK LLC Classification of General Unsecured Claims (Class G.3)

**Classification:**  Class G.3 consists of Holders of Unsecured Claims with respect to 3968 MLK LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class G.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**  Following payment towards any necessary Unclassified Claims, Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class G.3 claims.

  Holders of Class G.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

  d.  3968 MLK LLC Classification of Interests (Class G.4)

**Classification:**  Class G.4 consists of Holders of Interests in 3968 MLK LLC.

**Treatment:**  Following payment towards any necessary Unclassified Claims, Class G.1 Claims, Class G.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class G.4. Interests.

  Holders of Class G.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

  8.  <u>Classification and Treatment of Claims of 4010 9th St SE LLC (Case No. 24-00187)</u>

  a.  4010 9th St SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class H.1)

**Classification:**     Class H.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4010 9th St SE LLC and its related Property.

**Treatment:**     Provided that a Class H.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class H.1 Claim agrees to a different treatment, each holder of an Allowed Class H.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class H.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class H.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class H.1 Claims are not entitled to vote to accept or reject the Plan.

Class H.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

b.    4010 9th St SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class H.2)

**Classification:**     Class H.2 consists of the Allowed Secured Claim of TD Bank with respect to 4010 9th St SE LLC and its related Property.

**Treatment:**     Except to the extent that the Holder of the Allowed Class H.2 Claim agrees to a different and lesser treatment, the Holder of the Class H.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class H.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class H.2 Claim shall not exceed the Allowed balance of the Class H.2 Claim. Payment towards the Class H.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class H.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class H.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

c.    4010 9th St SE LLC Classification of General Unsecured Claims (Class H.3)

CORE/3516991.0007/197246730.2

**Classification:** Class H.3 consists of Holders of Unsecured Claims with respect to 4010 9th St SE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class H.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class H.3 claims.

Holders of Class H.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    d.    4010 9th St SE LLC Classification of Interests (Class H.4)

**Classification:** Class H.4 consists of Holders of Interests in 4010 9th St SE LLC.

**Treatment:** Following payment towards any necessary Unclassified Claims, Class H.1 Claims, Class H.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class A.H. Interests.

Holders of Class H.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

    9.    <u>Classification and Treatment of Claims of 2440 S St SE LLC (Case No. 24-00188)</u>

    a.    2440 S St SE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class I.1)

**Classification:** Class I.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 2440 S St SE LLC and its related Property.

**Treatment:** Provided that a Class I.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class I.1 Claim agrees to a different treatment, each holder of an Allowed Class I.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class I.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class I.1 is unimpaired under the Plan and is conclusively presumed to have accepted

CORE/3516991.0007/197246730.2

the Plan and, therefore, Holders of Class I.1 Claims are not entitled to vote to accept or reject the Plan.

Class I.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

b.    2440 S St SE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class I.2)

**Classification:**    Class I.2 consists of the Allowed Secured Claim of TD Bank with respect to 2440 S St SE LLC and its related Property.

**Treatment:**    Except to the extent that the Holder of the Allowed Class I.2 Claim agrees to a different and lesser treatment, the Holder of the Class I.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class I.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class I.2 Claim shall not exceed the Allowed balance of the Class I.2 Claim. Payment towards the Class I.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class I.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class I.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

c.    2440 S St SE LLC Classification of General Unsecured Claims (Class I.3)

**Classification:**    Class I.3 consists of Holders of Unsecured Claims with respect to 1416 Eastern Ave NE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class I.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**    Following payment towards any necessary Unclassified Claims, Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class I.3 claims.

CORE/3516991.0007/197246730.2

Holders of Class I.3 Claims are impaired, but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

     d.     2440 S St SE LLC Classification of Interests (Class I.4)

**Classification:**     Class I.4 consists of Holders of Interests in 2440 S St SE LLC.

**Treatment:**     Following payment towards any necessary Unclassified Claims, Class I.1 Claims, Class I.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment or other consideration is expected to be delivered to the Holders of Class I.4. Interests.

Holders of Class I.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

     10.     <u>Classification and Treatment of Claims of 4400 Hunt Pl NE LLC (Case No. 24-00189)</u>

     a.     4400 Hunt Pl NE LLC Classification and Treatment of Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Class J.1)

**Classification:**     Class J.1 consists of all taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank with respect to 4400 Hunt Pl NE LLC and its related Property.

**Treatment:**     Provided that a Class J.1 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of Class J.1 Claim agrees to a different treatment, each holder of an Allowed Class J.1 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class J.1 Claim, at the time of closing on sale of the Properties from the Sales Proceeds, Cash equal to the unpaid portion of such claim. Class J.1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and, therefore, Holders of Class J.1 Claims are not entitled to vote to accept or reject the Plan.

Class J.1. is expected to exclusively consist of Claims owing to the District of Columbia associated with any unpaid real estate taxes owing on the Property up to the Closing Date and Claims of the District of Colombia Water & Sewer Authority for any unpaid water utility charges owing for the Property on the Closing Date.

     b.     4400 Hunt Pl NE LLC Classification and Treatment of Allowed Secured Claim of TD Bank (Class J.2)

**Classification:**   Class J.2 consists of the Allowed Secured Claim of TD Bank with respect to 4400 Hunt Pl NE LLC and its related Property.

**Treatment:**   Except to the extent that the Holder of the Allowed Class J.2 Claim agrees to a different and lesser treatment, the Holder of the Class J.2 Claim shall receive from the corresponding Debtor Estate payment in the amount equaling the value of all remaining Sales Proceeds derived from the Property and other Cash held by the Trustee following payment of any Class J.1 Claims and distributions to be made pursuant to the Carve Out. Notwithstanding the foregoing, distributions made towards the Class J.2 Claim shall not exceed the Allowed balance of the Class J.2 Claim. Payment towards the Class J.2 Claim shall occur on the Closing Date (or as soon as reasonably practicable thereafter), with a reservation of funds necessary to account for payments pursuant to the Carve Out and Plan to be held by the Trustee. Any remaining Cash owing toward the Class J.2 Claim shall be paid to TD Bank by the Trustee within a reasonable time following confirmation of amounts needed to satisfy any remaining payments made pursuant to the Carve Out and the Plan. TD Bank's Class J.2 Claim is impaired, and TD Bank is entitled to vote to accept or reject the Plan.

     c.   4400 Hunt Pl NE LLC Classification of General Unsecured Claims (Class J.3)

**Classification:**   Class J.3 consists of Holders of Unsecured Claims with respect to 4400 Hunt Pl NE LLC and its related Property, including TD Bank to the extent remaining amount s of its Claim are unsecured following delivery of payment toward the Class J.2 Claim, and any other holder of a lien against the Property lower in priority than TD Bank following liquidation of the collateral for payment towards the Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and no payment is expected to be delivered to the Holders of Class J.3 claims.

Holders of Class J.3 Claims are impaired, but by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

     d.   4400 Hunt Pl NE LLC Classification of Interests (Class J.4)

**Classification:**   Class J.4 consists of Holders of Interests in 4400 Hunt Pl NE LLC.

**Treatment:**   Following payment towards any necessary Unclassified Claims, Class J.1 Claims, Class J.2. Claims, and payments subject to TD Bank's Carve Out, no remaining funds or other assets of the Debtor are expected to exist and

26

no payment or other consideration is expected to be delivered to the Holders of Class J.4. Interests.

Holders of Class J.4 Interests are impaired but, by virtue of not receiving a distribution, are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

**D.**   **Means of Execution of the Plan**

1.   <u>Authority of Trustee</u>: By confirmation of the Plan, the Trustee is authorized to take all actions and execute all documents necessary to carry out his duties under the Plan. In carrying out such duties, the Trustee shall comply with all applicable laws.

2.   <u>Rights, Duties and Obligations of Trustee</u> On the Effective Date, the Trustee shall have the following rights, duties, and obligations, inter alia:

   a.   to distribute funds to holders of Allowed Claims and Allowed Interests consistent with the terms of the Plan;

   b.   to investigate and pursue any and all remaining Causes of Action, if any;

   c.   to file a final report and move to close the Debtors Chapter 11 Cases; and

   d.   any other duties of a trustee consistent with the Bankruptcy Code, payment to holders of Claims, and to implement the Plan.

3.   <u>Sale of the Properties</u>: Marcus & Millichap ("the Realtors") engaged in a vigorous marketing process to find a buyer for the Properties and received several meaningful offers.  In conjunction with the Realtors, the Trustee narrowed the offers and then selected a prospective buyer that would close promptly upon a portfolio sale consisting of sale of each of the ten Debtor Properties and be a successful and responsible owner of the Properties. A copy of the resulting Purchase Agreement with Purchaser is attached as Exhibit B to the Plan.  As described more fully in the Purchase Agreement, the purchase price for the Properties is $7,020,00.00. Purchaser has delivered an earnest money deposit of $1,200,000 as provided for in the Purchase Agreement (the "Deposit"). The Purchase Price, less the amount of Deposit, and subject to appropriate adjustments and prorations as provided for in the Purchase Agreement, shall be paid at the time of Closing following entry of a Court Order approving the sale as a component of the Debtors' Confirmed Plan.

Approval of the sale of the Properties is sought pursuant to confirmation of the Plan.  Pursuant to § 363(f) of the Bankruptcy Code, Sale of the Properties is to be free and clear of the liens and interests of T.D. Bank, the D.C. Government Office of Tax and Revenue, the D.C. Water and Sewer Authority, and all other liens and interests attaching to the Properties including any recorded solar lease agreements, with all liens and interests attaching to the Sales Proceeds from the Properties in the order and amount that they attached to the Properties. Properties will be sold in

their "as-is" condition as of the date of closing.  No sale commission will be due except upon successful sale and settlement.

As a component of this Chapter 11 Plan and to be further set forth in the Confirmation order, sale of the Properties is to be exempt from any transfer and recordation taxes imposed on the sale as proved by 11 U.S.C. § 1146(a).

The sale is subject to notice and hearing requirement of the Bankruptcy Code, Bankruptcy Rules and the Local Rules of the Bankruptcy Court and an Order of the Bankruptcy Court approving the sale as a component of the Confirmation Order. This includes an opportunity for higher and better offers to be submitted at the Confirmation Hearing. If the Properties are sold to the maker of a higher and better offer at the Confirmation Hearing through an Alternative Transaction, Purchaser shall be entitled to a "Break-Up Fee" as the term is used and as provided in the Purchase Agreement attached as Exhibit B in the amount of $250,000, and must be acted for when considering whether any further offers represent higher or better offers for the Properties. If no higher and better offers are received, the Properties shall be sold to Purchaser under the terms of the Plan, the Purchase Agreement, and the Confirmation Order. The Closing Date shall occur no later than 30 days after an entry of this Court entering a Confirmation Order approving the sale.

4.   <u>TD Bank Carve Out:</u> As described in the Plan, it is a near certainty that the Sales Proceeds to be derived from the sale of the Properties, both as a whole and in respect to each individual case and related Property, and the available Cash on hand derived from rents received by the Trustee during the course of the case will not be sufficient to cover the secured interests of TD Bank, with all Cash Assets in the case serving as TD Bank's Cash Collateral.

In order to facilitate administration of the Debtors' bankruptcy estates and sale of TD Bank's collateral properties, TD Bank and the Trustee previously reached an agreement providing for a carve out of TD Bank's Cash Collateral and Secured Claims to provide for payment of the Administrative Claims of each Debtor Estate and other claims necessary to allow for successful sale of the Debtor Properties. The terms of this agreed Carve Out are as follows:

TD Bank agrees to reduce the amount of its Secured Claim to allow for payment of the following:

a.   Payment of Real Estate Taxes owing to the District of Columbia for each Property up to the Sale closing date;

b.   Payment of all Chapter 11 United States Trustee Fees;

c.   The payment of any Secured Claim that is ahead in priority of TD Bank's Secured Claims, including the payment of any Secured Claim owing to the District of Columbia Water & Sewer Authority for the Properties;

d.   Payment towards any Allowed Priority Tax Claims.

e.    The payment of all approved Professional Fee Claims, subject to the following limitations:

  i.    Payment of all Allowed Professional Fee Claims of the Trustee's Counsel, Stinson, LLP, up to a limit of $372,760.44 plus $2,500.00 for each Case and Property for each month in which the Trustee was operating the Properties to the Sale closing date ($25,000 per month across all Debtors);

  ii.    Payment of any Allowed Professional Fee Claim for the sale commission owing to the Trustee's Realtors, Marcus & Millichap, up to 4% of the derived purchase price for the Properties;

  iii.    Payment of the Allowed Professional Fee Claim of the Trustee's Account, Arthur Lander, CPA PC, up to a limit of $50,000.00;

  iv.    Payment of the commission due to the Trustee pursuant to 11 U.S.C. § 326, but only to the extent the Allowed Professional Fee Claims of Stinson, LLP do not reach the limit on such fees provided for herein in in Section V.D.1.a.

  v.    The Payment of any Administrative Expenses Claim owing at the time of closing of sale associated with operating the Properties, subject to the limitations for such claims provided for in the Order Authorizing Trustee's Final Use of Cash Collateral [ECF Dkt. No. 111], and any subsequent Cash Collateral Budget submitted thereto.

f.    Any other payment deemed necessary by the Trustee and TD Bank to allow for closing on Sale of the Properties to occur.

5.    <u>Plan Funding</u>: The proceeds of the Sales Proceeds, and any other Cash held by the Trustee on behalf of the Debtors' estates will fund the distributions to creditors required under the Plan in accordance with the priorities set forth in Article IV thereof, with payment of administrative Expense Claims, including professional Fee Claims subject to the Carve Out

6.    <u>Transfer of Property</u>: Holders of Claims and Interests shall be paid in accordance with their priorities set forth in the Bankruptcy Code and the terms set forth in the Plan. Upon confirmation of the Plan, the Trustee shall perform any act that is necessary for the consummation of the Plan.

## E.    **Provisions Governing Distributions**

1.    <u>Distributions</u>

Commencing on the Effective Date, the Trustee shall make payments, in Cash, to the holders of all Allowed Claims and Interests in accordance with the terms and conditions of the Plan. The Trustee may pre-pay, in full or in parts, any payments under the Plan without penalty.

The Trustee shall act as disbursing agent for the purpose of making those distributions provided under the Plan.

2.    Distributions of Cash

At the option of the Trustee, any Cash payment to be made by the Trustee pursuant to the Plan may be made by check drawn on a domestic bank or by wire transfer.

3.    Delivery of Distributions and Undeliverable Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such holders or other writing notifying the Trustee of a change of address. If any holder's distribution is returned as undeliverable, the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest unless the Trustee is notified of a new address within thirty (30) days of the Trustee's receipt of such returned distribution.

4.    Withholding and Reporting Requirements

In connection with the Plan and all documents executed in connection therewith and distributed thereon, the Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

5.    Time Bar to Cash Payments

Checks issued by the Trustee in respect of Allowed Claims or Interests shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Trustee by the holder of the Allowed Claim or Interest to whom such check originally was issued. On the last distribution date, all distributions for which checks were not requested to be reissued shall be used to satisfy the costs of administering and fully consummating the Plan and the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest.

6.    Setoffs

The Trustee may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors or the Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by any of the Debtors, or the Trustee of any such claims, rights and causes of action that the Debtors or the Trustee may possess against such holder; and provided further, however, that any claims of the any of the Debtors arising before the Petition Date shall first be setoff against Claims against that Debtor arising before the Petition Date. Unless otherwise stipulated in writing by the Debtors, or asserted pursuant to a timely filed Proof of Claim, any party against whom a claim or counterclaim is

30

asserted by the Debtors' estates must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such claim at the time it answers such claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred.

      7.      <u>Professional Persons with Administrative Expense Claims</u>

Notwithstanding § 503(a) of the Bankruptcy Code, each Professional Person or firm retained with approval by order of the Bankruptcy Court requesting compensation in this Chapter 11 Case pursuant to §§ 330 or 503(b) of the Bankruptcy Code for any fees for services rendered or reimbursement of expenses incurred on or before the Effective Date, shall be required to file an application for the allowance of final payment of said fees and expenses on or before sixty (60) days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged. Objections to any such application shall be filed within fourteen (14) days after the filing of the application, or as otherwise provided by Local Rule. Each Secured Creditor seeking payment or reimbursement of fees for services rendered by a Professional Person in respect of this Chapter 11 Case and pursuant to § 506(b) of the Bankruptcy Code, shall be required to file an application for the allowance of final payment of said fees within thirty (30) days of its receipt of notice from the Trustee that the Trustee believes such fees to be unreasonable. In the event that the Trustee determines that such Professional Person's fees, incurred by a Secured Creditor and requested in accordance with § 506(b) of the Bankruptcy Code are not reasonable, the Trustee shall reserve and hold such disputed funds pending the Bankruptcy Court's entry of a Final Order resolving the allowance or disallowance of such fees.

      8.      <u>Retention of Professionals After the Effective Date</u>

From and after the occurrence of the Effective Date, the Trustee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Trustee shall not be required to file applications for compensation in order to receive the compensation provided for herein. The Trustee may pay any fees and expenses of its professionals incurred after the Effective Date without further order of the Bankruptcy Court. The payment of any professional engaged after the Effective date shall be subject to any limits on such compensation provided for in the Carve Out.

      9.      <u>Transactions on Business Days</u>

If the date on which a transaction is scheduled to occur under the Plan falls on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day may instead occur on said day or the next Business Day.

**F.**      <u>**Procedures for Resolving and Treating Disputed Claims and Interests**</u>

      1.      <u>No Distribution Pending Allowance</u>: Notwithstanding any other provision of the Plan, the Trustee is not required to distribute Cash or other property under the Plan on account of any Disputed Claim or Interest, or portion thereof, unless and until such Claim or Interest becomes an Allowed Claim or Interest. In the event that the

Effective Date occurs while disputes remain pending regarding the allowance of any portion of a Claim, the Trustee may, in his sole discretion, pay the undisputed portion of any such Claim, and, further, shall establish a reserve from the Sale Proceeds. The amount of Cash to be held in the reserve shall be in an amount equal to the total amount of any disputed Class of Claims less any undisputed portion paid on the Effective Date, or in such other amount as may be agreed to by the Trustee and the Claimant. The Trustee may request that the Court determine the amount to be held in the reserve. The reserve shall be held until such time as the Court has entered a Final Order allowing or disallowing the disputed portion of the Claim, or until holder of such claim authorizes in writing the release of the amount held in the reserve on account of its Claim.

2.  <u>Resolution of Disputed Claims or Interests</u>: The Trustee shall have the right to make and file objections to Claims or Interests and shall serve a copy of each objection upon the holder of the Claim or Interest to which the objection is made as soon as practicable. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Trustee elects to withdraw any such objection or the Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim or Interest without the approval or order of the Bankruptcy Court.

3.  <u>Estimation</u>: The Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Trustee or the Debtors have previously objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim or Interest at any time, including during litigation concerning any objection to such Claim or Interest. In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, that estimated amount may constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claims or Interests, the Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim or Interest. All of the aforementioned Claims or Interests objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims or Interests which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without the approval or order of the Bankruptcy Court.

4.  <u>Allowance of Disputed Claims</u>: If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Trustee shall, on or before ten (10) days after the Claim becomes an Allowed Claim (if disputed), distribute to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

## G.   <u>Treatment of Executory Contracts and Unexpired Leases</u>

CORE/3516991.0007/197246730.2

1.    <u>Assumption/Rejection of Executory Contracts and Unexpired Leases</u>: The assumption and assignment or rejection of tenant leases shall be handled in a separate Motion to be filed by the Trustee on or reasonably near the time of filing of the plan and resolved prior to entry of the Confirmation Order, unless so ordered otherwise in the Confirmation Order. Purchaser reserves the right to accept assignment of some, all or none of any executory contract or unexpired lease, including tenant leases, in his/its sole discretion. The leases that Purchaser wishes to assume shall be identified at or before Closing by an addendum to the Purchase Agreement. The Trustee reserves the right to reject all executory contracts and/or unexpired leases in accordance with the Bankruptcy Code, except for leases specifically identified by Purchaser for assumption and assignment and for which Purchaser has provided any required cure amounts or assurances of performance.

In the event such an agreement is reached, the Trustee will provide and file one or more notice to counterparties of the Executory Contracts and Leases to be assumed and assigned ("Assumption Notice").  The cure amount with respect to any Executory Contract or Lease to be assumed and assigned by the Trustee under the Plan shall be deemed to be $0.00 unless otherwise set forth in a pleading filed by the Trustee prior to the Confirmation Hearing or unless otherwise ordered by the Bankruptcy Court in the Confirmation Order, or unless otherwise agreed to in writing by the Trustee and the party to such contract or lease.  Objections to proposed cure amounts for the assumption and assignment of Executory Contracts and Leases should be filed by the later of the deadline to object to the Plan or 14 days after the filing of the Assumption Notice.

If a higher and better offer is submitted at the Confirmation Hearing and the Properties are sold through an Alternative Transaction, the alternate purchaser shall have the rights with respect to assumption/rejection of executory contracts and unexpired leases as provided in a purchase agreement between Trustee and the alternate purchaser, and as provided in the Court's Confirmation Order or any other Plan Document.

Except as otherwise provided in the Purchase Agreement, the Confirmation Order, the Plan, the Assumption Notice, or any other Plan Document, on the Effective Date, the Trustee will be deemed to have rejected any and all other Executory Contracts and Leases that the Debtors executed before the Effective Date to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code § 365.  On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection pursuant to § 365(a) of the Bankruptcy Code.

2.    <u>Bar Date for Rejection Damage Claims</u>: Any Rejection Damage Claims arising from the rejection under the Plan of an Executory Contract or Lease must be filed with the Court and served on the Trustee, the Debtors and their counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan

on account of their Rejection Damage Claims.  The Trustee reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

**H.**     **Effectiveness of the Plan**

1.     <u>Conditions Precedent to the Effective Date</u>: The following are conditions precedent to the Effective Date of the Plan:

   a.     The Bankruptcy Court shall have entered an order confirming the Plan in form and substance satisfactory to the Trustee; and

   b.     All documents, instruments and agreements, in form and substance satisfactory to the Trustee, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

2.     <u>Occurrence of Effective Date</u>: The Plan will not be consummated or become binding unless and until the Effective Date Occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

   a.     Fourteen (14) days have passed since the Confirmation Date;

   b.     The Confirmation Order is not stayed;

   c.     Sales of the Properties has successfully closed.

   d.     The Trustee has filed a notice with the Bankruptcy Court that the Effective Date has occurred.

3.     <u>Waiver of Conditions</u>: Each of the conditions set forth in Articles XI.A and XI.B of the Plan, except for entry of the Confirmation Order, as set forth in Article XI.A of the Plan, may be waived in whole or in part by the Trustee.  For the avoidance of doubt, absent a stay pending appeal, the pendency of any appeal of the Confirmation Order shall not cause the delay of the Effective Date.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Trustee as a basis to not consummate the Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

4.     <u>Consequences of Non-Occurrence of Effective Date</u>: In the event that the Effective Date does not timely occur, the Trustee reserves all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void.

34

## I.   Effect of Confirmation

1.   <u>Release of Assets</u>: Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors and the Debtors' estate Assets. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XIII of the Plan, and the Trustee shall perform its affairs as provided in the Plan.

2.   <u>Binding Effect</u>: Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

3.   <u>Term of Injunctions or Stays</u>: Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to § 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all obligations of the Trustee under the Plan have been performed and the Chapter 11 Case has been closed

4.   <u>Debtors' Directors and Officers</u>: On the Effective Date, each of the Debtors' directors, officers, members, and managers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings and shall have no continuing obligations to Debtors' following the occurrence of the Effective Date.

5.   <u>Wind-Up and Dissolution of the Debtor</u>: The Debtors shall be dissolved automatically effective on the Effective Date without the need for any corporate action or approval and without the need for any corporate filings and shall not be required to pay any taxes or fees to cause such dissolution.

## J.   Retention of Jurisdiction

1.   <u>Purpose of Retention</u>: Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, the Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

a.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

35

b.       Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code §§ 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Trustee may be made in the ordinary course of business without the approval of the Bankruptcy Court;

c.       Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

d.       Effectuate performance of and payments under the provisions of the Plan;

e.       Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, the Plan, or any Plan Document;

f.       Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

g.       Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including any disputes arising with respects to the Carveout, and disputes arising under agreements, documents or instruments executed in connection with the Plan;

h.       Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

i.       Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

j.       Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

k.       Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order, or any Plan Document;

CORE/3516991.0007/197246730.2

l.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

m.      Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estate, wherever located;

n.      Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

o.      Hear and determine motions for Bankruptcy Rule 2004 examinations;

p.      Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

q.      Hear and determine any Causes of Action;

r.      Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to the Plan;

s.      Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

t.      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

u.      Enforce all orders previously entered by the Bankruptcy Court;

v.      Dismiss the Case; and

w.      Enter a final decree closing the Case and reopening the Case thereafter.

x.      If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

## K.   <u>Miscellaneous Provisions</u>

1.      <u>Effectuating Documents and Further Transactions</u>: The Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Trustee as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

2.      <u>Modification of Plan</u>: The Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any

time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Trustee (and after the Effective Date, the Trustee) may upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

3.   <u>Withdrawal or Revocation</u>: The Trustee may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Trustee revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the any of the Debtors or any other person or to prejudice in any manner the rights of the Debtors or the Trustee or any other person in any further proceedings involving the Debtors.

4.   <u>Injunction Against Interference With Plan</u>: Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, professionals, officers, director, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

5.   <u>Courts of Competent Jurisdiction</u>: If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

6.   <u>Notices</u>: Any notices to or requests of the Trustee by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage pre-paid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

<u>The Counsel for the Chapter 11 Trustee:</u>

Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006

Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com

The U.S. Trustee

U. S. Trustee for Region Four
U. S. Trustee's Office
1725 Duke Street
Suite 650
Alexandria, VA 22314

7.   Severability: In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Trustee, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.   Governing Law: Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia, without giving effect to the principles of conflicts of law thereof.

9.   Withdrawal by Proponent: The Trustee reserves the right to withdraw the Plan at any time prior to the entry of the Confirmation Order

10.   Exculpation: None of the Debtors, the Trustee or any of their respective members, officers, directors, employees, attorneys, agents, or Representatives shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of , the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Trustee and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to reply upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## IV.    LIQUIDATION ANALYSIS UNDER CHAPTER 7

Through the Trustee's sale of the Properties, substantially all of the Debtors' assets will be liquidated for the benefit of Debtors' estate. Further, the Plan provides for distributions towards creditors in the same priority as they would receive under chapter 7. The Trustee is proposing approval of the Plan, instead of seeking conversion to chapter 7, based on time and administrative expense savings associated with the Plan approval process in Chapter 11 compared to the timelines and work that would be required if the case were to be converted. Because the Plan proposes distributions in the same priority presented in Chapter 7, but on a faster timeline to disbursement with less incurred administrative costs, creditors will receive an amount equal or greater than what they would receive in a chapter 7 liquidation.

## V.    AVOIDANCE ACTIONS

The Trustee has determined that pursuing the Avoidance Actions will not be appropriate or necessary.

## VI.    TAX CONSEQUENCES TO CREDITORS

THE DISCUSSION OF FEDERAL INCOME TAX CONSEQUENCES SET FORTH BELOW IS LIMITED TO THE GENERAL TAX CONSEQUENCES EFFECTING CREDITORS AS A RESULT OF THE DISCHARGE OF INDEBTEDNESS WITHOUT PAYMENT UNDER THE PLAN. EACH CREDITOR OR INTEREST HOLDER SHOULD CONSULT THEIR OWN TAX ADVISOR TO DETERMINE THAT THE TREATMENT AFFORDED THEIR RESPECTIVE CLAIMS OR INTERESTS BY THE PLAN UNDER FEDERAL TAX LAW, THE TAX LAWS OF THE VARIOUS STATES AND LOCAL JURISDICTIONS OF THE UNITED STATES AND THE LAWS OF FOREIGN JURISDICTIONS.

BECAUSE OF CONTINUAL CHANGES BY THE CONGRESS, THE TREASURY DEPARTMENT, AND THE COURTS WITH RESPECT TO THE ADMINISTRATION AND INTERPRETATION OF THE TAX LAWS, NO ASSURANCE CAN BE GIVEN THAT THE FOLLOWING INTERPRETATIONS WILL NOT BE CHALLENGED BY THE INTERNAL REVENUE SERVICE, OR, IF CHALLENGED, THAT SUCH INTERPRETATIONS WILL BE SUSTAINED.

NO STATEMENT IN THIS DISCLOSURE STATEMENT SHOULD BE CONSTRUED AS LEGAL OR TAX ADVICE. THE TRUSTEE AND HIS COUNSEL DO NOT ASSUME ANY RESPONSIBILITY OR LIABILITY FOR THE TAX CONSEQUENCES OF A CREDITOR WHICH MAY OCCUR AS A RESULT OF THE TREATMENT AFFORDED THEIR CLAIM OR INTEREST UNDER THE PLAN.

## VII.    CRAM DOWN

Section 1129(b) of the Bankruptcy Code permits the Bankruptcy Court to approve the Plan even if one or more classes of impaired claims or interests do not accept the Plan. This is referred to as a cram down. Under § 1129(b), the Bankruptcy Court may confirm the Plan only if it finds that certain circumstances exist. First, the Plan must be accepted by at least one impaired class and

40

must not discriminate unfairly against, and be fair and equitable to, all non-accepting impaired classes. Second, unless all members of a non-accepting, impaired class receive payment in full of their Allowed Claims, no class that is junior in priority to the non-accepting impaired class may receive anything under the Plan. IF ANY CLASS REJECTS THE PLAN, THE TRUSTEE WILL SEEK TO CONFIRM THE PLAN PURSUANT TO THE CRAM DOWN METHOD PROVIDED BY SECTION 1129(b). THE TREATMENT AFFORDED CREDITORS IN EACH CLASS IN THE EVENT OF A "CRAM DOWN" WILL BE AS INDICATED HEREIN. Any effort by the Trustee to confirm the Plan pursuant to the cram down method will likely involve complex litigation which, regardless of the outcome, may impose substantial additional administrative expenses on the Debtors' estates. Such expenses would be paid ahead of any distribution on Unsecured Claims.

## VIII.   VOTING ON THE PLAN AND ACCEPTANCE

In order for the Plan to be accepted under the Bankruptcy Code, the Plan has to be accepted by each class of creditors and interest holders whose rights are impaired under the Plan. Each class of claims will be deemed to have accepted the Plan if it is accepted by creditors holding at least two thirds in amount and more than one-half in number of the Allowed Claims or Interests of such class of claims that actually vote. If all the requirements of confirmation of the Plan under the Code are satisfied, except that the Plan is not accepted by each class of creditors, the Bankruptcy Court may confirm the Plan without acceptance of creditors, under the cram down provisions of § 1129(b) described in Article VIII above. Each creditor who wishes to exercise the right to vote must do so by executing a ballot and returning the same to counsel for the Chapter 11 Trustee, Bradley D. Jones & Joshua W. Cox, Stinson LLP, 1775 Pennsylvania Ave. NW, Suite 800, Washington, DC 20006, within the time period prescribed by the Bankruptcy Court. An official ballot accompanies the Disclosure Statement for those Creditors entitled to vote.

## IX.   RISK FACTORS

The Trustee's Plan, as with virtually any plan, contains certain risk factors. However, by engaging in a thorough marketing and due diligence process to secure a qualified prospective purchaser of the Properties, any unnecessary risk was eliminated.

The Trustee may modify the Plan at any time prior to the Confirmation Date but may not modify the Plan so that the Plan as modified fails to meet the requirements of §§ 1122 and 1123 of the Bankruptcy Code.

After the Confirmation Date or in the Confirmation Order, the Trustee, with the approval of the Bankruptcy Court, and subject to the restrictions set forth in § 1127 of the Bankruptcy Code, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan in such a manner as may be necessary to carry out the purposes and effect of the Plan. The Trustee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Trustee revokes or withdraws the Plan, or if confirmation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against the Debtors, or (b) prejudice in any manner the rights of the Debtors or the Trustee.

CORE/3516991.0007/197246730.2

## X.      RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Trustee believes that confirmation and consummation of the Plan is preferable to all other alternatives.

Dated:  March 21, 2025                    Respectfully submitted,

                                          /s/ Joshua W. Cox
                                          Marc E. Albert, No. 345181
                                          Bradley D. Jones, No. VA 68
                                          Joshua W. Cox, No. 1033283
                                          Ruiqiao Wen, No. 1743500
                                          STINSON LLP
                                          1775 Pennsylvania Ave., NW
                                          Suite 800
                                          Washington, DC 20006
                                          Tel: 202-785-9100
                                          Fax: 202-572-9943
                                          marc.albert@stinson.com
                                          brad.jones@stinson.com
                                          joshua.cox@stinson.com
                                          ruiqiao.wen@stinson.com
                                          *Attorneys for Marc E. Albert, Chapter 11 Trustee*

CORE/3516991.0007/197246730.2