Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert,*
*Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, *et al.*,[1] | ) Chapter 11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**FIRST INTERIM APPLICATION FOR APPROVAL OF
COMPENSATION FOR CHAPTER 11 TRUSTEE'S COUNSEL FOR
THE PERIOD FROM JULY 22, 2024 THROUGH MARCH 31, 2025**

Stinson LLP ("Stinson"), counsel for Marc E. Albert (the "Trustee"), the Chapter 11 Trustee for the bankruptcy estates of 1416 Eastern NE LLC, *et al.* (the "Debtors"), hereby applies for the allowance and payment of fees and expenses incurred for the period from July 22, 2024 through February 28, 2025 (the "Application Period"), and in support thereof, respectfully states as follows:

**I.    BACKGROUND**

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

The Debtors filed their voluntary Chapter 11 petitions on May 29, 2024 (the "Petition Date"). The Debtors' cases are jointly administered, with the case of 1416 Eastern Ave NE LLC, 24-00180-ELG serving as the main case. *See Order Directing Joint Administration*, [ECF No. 64].

Each of the Debtors is named for residential multi-family real property that it owns, and the business of each Debtor is multi-family rental housing. The locations of the residential multi-family real property buildings for the Debtors are as follow:

- 1416 Eastern Avenue Northeast, Washington, DC 20019
- 945 Longfellow Street Northwest, Washington, DC 20011
- 2501 Naylor Road Southeast, Washington, DC 20020
- 4301-4313 Wheeler Road Southeast, Washington, DC 20032
- 4263-67 6th Street Southeast, Washington, DC 20032
- 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019
- 3968 Martin Luther King Junior Avenue SE, Washington, DC 20032
- 4010 9th Street Southeast, Washington, DC 20032
- 2440 S Street Southeast, Washington, DC 20020
- 4400 Hunt Place Northeast, Washington, DC 20019

(collectively, the "Properties").

On July 24, 2024, this Court entered an order approving appointment of Marc E. Albert as Chapter 11 trustee of the Debtors' estates. [ECF No. 71]. Marc E. Albert serves as the duly appointed and qualified chapter 11 trustee for each of the ten Debtors' estates. The Trustee is operating the apartment rental businesses at each Property while evaluating and marketing the Properties for sale. The Trustee intends to sell the properties through a confirmed chapter 11 plan.

On August 8, 2024, the Trustee filed the *Application to Retain Stinson LLP as Counsel for Chapter 11 Trustee Pursuant to 11 U.S.C. § 327 and Notice of Opportunity to Object* [ECF No. 78] (the "Retention Application").

On August 27, 2024, the Court entered the *Order Granting Application to Authorize Retention of Stinson LLP as Counsel for Marc E. Albert, Trustee* [ECF No. 85] (the "Retention Order").

II.     **SERVICES RENDERED**

Attorneys have represented the Trustee with respect to all aspects of these jointly-administered cases. During the period covered by this application, Attorneys assisted the Trustee with preparing and filing several employment applications to retain needed professionals, assisted with negotiating an agreement with the primary secured lender for the Properties for an arrangement allowing for the use of the secured creditor's cash collateral for the maintenance of the Properties while seeking sale and allowing for a carve out to provide for payment of the estate professionals and administrative expenses, assisted with monitoring the status and condition of the Properties for the health and safety of tenants and preservation of the estate collateral, monitored the operation of the Properties to ensure the operational expenses of the Properties were in compliance with approved cash collateral budgets and procedures, filed motions to establish various cash procedures for the operation of the Properties, assisted the Trustee in monitoring the sale process for the Properties and negotiating a purchase agreement providing for a portfolio sale, and crafting a Chapter 11 Plan and Disclosure Statement providing for approval of sale of the Properties while seeking confirmation of the Plan on an expedited basis.

These services are broken down into several categories as follows:

A.      **General/Case Administration**

Attorneys represented the Trustee and assisted in general matters associated with the administration of the case. In the course of the representation, Attorneys corresponded with the Trustee regarding various aspects of the jointly administered cases and provided information to the Trustee at his request. Given the nature of the Properties at issue in these cases and the poor conditions present, Attorneys assisted the Trustee by engaging in frequent communications with the Trustee's employed property management company concerning the operational status of the Properties and aspects related to their maintenance. Attorneys further assisted the Trustee in

developing administrative procedures for the handling of the cases and drafting and filing various motions seeking approval of these procedures with the Court. These included a motion and interim and final orders for the use of cash collateral, a motion for approval to allow the Trustee to maintain certain bank accounts of the Debtors for the continued electronic receipt of rental Housing Assistance Payments into those accounts and establishing related procedures for sweeping those funds into the Trustee's accounts, and a further motion providing for use of funds between the various cases to preserve the Properties while seeking a portfolio sale. Following approval of each of these motions, Attorneys worked to implement the administrative procedures provided in the orders and ensuring necessary compliance. Attorneys further assisted with the review and preparation of Monthly Operating Reports for each of the ten cases.

Attorneys also periodically responded to inquiries and provided updates on the status of the Debtor Properties to the Office of the U.S. Trustee, as well as other interested parties.

**B.       Asset Analysis and Recovery**

During the Application Period Attorneys assisted the Trustee with investigating the potential of certain undelivered deposits to the Trustee and communicating related information to the Office of the United States Trustee.

**C.       Asset Disposition/Real Estate**

Through these cases, the Trustee has sought to maintain and operate the Debtor Properties as best as possible using available funds on hand while seeking sale of the properties to a capable buyer through a confirmed Chapter 11 Plan on an accelerated timeline. During the Application Period, Attorneys assisted the Trustee in working to achieve these goals by monitoring the condition of the Properties through frequent correspondence with the Trustee's employed property management company to address condition issues at the Properties as they arose and seeking

needed approvals for use of funds with the secured creditor as provided in the Trustee's approved cash procedures. Additionally, Attorneys worked to assist the Trustee in monitoring the marketing and sale process for the Properties with the Trustee's employed relators. This included negotiating the terms provided for in various Letters of Intent for sale of the Properties, and negotiating and drafting terms of a Purchase Agreements providing for a portfolio sale for the Properties. When it became clear that an initial prospective purchaser for the Properties was not satisfying the early conditions required for finalization of a purchase agreement providing for sale to the satisfaction of the Trustee and the secured creditor, Attorneys worked to facilitate the continued marketing of the Properties for sale and finalizing a purchase agreement with a new capable purchaser, which has been presented for approval to the Court through the Trustee's Chapter 11 Plan. Throughout the process, Attorneys worked to facilitate communications between the various parties including the Trustee, the Trustee's property management company, the secured creditor, the Trustee's realtors, and prospective buyers to provide requested information, and coordinate inspections and tours of the Properties.

   **D.**  **Employment and Fee Applications**

During the Application Period, Stinson prepared a motion for its employment in the case as the Trustee's counsel [ECF No. 75], and further prepared applications for Noble Realty Advisors, LLC as property manager for the Properties [ECF No. 82], and Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. as realtors for the Trustee [ECF No. 100]. Orders granting the employment applications were entered by Court at ECF Nos. 85, 87, and 103, respectively.

Regarding applications for compensation, Stinson took initial steps during the Application Period to prepare this application for compensation for its services to the Trustee.

### E.  Assumption/Rejection of Leases and Contracts

In order to facilitate sale of the Properties through the Plan to the proposed purchaser, Attorneys also worked to draft, file, and serve the *Trustee's Omnibus Motion for Entry of an Order (I) Authorizing Assumption and Assignment of Residential Leases in Connection with Sale of Real Property Pursuant to 11 U.S.C. § 365, (II) Fixing Cure Amounts, and (III) Granting Related Relief*, which was filed on March 25, 2025 [ECF No. 137].

### F.  Other Contested Matters

During the Application Period, Attorneys work to monitor and address certain other litigation matters not presented before the bankruptcy court. These included reviewing the status of certain litigation filed against the Debtors' manager Mr. Razjooyan by the District of Columbia Office of the Attorney General related to other Properties not under the Trustee's care, and working to address an issue involving Mr. Razjooyan's suspected removal of items from one of the Properties after the Trustee assumed possession. Attorneys additionally monitored the status of certain litigation filed in the Superior Court by a tenant at one of the Properties and attendance at a hearing before that court to inform the Plaintiff and the court of the present bankruptcies and implementation of the automatic stay.[2]

### G.  Business Operations & Financing/Cash Collections

During the Application Period Attorneys engaged in a significant amount of correspondence with Noble Realty Advisors ("Noble"), the Trustee's employed property management company for the Properties, to monitor and ensure that health and safety issues were

---

[2] In addition to the "Other Contested Matters" described herein, certain other time entries included in Attorneys' attached invoice utilized the task code ascribed for Other Contested Matters for entries detailing Attorneys preparation and attendance at hearings for the approval of authorization to use cash collateral described in the "General/Case Administration" section of this Application.

being adequately addressed and that the Trustee was being adequately informed of the operational status of the Properties. Attorney further worked to monitor and provide the Trustee with information related to the delivery of funds by the Trustee to Noble for use in the Property operations and adherence to the parameters of the approved cash collateral budgets. Attorneys further assisted the Trustee and Noble with monitoring and investigating the status of delivery of Housing Assistance Payments representing a majority of the operational income for the Properties to the Trustee and engaging in correspondence with agencies and organizations responsible for delivering those payments.

### H. Claims Administration and Objection

During the Application Period, Attorneys reviewed various proofs of claim filed the jointly administered cases and tenant claims necessary for devising the parameters of the Trustee's Chapter 11 Plan.

### I. Plan and Disclosure Statement

During the Application Period, Attorneys worked to develop, draft, and file the Trustee's Chapter 11 Plan [ECF No. 132] and Disclosure Statement [ECF 133], which were each filed on March 21, 2025. Because of the necessity to close on sale of the Properties on an expedited timeline, Attorneys also worked to file various motions and other pleadings to expedite the confirmation process and prepared for and attended an initial hearing for approval to combine the hearings for approval of the Disclosure Statement with confirmation of the Trustee's Plan and setting an appropriate expedited confirmation schedule with the Court.

### III. PRIOR APPLICATIONS FOR COMPENSATION

This is the first application for compensation for Stinson.

### IV. INFORMATION REQUIRED BY RULE 2016

As required by Federal Rule of Bankruptcy Procedure 2016, Stinson discloses that they have not received a retainer.[3] No other compensation was promised except for compensation on an hourly basis for services performed as set forth herein, and limited by the terms of the negotiated Carve Out for administrative fees with TD Bank. *See infra.*, at Sec. V.D. No compensation received has been shared. There is no understanding between Stinson and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with this case, except to the extent that the Carve Out provides a total cap on fees to Attorneys and commission that may be due and payable to the Trustee.

V.  **VALUE OF SERVICES**

   A.  **Computation of Value**

The services rendered were important, necessary, valuable, constructive, positive and reasonable, and were all rendered with the objective of assisting the Trustee in administering the estates and assisting the Trustee to advise the Debtors in working towards confirming a workable plan of liquidation. The expenses incurred in Stinson's representation of the Trustee were reasonable and necessary.

The fees charged and expenses advanced by Stinson during this application period are:

|  Fees  |  Expenses  |
|---|---|
| $302,391.00 | $2,606.59 |

---

[3] Although Stinson has not received a retainer and is not holding any funds in the firm's IOLTA Accounts for these cases, the Trustee has established a separate Trustee account for the jointly-administered cases to hold funds for later payment of the estates' professional fees, and has transferred funds from the Trustee's other accounts established for the individual cases into this account based on the agreed $2,500/month/case amount provided for in the Carve Out and the agreed cash collateral budgets, and only to the extent the existing funds in each account were, in the Trustee's business judgment, sufficient to maintain operations. Presently, the Trustee is maintain $87,500.00 in this account.

A summary of all services rendered by the professionals in this matter is attached hereto as **Exhibit A.** Copies of the records of the time entries made by all of the professionals rendering service to the Trustee are attached hereto as **Exhibit B**.

### B.     Identification of Professionals Rendering Service

Services were rendered by Bradley Jones (at $520.00.00/hour for work performed prior to December 1, 2024 and at $575.00/hour for work performed on or after December 1, 2024), Tracey Ohm (at $515.00/hour), Joshua Cox (at $4850.00/hour for work performed prior to December 1, 2024 and at $530.00/hour for work performed on or after December 1, 2024), Ruiqiao Wen (at $415.00/hour for work performed prior to December 1, 2023 and at $475.00/hour for work performed on or after December 1, 2023), Clarissa Brady (at $360.00/hour), Austin Diehl (at $340.00/hour for work performed prior to December 1, 2024 and at $385.00/hour for work performed on or after December 1, 2024), Miranda Swift (at $385.00/hour), and Cheryl Duren (at $270.00/hour). Stinson LLP routinely increases the hourly rates of its attorneys on December 1 of each year, which accounts for the increased hourly rates of Mr. Jones, Mr. Cox, Ms. Wen, and Mr. Diehl.

### C.     Billing Discretion

It has been the normal practice of Stinson in the representation of the Trustee, as in all cases, to bill certain types of matters with discretion. Certain services do not justify billing at all, and some only at an amount reduced from the actual time spent. Although the billing records will not reflect the amounts reduced or not billed by this Application, Stinson is attempting to provide the Court with a narrative description of such items.

For example, it is rare for Stinson to bill the Trustee for any time spent reading incoming correspondence. The time spent reviewing incoming material that does appear in the billing detail

relates only to extraordinary pleadings, correspondence or other documents requiring immediate reply or other action.

### D. Carve Out Fee Arrangement Capping Payment

At the outset of the Trustee's involvement in these cases upon his appointment, it became clear to the Trustee that the likely sale price for the Properties would be significantly less than the secured debt owing to TD Bank. As a result, the Trustee sought agreement with TD Bank concerning the handling of administrative expenses associated with the bankruptcy cases, including the Trustee's professional fees for Stinson as his legal counsel and the Trustee's commission pursuant to 11 U.S.C. § 326. Following a period of negotiation, the Trustee and TD Bank reached agreement providing for a carve-out by TD Bank of its secured collateral for these expenses under certain restrictions (the "Carve Out"). This Carve Out has been presented in the Trustee's Plan. *See Plan*, Sec. VI.D [ECF Dkt.132]. Under the terms of the Carve Out, the Trustee and his counsel have agreed to cap the combined payment for the Trustee's commission and the legal fees and expenses of Stinson up to a limit of $372,760.44, plus $2,500.00 for each case and Property for each month in which the Trustee is in operation of the Properties to the sale closing date ($25,000 per month across all Debtors). Thus, while Stinson is seeking approval of the full amount of the fees and expenses sought in this application as an administrative claim of the estate, payment towards any approved compensation to Stinson will be subject to the payment limitations provided for in the Carve Out.

### VI. EVALUATION STANDARDS

Standard for evaluation of approval of services to a chapter 11 trustee is based upon the factors established in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and

adopted in this Circuit in *In re AOV Industries, Inc.*, 797 F.2d 1004 (D.C. Cir. 1986), and based upon the "Guidelines," as discussed in detail herein below:

    A.    **Skill Required to Perform the Services Properly:** Stinson submits that the skill and competency level required of the Chapter 11 Trustee's counsel is, at a minimum, the ordinary skill and competence required of experienced bankruptcy attorneys.

    B.    **Preclusion of Other Employment:** Stinson was not denied the opportunity to accept representations of other clients as a result of the rendition of service to the Trustee herein.

    C.    **Novelty and Difficulty of Questions:** The work performed by Stinson did not involve any truly novel or difficult questions which would warrant any variation from the "lodestar" amount.

    D.    **Time and Labor Required:** The time and labor required of Stinson in connection with its representation of the Trustee is set forth in the time records attached hereto as Exhibit B. The amount of compensation sought through this Application is the "lodestar" amount, derived from the hours actually billed on this matter, as reflected in Exhibit A.

    E.    **The Customary Fee:** The hourly rates charged by Attorneys for the services specified in Exhibit B are the customary rates charged by those individuals, and are "market rates" for attorneys of comparable experience and expertise. No variance from practice of billing time at an hourly rate -- *i.e.*, through "value billing," was ever undertaken or permitted by Attorneys. Stinson's practice of updating its rates for the year on December 1 is consistent with the market and Stinson's historical practice.

    F.    **Fixed or Contingent:** The fees charged by Stinson were determined at an hourly rate, based on time actually expended working on matters for the Trustee. The matter was not undertaken on any arrangement, promise or expectation other than the anticipation of payment for

services rendered on an hourly basis, to the extent allowed by this Court, and to the extent the payment of such fees may be limited by the Carve Out.

  **G.** **Experience, Reputation and Ability of the Attorneys**:  Stinson has extensive experience dealing with bankruptcy and bankruptcy litigation matters before this Court (and others). Applicant submits that Stinson is generally well-regarded among its peers, and enjoys a favorable reputation.

  **H.** **Awards in Similar Cases:**  The compensation requested herein is similar to fee awards granted to other attorneys who have acted as counsel to trustees in cases under chapter 11 and 7 bearing similarity to these ten jointly administered cases.

  **I.** **Time Limitations:**  Although it has been necessary for Stinson to proceed with certain aspects of these cases on an expedited timeline, Stinson was not burdened by any time limitations warranting any variation from the "lodestar" amount.

  **J.** **Results Obtained:**  Stinson submits that its rendition of services to the Trustee precipitated good and economic results for the estates and their creditors. Stinson seeks no increment above the "lodestar" amount of their fees on account of the results achieved during the period covered by this Application.

  **K.** **Ability to Pay**:  The estates are expected to have sufficient funds to pay for these fees and expenses upon sale of the Properties following confirmation of the Trustee's Plan, and pursuant to the terms of the Carve Out provided for in the Plan.

**VII.** **FURTHER APPLICATION**

  This is a first interim fee application of Stinson as counsel to the Chapter 11 Trustee. Stinson anticipates filing additional applications.

**VIII.  REIMBURSEMENT OF EXPENSES**

Expense reimbursement is sought herein in the amount of $2,606.59. Itemized lists of the expenses are included in Exhibit B under the heading "Disbursements." Except for expenses listed in the amount charged by the vendor of the service or time to Attorneys, each charge is in an amount reflecting Attorneys' ordinary rate of charge.

**WHEREFORE**, for all of the foregoing reasons, the Trustee requests that this Court enter an order:

    a.    approving the compensation as sought herein as an approved administrative claim of the estates, with payment on such claim subject to the limitations provided for in the Carve Out and as may otherwise be established pending confirmation of the Trustee's Chapter 11 Plan and established therein; and

    b.    granting such other and further relief as this Court may deem just, equitable and proper.

Dated:  April 21, 2025

Respectfully submitted,

/s/ Joshua W. Cox
Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert,
Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was served by first class mail, postage prepaid upon all parties in interest entitled to notice under applicable Federal Rules of Bankruptcy Procedure.

Dated: April 21, 2025          /s/ Joshua W. Cox
                                           Joshua W. Cox