Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, *et al.*[1], | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**TRUSTEE'S MEMORANDUM IN SUPPORT OF CONFIRMATION OF CHAPTER 11
PLAN**

Marc E. Albert ("Trustee"), the Chapter 11 Trustee for the bankruptcy estates of 1416

Eastern NE LLC, *et al.* ("Debtors"), by and through his undersigned counsel, Stinson LLP, files

this Memorandum in Support of Confirmation of Chapter 11 Plan. The Trustee's Plan complies

with the statutory requirements necessary for confirmation set out in Section 1129 of the

Bankruptcy Code, readily overcomes the single objection it has received, and accordingly, should

be confirmed. In support of confirmation of the Trustee's Chapter 11 Plan, the Trustee states the

following:

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

## <u>PRELIMINARY STATEMENT</u>

The bankruptcy proceedings of each Debtor were initiated to enable a marketed sale of each single asset debtors' property under the terms of a confirmed chapter 11 plan. Accordingly, the joint chapter 11 plan ("Plan") now before the Court is a liquidating Plan that proposes to sell the single-asset debtors' real estate properties to Craig London (or a single asset LLC to whom he assigns his interests), who is a ready and capable buyer, or to an interested person who submits a higher or better offer for the Properties on or before the hearing on the Confirmation Hearing concerning the Plan. The Plan, as to each of the Debtors, conforms to 11 U.S.C. § 1129. The Plan is supported by T.D. Bank, N.A. ("TD Bank"), the primary secured creditor for each of the Properties and the only party entitled to vote to accept or reject the Trustee's proposed Plan (as all other classes of creditors are either unimpaired and receiving the full value of their claim, or are impaired and receiving no payment just as they would under a Chapter 7 liquidation). TD Bank's support of the plan is evidenced not only by their submission of accepting ballots, but also through their agreement to provide a carve out from funds that otherwise would be subject to payment towards their secured interests to allow for the Trustee's administration of these bankruptcy cases while seeking sale and provide other considerations allowing for the proposed sales through the Trustee's Plan to be achieved. The Plan and proposed sale have received only one objection, which can be overruled, as the objection indicates a misunderstanding of the requirements for the sale of properties though a Chapter 11 Plan. The objection to the related *Motion for Authority to Assume and Assign Executory Contracts* is likewise without merit.

In addition to the previously submitted Plan and Disclosure Statement and after further discussions and negotiations with the relevant parties, the Trustee has prepared a proposed Order approving    the    Disclosure    Statement    and    confirming    the    Trustee's    Plan    (the

2

"Proposed Confirmation Order"). The Proposed Confirmation Order is supplied with this memorandum ad is attached hereto as **Exhibit A**. Accordingly, as provided herein, the Plan should be confirmed by this Court upon the terms presented in the Proposed Confirmation Order.

## <u>BACKGROUND</u>

1.     Each of the Debtors is named for residential real property that it owns, and the business of each Debtor is multi-family rental housing.  The locations of the residential multi-family real property buildings for the Debtors are as follows:

     a.  1416 Eastern Avenue Northeast, Washington, DC 20019

     b.  945 Longfellow Street Northwest, Washington, DC 20011

     c.  2501 Naylor Road Southeast, Washington, DC 20020

     d.  4301-4313 Wheeler Road Southeast, Washington, DC 20032

     e.  4263-67 6th Street Southeast, Washington, DC 20032

     f.  4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019

     g.  3968 Martin Luther King Junior Avenue SE, Washington, DC 20032

     h.  4010 9th Street Southeast, Washington, DC 20032

     i.  2440 S Street Southeast, Washington, DC 20020

     j.  4400 Hunt Place Northeast, Washington, DC 20019

     (collectively, the "Properties")

2.     The Debtors filed their voluntary Chapter 11 petitions on May 29, 2024 (the "Petition Date").  The Debtors' cases are jointly administrated, with the case of 1416 Eastern Ave NE LLC, 24-00180-ELG serving as the main case. *See Order Directing Joint Administration*, [Dkt. 64].

CORE/3516991.0007/198666230.1

3.       On July 24, 2024, this Court entered an order approving appointment of Marc E. Albert as Chapter 11 trustee of the Debtors' estates. [Dkt. No. 71].  Marc E. Albert serves as the duly appointed and qualified chapter 11 trustee for the Debtors' estates.

4.       The Trustee wishes to sell the Properties through these chapter 11 cases. Accordingly, the Trustee engaged Marcus and Millichap Real Estate Investment Services of North Carolina, Inc. ("M&M"), real estate brokers specializing in sales of large multi-family affordable housing complexes, to aggressively pursue marketing the properties for sale in order for the Trustee to expeditiously pursue Bankruptcy Court approval allowing for sale of the properties through a confirmed chapter 11 plan. *See Chapter 11 Trustee's Application to Authorize Retention of Realtors Pursuant to 11 U.S.C. § 327 and Notice of Opportunity to Object* [Docket No. 100]; *see also Order Granting Chapter 11 Trustee's Application To Authorize Retention Of Realtor* [Docket No. 103].

5.       After a vigorous marketing campaign, which included the sending of 36,853 emails and placing 1,815 telephone calls to solicit interest in the Properties and preparing a comprehensive Offering Memorandum, the Trustee, in conjunction with M&M, selected Craig London (or a single asset LLC to whom he assigns his interests) ("Purchaser") as stalking horse bidder for purchase of the Properties, i.e., as prospective purchaser unless and until a higher and better offer is received. In or around March 4, 2025, and March 5, 2025, the Trustee and Purchaser entered into a Purchase Agreement for sale of the Properties. As evidence of M&M extensive marketing efforts, the Trustee has obtained a signed declaration of John "Marty" Zupancic, III detailing his marketing efforts on behalf of M&M and otherwise detailing why the proposed sale to the Purchaser represents the current highest and best offer for sale of the Properties and that the price offered represents fair value for the Properties born from exposure to the market (the "Zupancic

4

Declaration"). A true and accurate copy of the Zupancic Declaration, including M&M's final marketing Report with respect to their efforts, is attached hereto as **Exhibit B**.

6.      In connection with the Trustee's intention to sell the Properties through a confirmed plan and pursuant to the Purchase Agreement executed with Purchaser (or a similar agreement as may be executed in conjunction with an Alternative Transaction as defined in the Purchase Agreement), the Trustee filed its Disclosure Statement [Docket No. 133] and Joint Chapter 11 Plan of Liquidation [Docket No. 132] and Proposed Confirmation Order [Exhibit A to this Memorandum].

7.      Under the Plan, Sale of the Properties to Purchaser (or the maker of a higher and better offer submitted at the Confirmation Hearing) is to be free and clear of the liens and interests, with all such liens and interests attaching to the Sale Proceeds from the Properties in the order and amount that they attached to the Properties, and with Secured Creditor TD Bank agreeing to provide a carve out of amounts they would otherwise be entitled to for the Trustee to allow for payment towards the administrative costs of the bankruptcy cases and provide for other payments that may be necessary to consummate the proposed sales.

8.      In lieu of formal bid procedures, the Trustee has invited all interested persons or entities to submit higher or better offers for the Property by submitting and such offers for evaluation on or before the Confirmation Hearing.

9.      The Trustee believes the proposed portfolio sale and the other terms provided for in his Plan are in the best interest of the bankruptcy estates and represent fair and equitable treatment towards creditors and parties-in-interest. As further evidence of the Trustee's support of the Plan, the Trustee has executed a signed Declaration detailing his support of his Plan and why

it satisfies the requirements for plan confirmation under the Bankruptcy Code. A true and accurate copy of the Trustee's Declaration, is attached hereto as **Exhibit C.**

<u>**ARGUMENT**</u>

The Plan should be confirmed because it conforms with the requirements of 11 U.S.C. § 1129 and is fair and equitable to all interested parties. The single objections to each of the Plan and the Trustee's *Motion for Authority to Assume and Assign Executory Contracts* are without merit and should be overruled.

**I.      The Plan Complies with Section 1129 of the Bankruptcy Court and Should be Confirmed.**

This Plan involves the sale of real properties following a marketed sales process led by an experienced realtor. The proposed buyer is an arm's length purchaser that is committed to complying with all federal and local regulations, housing laws, and rent control rules applicable to the Properties. The Trustee contends the Plan complies with all of the requirements of 11 U.S.C. § 1129 and in support, discusses each of the confirmation requirements in detail.

<u>Section 1129(a)(1) – The Plan Complies with the</u>
<u>Applicable Provisions of the Bankruptcy Code</u>

Section 1129(a)(1) mandates that "[t]he plan compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The Code does not define the phrase "applicable provisions," however, it is aimed at compliance with 11 U.S.C. §§ 1122 and 1123. *In re Multiut Corp.*, 449 B.R. 323, 333 (Bankr. N.D. Ill. 2011) (citation omitted). The Trustee submits that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

  i.  Section 1122(a) — Each class of claims contains only claims that are substantially similar to other claims within that class;

CORE/3516991.0007/198666230.1

    ii.      Section 1123(a)(1) — The plan designates for following classes of claims:

Claims of 1416 Eastern Ave NE LLC

       Class A.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

       Class A.2: Allowed Secured Claim of TD Bank (Impaired).

       Class A.3: General Unsecured Claims (Impaired).

       Class A.4: Interests (Impaired).

Claims of 945 Longfellow St NW LLC

       Class B.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

       Class B.2: Allowed Secured Claim of TD Bank (Impaired).

       Class B.3: General Unsecured Claims (Impaired).

       Class B.4: Interests (Impaired).

Claims of 2501 Naylor Rd SE LLC

       Class C.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

       Class C.2: Allowed Secured Claim of TD Bank (Impaired).

       Class C.3: General Unsecured Claims (Impaired).

       Class C.4: Interests (Impaired).

Claims of 4303-13 Wheeler Rd SE LLC

       Class D.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

       Class D.2: Allowed Secured Claim of TD Bank (Impaired).

       Class D.3: General Unsecured Claims (Impaired).

       Class D.4: Interests (Impaired).

Claims of 4263 6th St SE Apartments LLC

CORE/3516991.0007/198666230.1

Class E.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class E.2: Allowed Secured Claim of TD Bank (Impaired).

Class E.3: General Unsecured Claims (Impaired).

Class E.4: Interests (Impaired)

Claims of 4935 NHB Ave NE LLC

Class F.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class F.2: Allowed Secured Claim of TD Bank (Impaired).

Class F.3: General Unsecured Claims (Impaired).

Class F.4: Interests (Impaired)

Claims of 3968 MLK LLC

Class G.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class G.2: Allowed Secured Claim of TD Bank (Impaired).

Class G.3: General Unsecured Claims (Impaired).

Class G.4: Interests (Impaired)

Claims of 4010 9th St SE LLC

Class H.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class H.2: Allowed Secured Claim of TD Bank (Impaired).

Class H.3: General Unsecured Claims (Impaired).

Class H.4: Interests (Impaired)

Claims of 2440 S St SE LLC

Class I.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class I.2: Allowed Secured Claim of TD Bank (Impaired).

Class I.3: General Unsecured Claims (Impaired).

Class I.4: Interests (Impaired)

Claims of 4400 Hunt Pl NE LLC

Class J.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

Class J.2: Allowed Secured Claim of TD Bank (Impaired).

Class J.3: General Unsecured Claims (Impaired).

Class J.4: Interests (Impaired)

iii.    1123(a)(2): The Plan specifies that Class A.1, Class B.1, Class C.1, Class D.1, Class E.1., Class F.1, Class G.1, Class H.1., Class I.1, and Class J.1 are Unimpaired.

iv.    1123(a)(3): The Plan specifies that Class A.2, Class B.2, Class C.2, Class D.2, Class E.2, Class F.2, Class G.2, Class H.2, Class I.2, and Class J.2; Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3; and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 are Impaired.

v.    1123(a)(4): The Plan provides for the same treatment for each Claim within a particular class.

vi.    1123(a)(5): The Plan provides adequate means for the Plan's implantation. In particular, the Trustee intends to fund the Plan through a sale of the Properties.

vii.    1123(a)(6): Insofar as this is a liquidating plan and the Debtors are not corporations, the Trustee submits that Section 1123(a)(6) does not apply;

viii.    1123(a)(7): The Plan contains only provisions that are consistent with the interests of creditors, equity security holders and public policy.

CORE/3516991.0007/198666230.1

ix.     1123(a)(8): Section 1123(a)(8) only applies to individual cases and is therefore inapplicable to this Chapter 11 Case.

### Section 1129(a)(2) – Compliance With Applicable Provisions of the Bankruptcy Code

The Debtor has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) and (2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. The solicitation of acceptances of the Plan was in compliance with all applicable rules governing the adequacy of disclosure in connection with such solicitation and pursuant to the Court's Order Combining Hearing on Plan and Disclosure Statement and Fixing Deadlines for Filing Objections, Acceptance, or Rejecting the Plan [Docket No. 140].

### Section 1129(a)(3) – Proposal of Plan in Good Faith

Section 1129(a)(3) requires that the "plan has been proposed in good faith and not by any means forbidden by law." For purposes of determining good faith under section 1129(a)(3), "the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 673 (Bankr. D.D.C. 1992) (citation omitted). "The good faith standard requires a showing that the plan was proposed with 'honesty and good intentions' and with a 'basis for expecting that a reorganization can be effected." *Id.* (citing *In re Koelbl*, 751 F.2d 137, 139 (2d Cir.1984)).

The Trustee has proposed the Plan in good faith and not by any means forbidden by law. Selling the Properties to a purchaser following a Court approved marketing process is consistent with the Bankruptcy Code's objective of maximizing the value of a Debtors' assets.

### Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable

10

Section 1129(a)(4) requires that "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Here, the Plan provides that all professional fees and expenses are subject to review by this Bankruptcy Court, which satisfies § 1129(a)(4).

<u>Section 1129(a)(5) — Disclosure of Identity and Affiliations of Proposed Management,
Compensation of Insiders and Consistency of Management Proposals with the Equity Interests of
Creditors and Public Policy</u>

Section 1129(a)(5) requires that the Plan disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint Plan with the debtor, or a successor to the debtor under the Plan." Section 1129(a)(5)(A)(ii) requires that the appointment to or continuation in office of a director or officer be consistent with the interests of creditors, equity security holders, and public policy. Section 1129(a)(5)(B) requires the Plan proponent to disclose the identity of any insider to be employed by the reorganized debtor.

The Plan provides for the wind-up and dissolution of the Debtors effective immediately upon the Effective Date of the Plan. [Plan VII.E]. As such, Section 1129(a)(5) is not applicable.

<u>Section 1129(a)(6) — Approval of Rate Changes</u>

The Plan does not modify or affect the jurisdiction over the rates of the Debtors by any governmental regulatory commission, and therefore Section 1129(a)(6) does not apply.

<u>Section 1129(a)(7) – Best Interests of Creditors and Equity Interest Holders</u>

Section 1129(a)(7) requires that with respect to each Impaired Class of Claims, each holder of a Claim has accepted the plan, or will receive or retain under the plan on account of such claim

CORE/3516991.0007/198666230.1

property of a value, that is not less than such holder would receive if the Debtors estates were liquidated under Chapter 7.

The Plan shall be funded by the sale of the Properties and paid to Holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code, which satisfies Section 1129(a)(7).

Section 1129(a)(9) – Treatment of Claims Entitled to
Priority Pursuant to Section 507(a) of the Bankruptcy Code

The Plan provides for treatment of Administrative Claims and Priority Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code. TD Bank has agreed to the use of funds serving as TD Bank's collateral for the payment of Allowed Administrative Expense Claims, including Professional Fee Claims. Accordingly, all Allowed Administrative Expense and priority claims will be paid in full on the Effective Date. The Plan complies with Section 1129(a)(9).

1129(a)(10) – Acceptance by at Least One Impaired Class

As required by Section 1129(a)(10), at least one impaired class of creditors for each Debtor has voted to accept the Plan. In particular, Class A.2, Class B.2, Class C.2, Class D.2, Class E.2, Class F.2, Class G.2, Class H.2, Class I.2, and Class J.2 have accepted the Plan.

Section 1129(a)(11) – Feasibility of the Plan

The Plan complies with section 1129(a)(11) of the Bankruptcy Code. The Plan proposes a liquidation of the Debtors' assets (including the Properties) and distributions to Creditors under the Plan in accordance with the priority scheme of the Bankruptcy Code. The Plan centers on a sale of the Debtors' multifamily apartment buildings to allow the multifamily properties at the center of this case to be acquired and successfully developed. Purchaser has provided Trustee with a nonrefundable earnest money deposit of $1,200,000.00 and supplied financial information to M&M to show he is a qualified buyer. The Plan is feasible and complies with Section 1129(a)(11).

12

<u>Section 1129(a)(12) – Payment of Bankruptcy Fees</u>

In accordance with section 1129(a)(12) of the Bankruptcy Code, Section XI.D of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on or before the Effective Date. The Plan complies with Section 1129(a)(12).

<u>Section 1129(a)(13) – Retiree Benefits</u>

The Debtors do not offer Retiree Benefits as that term is defined in Section 1114 of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code is therefore inapplicable to this Chapter 11 Case.

<u>Section 1129(a)(14) – Domestic Support Obligations</u>

Section 1129(a)(14) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

<u>Section 1129(a)(15) – Objecting Unsecured Creditor in Individual Case</u>

The Debtors are business entities and not individuals. Section 1129(a)(15) of the Bankruptcy Code is therefore inapplicable to this Chapter 11 Case.

<u>Section 1129(a)(16) – Transfers of Property by Non-Moneyed Corporation or Trust</u>

Section 1129(a)(16) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

<u>Cramdown</u>
<u>Section 1129(b)(1) and (2) – Approval of Plan Absent Unanimous Acceptance</u>

Compliance with Section 1129(b)(1) of the Bankruptcy Code is required. As described above, the Plan meets all the requirements of § 1129(a), with the exception of § 1129(a)(8). Impaired classes, Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 (General Unsecured Claims of each Debtor) and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 (Interests of each Debtor), have not voted to accept the Plan. However, these classes, by virtue of not receiving a distribution, are deemed to reject the Plan and were not entitled to vote. The Trustee

13

thus asks the Court to confirm the Plan pursuant to the cramdown provisions of § 1129(b), which the Trustee satisfies.

Cramdown requires the Court to determine that, if all of the applicable requirements of Section 1129(a) are met—other than the requirement in 1129(a)(8) that all impaired classes vote in favor of the Plan—the Court, "on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Here, the Plan meets both requirements of (i) not discriminating unfairly; and (ii) is fair and equitable with respect to the impaired, non-accepting interests.

*No Unfair Discrimination*: Although Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 (General Unsecured Claims of each Debtor) are receiving separate classification from the Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 Interests (also unsecured non-priority claims of each Debtor), the treatment of each of these claims is the same. By virtue of their status as general unsecured claims to the extent the holders of Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 Claims and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 Interests are Allowable Claims, each is being provided similar treatment under the Plan and is to be paid the same pro rata payment from the proceeds of the sale that remains after payment of higher-priority administrative and secured claims.

*Fair and Equitable (Absolute Priority Rule):* The Plan is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. The non-accepting impaired unsecured claims in Class A.3, Class B.3, Class C.3, Class D.3, Class E.3,

14

Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3, and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4, are receiving the same, or better treatment, than they are entitled to under the Bankruptcy Code's priority scheme. Under Section 1129(b)(2)(B), a fair and equitable Plan, with respect to unsecured creditors, must either (i) pay the allowed amount of the unsecured claims; or (ii) satisfy the absolute priority rule.

Here, the Plan satisfies the absolute priority rule. All Equity Interests (Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4) will be receiving no payments from the Bankruptcy Estates on account of those interests. No equity interests will remain, and the Plan provides that the Debtors are to be wound-up and dissolved on the Effective Date. [Plan VII.E]. The Plan therefore complies with § 1129(b)(2)(B)(ii) and is fair and equitable with respect to each class of claims that is impaired and has not accepted the Plan.

Because the Trustee has duly requested the Court to grant confirmation under the Bankruptcy Code's cramdown provisions, and upon the finding of the Court that the Plan does not discriminate unfairly and is fair and equitable to each class of claims that is impaired and has not accepted the Plan, the requirements of § 1129(b) have been met and Confirmation of the Plan is appropriate.

<u>Section 1129(c) – Only One Plan is Before this Court</u>

In accordance with section 1129(c) of the Bankruptcy Code, this is the only Chapter 11 Plan before the Court.

<u>Section 1129(d) – No Avoidance of Taxes or Avoidance
of the Application of Section 5 of the Securities Act of 1933</u>

As required by section 1129(d) of the Bankruptcy Code, the principal purpose of the Plan is neither to avoid taxes nor to avoid the application of section 5 of the Securities Act of 1933.

\* \* \* \*

15

Based upon the foregoing, all other pleadings, documents, and exhibits filed in connection with confirmation of the Plan, and all arguments made, proffered, or evidence or testimony introduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in § 1129 of the Bankruptcy Code.

## II.    The Court Should Authorize the Assumption & Assignment of Tenant Leases & HAP Contracts.

The Plan and Proposed Confirmation Order provide for the assumption of tenant leases and HAP contracts at the Buyer's election. [Plan, Article X]. Paragraph 7 of the Purchase and Sale Agreement requires the Seller to move for authority from the Bankruptcy Court to assume and assign to the Buyer, the existing tenant leases and obtain an order regarding the assumption, assignment, and any cure payments at least ten days before Closing on the Sale of the Properties. The Buyer is responsible for any required cure payments and reserves the right to accept assignment of some, all, or none of the tenant leases at Closing. [Dkt. No. 132-2 at 2].

In support of the contract, the Trustee on March 25, 2025 filed a *Motion to Assume Lease or Executory Contract Omnibus Motion for Entry of an Order (I) Authorizing Assumption and Assignment of Residential Leases in Connection with Sale of Real Property Pursuant to 11 U.S.C. § 365, (II) Fixing Cure Amounts, and (III) Granting Related Relief.* [Dkt. No. 137].

Providing for the assumption of leases and any associated housing assistance payment contracts is beneficial to both the tenants and the purchaser. Leases that are assumed will allow those tenants to remain in the property, which is also facilitated by permitting housing assistance payments to continue. The purchaser is benefited by the ability to maintain the existing cash flow that is generated by the rents on the Properties. As the purchaser will be obligated to maintain the Properties and rental conditions in accordance with applicable D.C. Law and to provide safe and

habitable housing to the residents, the Trustee believes no further cure is needed. As a result, the motion requests the Court to establish a cure amount of $0.00.

The lease assumption motion was served on the tenants by first-class mail. In addition to service by mail, the lease assumption motion was also hand-delivered by the property management company to each of the units in each of the properties. [Dkt. No. 147].

Only one tenant, Diamond Steward, filed a response to the lease assumption motion. [Dkt. No. 145]. The response states that she needs more time to read the Plan and hire a bankruptcy attorney. *Id.* Ms. Stewart does not otherwise assert an objection to the proposed relief. In response to the filing, the Trustee set the matter for hearing with the Confirmation Hearing. [Dkt. No. 145].

Ms. Stewart's objection to the assumption and assignment of her lease should be overruled. The objection does not set forth an objection based on the merits of the Trustee's Plan or why it should not be confirmed. Further, a considerable amount of time has passed since Ms. Steward filed her objection requesting time to seek counsel, yet no counsel has filed a notice of appearance on Ms. Steward's behalf. Ms. Steward's request for additional time should not exist in perpetuity and the additional time already afforded from the April 8 objection deadline to the date of the Confirmation Hearing, nearly twice the standard objection period for these Motions, should be considered sufficient given the circumstances.

In any event, the Court can approve the assumption and assignment of any leases the Purchaser chooses to assume because the Purchaser will honor the leases and continue to provide housing for those tenants whose leases are assumed. The objection should be overruled.

## III.    The Properties May be Sold Free and Clear of Liens and Interests.

The primary purpose of the Trustee's Plan is to effectuate a sale of the Properties through a confirmed plan in order to liquidate the assets of the Debtors and capture relevant transfer and recordation tax savings as provided by Section 1146(a). A critical component of the both the

CORE/3516991.0007/198666230.1

Purchase and Sale Agreement entered into by the Trustee and the Trustee's proposed Plan is that the sale of the Properties to the Purchaser be free and clear of liens and interests so that the Purchaser may take clean title. *See* Plan, Sec. VI.C.

Within the context of chapter 11 plans, Section 1141(c) of the Bankruptcy Code provides that property "dealt with by the plan," including, as here, property transferred to a third party through a proposed sale, is to be done "free and clear of all claims and interests," unless provided otherwise in the plan. *See* 11 U.S.C. § 1141(c). Section 1146(c) has been read as the provision that permits a plan to extinguish liens on or other direct interests in property. *See, e.g.,* 11 U.S.C. § 101(37) (" '[L]ien' means charge against or interest in property … ."); *United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, 656 Fed. Appx 717, 723 (5th Cir. 2016) (citing 11 U.S.C. § 1141(c) and *Elixir Indus., Inc. v. City Bank & Tr. Co. (In re Ahern Enters., Inc.)*, 507 F.3d 817, 822 (5th Cir. 2007)) (holding that section 1141(c) applies to liens); *In re Penrod*, 50 F.3d 459, 463, 33 C.B.C.2d 263, 268 (7th Cir. 1995) (stating that section 1141(c) must cover liens); *Dever v. IRS (In re Dever)*, 164 B.R. 132, 138 (Bankr. C.D. Cal. 1994) (stating that "interests" include "liens").

Here, the Trustee's Plan specifically provides that the sale of the properties is to be "free and clear of the liens and interests of T.D. Bank, the D.C. Government Office of Tax and Revenue, the D.C. Water and Sewer Authority, and all other liens and interests attaching to the Properties including any recorded solar lease agreements, with all liens and interests attaching to the Sales Proceeds from the Properties in the order and amount that they attached to the Properties." Plan, Sec. VI.C. In that respect, the Plan addresses the treatment of the liens and interests attaching to the Properties as provided and, upon confirmation, the sale would be authorized free and clear of all liens and interests as stated. Further, lien or interest holders have been duly noticed and no party

18

has appeared or otherwise objected to the Plan's proposed transfer of liens and interests in the

Properties to the sale proceeds, nor the distributions of such proceeds as provided in the Plan. Such

facts, therefore, allow such free and clear sales to occur.

In addition to the fact that the Properties may be sold free and clear of liens and interest as

the Plan provides, the proposed sales further comply with the other general provisions of the

Bankruptcy Code allowing for sales free and clear, namely Section 363(f).

Section 363(f) of the Bankruptcy Code provides that a debtor (or trustee) may sell

property free and clear of a lien, claim, interest or encumbrance if any one of the following

conditions is satisfied:

1.   applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

2.   the lienholder or claimholder consents;

3.   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4.   the lien is in bona fide dispute;

5.   the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f)(1)-(5).

With respect to the proposed confirmation, the Trustee's Proposed Confirmation Order

includes a listing of liens, claims, and encumbrances for each Property provided by the title

company handling the proposed sale to the Purchaser from which the sales are to be allowed to be

sold free and clear from with the relevant interest transferring to the proceeds of sale. Which of

the specific subsections of § 363(f) allow for the sale free and clear differ between the liens and

19

interests listed, but generally fall into specific categories of claims. A description of these types of clams and how they relate to Section 363(f) is as follows:

TD Bank

TD Bank generally serves the primary secured creditor for each of the Properties pursuant to various Deeds of Trust and other documents evidencing their secured status. TD Bank has been an integral part of the cases so far and has worked with the trustee to provide critical components provided for in the Trustee's Plan, namely the Carve Out providing for in Section VI.D of the Plan. Sale of the Properties free and clear of the interest of TD Bank, with payment on such claims made pursuant to the terms outlined in the Plan, is being made with TD Bank's consent as evidenced by the its submitted ballots approving the Trustee's Plan. Accordingly, the sale free and clear of the various interests of TD Bank is authorized under Section 363(f)(2).

All Liens and Interests Junior to TD Bank

With respect to the liens and interest listed in the Trustee's proposed confirmation order, the majority represent secured interests recorded after the security interests of TD Bank and junior to TD Bank's secured claims. The Trustee's Plan generally anticipates that no distribution is to be made available to these claims. Regardless, Section 363(f)(5) allows sales to move forward free and clear of these interests. Section 363(f)(5) provides that the trustee may sell property free and clear of liens and interests when "the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). It is widely accepted that this provision is satisfied when state law would allow such a sale free and clear of the interest pursuant to a foreclosure sale, even when such monetary satisfaction for a junior interest would be zero dollars. *See In re Urban Commons 2 W. LLC*, 2025 Bankr. LEXIS 507, *4; See also Frank A. Oswald & Andy Winchell, *Missing the Forest for the Trees in § 363*:

*How the Ninth Circuit's Bankruptcy Appellate Panel Neglected the Big Picture in the Clear Channel Decision*, 2009 No. 4 Norton Bankr. L. Adviser 2 (2009) (quoting Kuney, *Misinterpreting Bankruptcy Code § 363(f)*, 76 Am. Bankr. L.J. at 252 n. 64); Robert M. Lawless, *BAP Prohibits Sale of Free and Clear of an Underwater Junior Lien*, 28 No. 10 Bankr. L. Ltr. 1 (Oct. 2008) ("[A] state court foreclosure proceeding would seem to be a proceeding where the second lienholder could be compelled to accept a monetary satisfaction of its lien and thus satisfy the requirements of (f)(5). Indeed, the word 'foreclosure' means exactly that—the foreclosure of junior interests."). Here, barring the present bankruptcies, TD Bank would be allowed under D.C. law to foreclose on the Debtor Properties free of the various junior interests, and, by virtue of the extent the properties are underwater of amounts owing to TD Bank, offer no payment. Under this framework, the Trustee's sale proposed in the Plan, which does not alter the distributions that would be provided in such a hypothetical foreclosure, satisfies the sale free and clear of the junior interests pursuant to § 363(f)(5).

<u>Priming Statutory Liens Under D.C. Law</u>

With respect to each property, the Trustee's Plan provides that any secured claims for taxing authorities and utility lienholders that hold secured claims falling ahead in priority of the Secured Claim of TD Bank be paid the amount of such claim upon sale at closing.  It is expected that these claims will include necessary payments made toward the DC Water & Sewer Authority, as well as to the District of Columbia for any unpaid real estate taxes owing for the Properties to allow for those claims to be paid in full. To the extent that any other liens r interests may by DC Law prime the secured interests of TD Bank, the Carve Out and other Plan provisions provide that they will be paid in order to complete closing of sale. In that respect, the Carve Out with TD Bank provided for in the Plan (as well as classification of the type 1 claims for each of the Debtors), will

CORE/3516991.0007/198666230.1

allow for the payment of those claims to occur in full at closing and providing full satisfaction to

the claim holder. In that respect the sale free and clear of these liens and interests (with the

corresponding payment at closing) will be authorized pursuant to § 363(f)(5), in that a foreclosure

proceeding would provide for the payment in full satisfaction of the lien, as well as § 363(f)(2),

with the lienholder being deemed to consent with the promise of full payment.

<u>Other Potential Liens and Interests</u>

The lien rundown provided in the Trustee's Proposed Conformation Order includes several

entries recorded ahead of the secured interest of TD Bank. Upon the Trustee's information and

belief, none of these interests these recorded interests do not rise to level of a currently valid

secured interest with respect to the debtor Properties as TD Bank would not have closed the

arrangements providing for their security interests in the Properties at the time those transactions

were completed. Many appear at face value to no longer be enforceable with respect to the

Properties, either due to the property no longer serving as collateral for the recorded interest or

evidence of the lien otherwise having been previously satisfied. For instance, with respect to the

2501 Naylor Road Property, it appears that the financing statement recorded on October 23, 2019

removed the subject property from the collateral associated with the prior UCC filings. It is

expected that many of these interests, none of whom have filed claims in these cases, will be found

to no longer serve as a lien of value attaching t the properties through the closing process. To the

extent they are not cleared however, the Trustee contends that they would presently be in bone fide

dispute pursuant and able to attach instead to the proceeds of sale pursuant to 11 U.S.C. § 363(f)(3).

To the extent any such recorded interest does, however, appear to be needed to close sale of the

properties, the Carve Out provides that payment from the proceeds otherwise due to TD Bank

could be used to satisfy the interest to clear the path to sale and the holder's lien interest will be

adequately protected by attaching to the proceeds of sale just as they would in a foreclosure proceeding with a similar monetary satisfaction of the same as authorized through § 363(f)(5).

**IV.    The Single Objection to the Sale and Confirmation of the Trustee's Plan Should be Overruled.**

There are no other viable alternatives to the Sale of the Debtors' real estate to Purchaser (or the maker of a higher and better offer), pursuant to the Plan, and the only objecting party (the District of Columbia) has not proposed a viable alternative. The District's objection to the Plan should be overruled.

A.    <u>The Plan is Consistent with Generally Applicable Local Law and Nothing in Approval of the Plan Requires the Court to Alter or Preempt D.C. Housing Law.</u>

Purchaser has the ability to operate the Properties responsibly and is committed to operating the Properties in accordance with all federal and local regulations, housing laws, and rent control laws applicable to the Properties.

Nonetheless, The District of Columbia argues the Trustee's Plan cannot be confirmed because it violates D.C. Housing Laws, citing 28 U.S.C. § 959. [Dkt. No. 152 at 4–7]. In support, it cites case law holding that Bankruptcy Law does not "grant the authority to the bankruptcy court to authorize acts in contravention of a state statute or regulation" or allow debtors to gain a "competitive advantage by exempting themselves from the myriad of laws that regulate business." [Dkt. No. 152 at 5, 7].

These arguments fail because that's not what this Plan or sale does. Nothing in the Plan or the proposed sale alters, preempts, or exempts the Trustee or the Purchaser from complying with generally applicable D.C. Housing Law. To the contrary, the Plan merely provides for the sale of

CORE/3516991.0007/198666230.1

real estate under a Purchase & Sale Agreement to a good faith buyer, who has no relationship with the Debtors. Purchaser represents he will follow D.C. Law and has the expertise to do so.

While the District also complains of prior code violations, these violations stem from prior management – not the supervision of the Trustee, who is proponent of the Plan. Further, the District provides no support for its apparent position that historical code violations provide a reason not to sell to an independent buyer, who will have taken on the responsibility of fixing any such violations, and consequences of any failure to do so.

At its heart, the District's argument seems to be that a Bankruptcy Court should always deny a sale proposed by a distressed real estate debtor (or here, the Trustee)—even when the sale allows for the infusion of additional capital and provides the fastest and most certain path to remedying the Housing Code Violations the parties complain of. This makes no sense. Denying confirmation will make it harder to bring the Properties into compliance and perpetuate the alleged illegal conditions the District wishes to remedy.

B.      The Plan satisfies feasibility for the reasons discussed above.

The District next argues that the Plan fails to include sufficient information concerning rehabilitation and is therefore not feasible under section 1129(a)(11) of the Bankruptcy Code. [Dkt. No. 152 at 7–9]. However, this is not the standard the Plan must meet, and the District is merely reframing and repeating its failed objection concerning compliance with non-bankruptcy law.

The feasibility test only requires the court to evaluate "the probability of actual performance of the provisions of the plan," *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 684 (Bankr. D.D.C. 1992), rather than serving as basis for adding affirmative provisions to a Plan. Here, the Plan proposes a liquidation of the Debtors' assets (including the Properties) and distributions to Creditors under the Plan in accordance with the priority scheme of the Bankruptcy

24

Code. Purchaser has provided Trustee with a nonrefundable earnest money deposit of $1,200,000.00 and supplied financial information to M&M to show he is a qualified buyer. There is no indication Purchaser will not be able to make Distributions to the different Classes of creditors as contemplated by the Plan or fulfill with any other provision of the Plan.

  C. <u>The Terms of the Plan are not Vague.</u>

  The District next argues that the Plan is vague in that it does not specify mechanisms for ensuring compliance with housing laws. The Court should reject this argument, as it too is repetitive of the District's other arguments.

  The District cites little case law for this argument, and the case law that is cited is plainly not on point for the facts of the Sale, presented to the Court in this case. For instance, the District relies on *Colony Beach & Tennis Club Association, Inc. v. Colony Lender, LLC (In re Colony Beach and Tennis Club, Inc.)*, 508 B.R. 468 (Bankr. M.D. Fla. 2014), in which the bankruptcy court denied confirmation of a plan which proposed a sale but failed to identify a buyer, a price, a time for the transfer to occur, how payment would be made or provide an opportunity for a lender to credit bid to match the proposed sales price.

  That is plainly not the situation presented by the proposed sale in this case. The Debtor has identified the proposed buyer as Craig London (or a single asset LLC to which he assigns his interests); the contract provides a definite time period for closure, namely no earlier than 30 days after the entry of the Confirmation & Sale Order; the sales price is $7,020,000.00; and there is no financing contingency. The Plan is fundamentally clear and simple, in material respects, and should be confirmed.

## V.      The Plan Confirmation Order Incorporates Revisions to the Plan to Resolve Potential Objections.

The Trustee has spoken with parties-in-interest regarding the proposed Plan and Proposed Confirmation Order. In response to comments by the U.S. Trustee, Paragraphs 13, 18, and 21 of the Proposed Confirmation Order were included to revise certain provisions of the Plan and address the manner in which the Trustee will report disbursements affecting the U.S. Trustee fees in these jointly administered cases.

Paragraph 13 addresses the Trustee's anticipated allocation of the sales price among the ten properties in calculating disbursements for Quarterly Fee purposes. The paragraph proposes to allocate the sales price based on an estimate of the per property sale price given the number of units at each property. Paragraph 18 and 21 include revisions to the proposed exculpation and injunction provisions of the proposed plan.

The Trustee believes including these changes is beneficial to resolve potential objections to the Plan and ensure the Plan is consistent with the Bankruptcy Code. The Court should enter an Order confirming the Plan substantially in the form included with this Confirmation Memorandum.

<u>**CONCLUSION**</u>

WHEREFORE, Marc E. Albert, the Chapter 11 Trustee for the bankruptcy estates of 1416 Eastern NE LLC, et al., respectfully requests that this Court enter an order confirming the proposed Plan and such further relief as this Court may deem just, equitable, and proper.

CORE/3516991.0007/198666230.1

Dated:  April 25, 2025            Respectfully submitted,

/s/ Joshua W. Cox
Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I served a copy of the foregoing via CM/ECF upon all parties receiving notice thereby.

/s/ *Joshua W. Cox*
Joshua W. Cox

CORE/3516991.0007/198666230.1