Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com

*Attorneys for Marc E. Albert,
Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, *et al.*[1], | ) Chapter 11 |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) |

**DECLARATION OF JOHN M. (MARTY) ZUPANCIC, III
IN SUPPORT OF SALE OF DEBTORS' REAL PROPERTIES,
APPROVAL OF TRUSTEE'S DISCLOSURE STATEMENT
AND CONFIRMATION OF TRUSTEE'S JOINT PLAN OF LIQUIDATION**

John M. ("Marty") Zupancic, III, as Senior Vice President Investments of Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. ("Marcus & Millichap"), under penalty of perjury states the following:

---

[1] Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184-ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG) (collectively, "Debtors").

1

1.  I am, and, at all relevant times have been, a multifamily specialist in Marcus & Millichap's Bethesda, Maryland office, which serves the District of Columbia, Maryland and Virginia markets.

2.  I currently serve as a Director of the Marcus & Millichap's National Multi Housing Group.

3.  I am over the age of 18, mentally competent and make this declaration in support of the sale of the Properties,[2] approval of Disclosure Statement and confirmation of the Plan. The statements set forth below are true to the best of my personal knowledge.

4.  As a result of my personal knowledge and first-hand experience, and through my review of various materials and information, and discussions with Debtors, professionals, managers at the Properties and potential purchasers of the Properties, I have formed opinions as to (a) the sale of the Properties to Craig London, or as assigned to one or more single purpose entities; and (b) the confirmation of the Plan to accomplish that result.

5.  My team and I advise and assist clients in the acquisition and disposition of multifamily assets. I am a licensed real estate sales person in the District of Columbia (the "District"), Maryland and Virginia. I am one of the leading expert in the District's housing and rent control laws.

6.  I have significant experience with bankruptcy sales, the District's Tenant's Opportunity to Purchase Act ("TOPA") and tenant acquisitions, along with transactions involving development sites, and assets with condo conversion and repositioning potential.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in *Trustee's Joint Plan of Liquidation* filed by Marc E. Albert, chapter 11 trustee ("Trustee"), on March 21, 2025 [Dkt. No. 132] (as it may be amended or supplemented, the "Plan").

7. Trustee selected me and Marcus & Millichap as realtors in connection for the sale of the Properties located at:

   a. 1416 Eastern Avenue NE, Washington, DC 20019 (6 Units);

   b. 4935 Nannie Helen Burroughs Avenue NE, Washington, DC 20019 (4 Units);

   c. 4400 Hunt Place NE, Washington, DC 20019 (15 Units);

   d. 2501 Naylor Road SE, Washington, DC 20020 (8 Units);

   e. 2440 S Street SE, Washington, DC 20020 (11 Units);

   f. 3968 Martin Luther King Junior Avenue SW, Washington, DC 20032 (4 Units);

   g. 4263 6th Street SE, Washington, DC 20032 (2 Units);

   h. 4010 9th Street SE, Washington, DC 20032 (12 Units);

   i. 4303-4313 Wheeler Road SE, Washington, DC 20032 (42 Units); and

   j. 945 Longfellow Street NW, Washington, DC 20011 (13 Units).

8. An application to approve the employment of Marcus & Millichap as realtors in the above-captioned bankruptcy case was filed by Trustee on September 30, 2024. [Dkt. No. 100].

9. Pursuant to that application, Marcus & Millichap were to provide professional services to Trustee, including marketing the Properties, meeting with prospective purchasers, drafting sales contracts (subject to approval by this Court), providing advice on the value of the Properties and any other service which may be reasonably necessary to consummate sales of the Properties. [*Id.* at ¶ 8].

10. An order approving Marcus & Millichap's employment as realtors was entered by this Court on October 16, 2024. [Dkt. No. 103].

**Efforts to Market the Properties**

11. Marcus & Millichap diligently marketed the Properties.

3

12. To facilitate the marketing of the Properties, Marcus & Millichap prepared an Offering Memorandum (the "Offering Memorandum"), which was available to prospective purchasers upon completion of a confidentiality agreement.

13. The Offering Memorandum provided a comprehensive overview of the Properties, their recent capital expenditures, a description of their zoning and provided an overview of relevant factors affecting their location and nearby development activity.

14. To summarize the marketing efforts performed for the Properties, my team produced an Offer Matrix & Final Marketing Report dated March 13, 2025 (the "Final Marketing Report"). A true copy of the Final Marketing Report is attached as **Exhibit A**.

15. In the course of marketing the Properties, my team sent 36,853 emails (EBlasts), 9,611 of which were viewed, received 2,585 social media impressions and 9,084 Costar/Loopnet/Crexi views, and placed 1,815 telephone calls to solicit interest in the Properties.

16. These efforts resulted in 174 executed confidentiality agreements, 26 tours of the Properties with prospective purchasers and 10 written offers.

17. Of these, the best offer was provided by Craig London, or as assigned to one or more single purpose entities ("Buyer").

18. My team assisted with responding to Buyer's due diligence requests and maintained an electronic data room with information related to the Properties.

**The Purchase Agreement**

19. Buyer executed a Non-Binding Letter of Intent that gave rise to a Purchase Agreement (the "Purchase Agreement").

20. Trustee and Buyer executed the Purchase Agreement on March 3-4, 2025. [Dkt. No. 132-2].

4

21. The Purchase Agreement provided for the sale of the Properties for a purchase price of $7,020,000.00 (the "Purchase Price").

22. Buyer has delivered an earnest money deposit of $1,200,000.00 (the "Deposit") as provided for in the Purchase Agreement.

23. Pursuant to the Purchase Agreement, the Purchase Price, less the amount of the Deposit, and subject to appropriate adjustments and prorations as provided for in the Purchase Agreement, will be paid by Buyer at the time of the Closing, following entry of a Court order approving the sale as a component of the Plan, and serve along with any available remaining cash on hand derived from rents at the Properties as the primary funding source of the Plan.

24. Notwithstanding the foregoing, the Purchase Agreement allows for any higher and better offers to be submitted and considered as an Alternative Transaction up to the date of hearing on confirmation of the Plan. My team is continuing to inform parties who have expressed interest of the opportunity to submit a competing bid at or before the confirmation hearing.

25. Pursuant to the Purchase Agreement, upon approval by the Court of an Alternative Transaction and the closing of that Alternative Transaction, Buyer is entitled to be paid a Break-Up Fee in cash of $250,000.00 solely from the proceeds of sale of the Alternative Transaction as a cost of sale, which the Court approved on March 27, 2025. [Dkt. No. 140].

26. Pursuant to the Purchase Agreement, Trustee's obligations to perform are conditional on Buyer passing OFAC and AML review to the satisfaction of TD Bank.

27. The Purchase Agreement was negotiated at arm's-length between myself, Buyer and Buyer team members, and Trustee and his counsel. No other agreement, except for the Purchase Agreement and related amendments, schedules, and required documents, was entered

into between Buyer or its officers, directors, investors, employees or agents and Trustee or his counsel or agents.

28. Buyer and Trustee each negotiated the Purchase Agreement in good faith and at arm's length. Other than negotiating for the sale of the Properties, Buyer and its key personnel have no other connection with Trustee or Debtors. None of the officers, directors, investors, employees or agents of Buyer have any relationship with Trustee, his counsel or agents, Debtors, or any of Debtors' officers, directors, investors, employees or agents.

29. In my view, the process for selecting Buyer as a counter-party to a contract for the sale of the Properties and the process for selecting Buyer as a stalking horse bidder was fair and appropriate under the circumstances and is in the best interests of Debtors' estate.

30. Based on my discussions and the representations provided by Buyer, and my experience selling multifamily projects, I believe Buyer is willing and able to close this deal and close on the sale of this Properties.

**The Sale to Buyer Under the Plan Should be Approved**

31. In my professional judgment, the offer by Buyer is the highest and best price offer that Trustee or Debtors can reasonably obtain for the Properties.

32. It is my view that the sale to Buyer is in the best interest of Debtors and the bankruptcy estate, and maximizes the recoveries that can be obtained for creditors and parties-in-interest.

33. Trustee and Debtors are seeking to sell the Properties through a chapter 11 Plan, which will have the benefit of selling the Properties free of TOPA, which would apply to non-bankruptcy sales under D.C. Law. The sale also avoids recordation and transfer taxes that would otherwise apply.

6

34. Avoiding TOPA and recordation and transfer taxes is a major advantage for property sales in the D.C. market.

35. I am aware that in the course of seeking confirmation of the Plan, and due to a near certainty that TD Bank's Secured Claims would exceed the Sale Proceeds from the sale of the Properties and rents received from the Properties during the course of the case, Trustee negotiated an agreement with TD Bank providing for a carve out of TD Bank's Cash Collateral and Secured Claims.

36. This agreement with TD Bank allows for payment of the Administrative Claims of each Debtor Estate and other claims necessary to allow for successful sale of the Properties.

37. A sale of the Properties under the terms of the Plan in my view appropriately responds to the issues affecting Debtors' tenants and the concerns of the District of Columbia.

38. In my view, Buyer is in the best position of any potential purchaser of the Properties to continue the efforts to improve and rehabilitate the Properties, which if successful will benefit the tenants in the Properties and the interests of the District of Columbia.

39. As a result of these facts and my experience with the Properties, it is my view that the sale should be approved and the Plan confirmed by this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 25, 2025.                     */s/ Marty Zupancic, III*
                                           John M. ("Marty") Zupancic, III
                                           Senior Vice President Investments
                                           Marcus & Millichap Real Estate Investment
                                           Services of North Carolina, Inc.

CORE/3528654.0002/192235534.1



# BOUTIQUE MULTIFAMILY BANKRUPTCY PORTFOLIO

FINAL MARKETING REPORT
APRIL 24TH, 2025




**Marcus & Millichap**
THE ZUPANCIC GROUP








**PREPARED FOR:**

Marc Albert,
Chapter 11 Trustee

# ACTIVITY METRICS SUMMARY

**174** TOTAL
Executed Confidentiality Agreements

| | |
|---|---|
| **36,853** | SENT EMAILS (EBLASTS) |
| **9,611** | VIEWED EMAILS (EBLASTS) |
| **2,585** | SOCIAL MEDIA IMPRESSIONS |
| **9,084** | COSTAR/LOOPNET/CREXI VIEWS |
| **1,815** | AGENT CALLS |
| **174** | EXECUTED CAS |
| **26** | TOURS CONDUCTED |
| **10** | OFFERING PARTIES |

## BUYER STATUS BREAKDOWN

- Passing — 96%
- Interested — 4%

THE ZUPANCIC GROUP

2

# TOURS

**0** TOTAL
Tours Scheduled

**26** TOTAL
Tours Conducted

## TOURS SCHEDULED

| # | NAME (COMPANY) | DATE |
|---|---|---|

## TOURS CONDUCTED

| # | NAME (COMPANY) | DATE |
|---|---|---|
| 1 | Victor Chopra (Private Client) | 10/30/2024 |
| 2 | Prasun Desai (Private Client) | 10/30/2024 |
| 3 | Russ Brown (Realty ONE) | 10/30/2024 |
| 4 | Amit Vora (Square & Lot) | 10/30/2024 |
| 5 | Keith Carr (Thos. D Walsh) | 10/30/2024 |
| 6 | Kranthi Dudam (D Capital) | 10/30/2024 |
| 7 | Jay Forte (Elcorp Holdings LLC) | 10/30/2024 |
| 8 | Craig London (CLPC) | 11/8/2024 |
| 9 | Jake Dickstein (Vesta Partners) | 11/8/2024 |
| 10 | Tom Strand (Vesta Partners) | 11/8/2024 |
| 11 | Siem Abebe (Solo Investment Group) | 11/8/2024 |
| 12 | Gary Evans (Delwin Realy) | 11/8/2024 |
| 13 | Gauhar Naseem (AG Capital) | 11/8/2024 |
| 14 | Ethan Arnheim (Private Client) | 11/8/2024 |
| 15 | Genevieve Hanson (H & H Realty Group) | 11/8/2024 |
| 16 | Navid Rahimi (Private Client) | 11/8/2024 |
| 17 | Michael Goss (Coldwell Banker) | 11/8/2024 |
| 18 | Alvin Gross (Alvin E Gross Realty) | 11/15/2024 |
| 19 | Danny Gill (Private Client) | 11/15/2024 |
| 20 | Richard Balles (CRDV) | 11/22/2024 |
| 21 | Gordon Davis on behalf of Christian Basant (Curry Brooks) | 11/22/2024 |
| 22 | William Bethune (Private Client) | 11/22/2024 |
| 23 | Freddy Llorena (Woodmont Properties) | 11/22/2024 |
| 24 | Nicholas Bralove (Private Client) | 11/29/2024 |
| 25 | Craig London (CLPC) | 2/18/2025 |
| 26 | Bruce Finland (MED Developers) | 2/28/2025 |

## MULTIFAMILY CONTACTS

**JOHN SLOWINSKI**
Associate
O (202) 536-3780  |  M (301) 792-6760
John.Slowinski@MarcusMillichap.com

**RYAN MURRAY**
Associate
O (202) 536-3777  |  M (301) 404-7965
Ryan.Murray@MarcusMillichap.com

**ANDREW PACIOUS**
Associate
O (202) 536-3725  |  M (703) 310-8504
Andrew.Pacious@MarcusMillichap.com

**MARTY ZUPANCIC**
Senior Vice President Investments
O (202) 536-3788  |  M (202) 379-8383
Marty.Zupancic@MarcusMillichap.com

## CAPITAL MARKETS

**JARED CASSIDY**
Senior Director, Capital Markets Originations
O (202) 536-3739
Jared.Cassidy@MarcusMillichap.com

## OPERATIONS

**SUSIE ASHLEY**
Marketing & Operations Manager
O (202) 536-3785
Susan.Ashley@MarcusMillichap.com

**AUSTIN PARKER**
Multifamily Analyst
O (202) 536-3787
Austin.Parker@MarcusMillichap.com



Marcus & Millichap
THE ZUPANCIC GROUP