Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>1416 Eastern Ave NE LLC, *et al.*[1],<br><br>Debtors. | Case No. 24-00180-ELG<br>Chapter 11<br>(Jointly Administered) |

**DECLARATION OF MARC E. ALBERT, CHAPTER 11 TRUSTEE,
IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN**

Marc E. Albert, chapter 11 trustee ("Trustee"), for the bankruptcy estates of 1416 Eastern NE LLC, *et al.* ("Debtors"), under penalty of perjury states the following:

1. I am, and, at all relevant times have been, chapter 11 trustee for the bankruptcy estates of Debtors. I am over the age of 18, mentally competent and makes this declaration ("Declaration") in support of confirmation of chapter 11 plan as more fully described below.

2. As Trustee, I am familiar with Debtors as well as the general business and financial affairs of Debtors. The statements set forth below are true to the best of my personal knowledge and if called to testify to those statements, I would do so competently.

---

[1] Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184-ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

1

3. This Declaration is submitted in support of *Trustee's Joint Plan of Liquidation* filed on March 21, 2025 [Docket No. 132] (the "Plan").[2]

## STATEMENT OF FACTS

4. Each of Debtors is named for residential real property that it owns, and the business of each Debtor is multi-family rental housing. The locations of the residential multi-family real property buildings for Debtors are as follows:

   a. 1416 Eastern Avenue Northeast, Washington, DC 20019

   b. 945 Longfellow Street Northwest, Washington, DC 20011

   c. 2501 Naylor Road Southeast, Washington, DC 20020

   d. 4301-4313 Wheeler Road Southeast, Washington, DC 20032

   e. 4263-67 6th Street Southeast, Washington, DC 20032

   f. 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019

   g. 3968 Martin Luther King Junior Avenue SE, Washington, DC 20032

   h. 4010 9th Street Southeast, Washington, DC 20032

   i. 2440 S Street Southeast, Washington, DC 20020

   j. 4400 Hunt Place Northeast, Washington, DC 20019

   (collectively, the "Properties")

5. Debtors filed their voluntary chapter 11 petitions on May 29, 2024. Debtors' cases are jointly administered, with the case of 1416 Eastern Ave NE LLC, 24-00180-ELG serving as the main case. *See Order Directing Joint Administration* [Docket No. 64].

---

[2] All capitalized terms not defined in this Declaration have the same meanings ascribed to them in the Plan.

2

6. Pursuant to the *Order Approving Appointment of Marc Albert as Chapter 11 Trustee* entered by the Court on July 24, 2024 [Docket No. 71], the Court ordered me to serve as the duly appointed and qualified chapter 11 trustee for Debtors' estates.

7. I now intend to sell the Properties free and clear of any lien and interest through the Plan. After a vigorous marketing campaign conducted by real estate brokers Marcus and Millichap Real Estate Investment Services of North Carolina, Inc. ("Realtor"), I selected Craig London (or a single asset LLC to whom he assigns his interests) ("Purchaser") as stalking horse bidder for purchase of the Properties, i.e., as prospective purchaser unless and until a higher and better offer is received. On or around March 4, 2025 and March 5, 2025, Purchaser executed a Purchase Agreement (the "Purchase Agreement") for purchase of the Properties.

8. In lieu of formal bid procedures, all interested persons or entities are invited to submit higher or better offers for the Properties by submitting a purchase and sale agreement, substantially similar to the Purchase Agreement, on or before the Confirmation Hearing concerning the Plan.

**DECLARATION**

9. As a result of my personal knowledge and first-hand experience, and through my review of various materials and information, discussions with Debtors' owner, professionals, managers at the Properties, and through discussions with Debtors' outside advisors, I have formed opinions as to (a) the sale of the Properties to Purchaser or any other qualified highest and best bidder; and (b) the confirmation of the Plan to accomplish that result.

10. I have reviewed the *Disclosure Statement* filed on March 21, 2025 [Docket No. 133] (the "Disclosure Statement"), the Plan and the Purchase Agreement together with its schedules and amendments thereto, and to the best of my knowledge, believe that the facts set

3

forth therein are true and correct. Such representations are based upon information and belief and through my review of various materials and information, as well as my experience and knowledge of Debtors' operations and financial condition.

11. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in the Disclosure Statement, the Plan and the Purchase Agreement.

12. The sale proposed through the Plan will minimize the adverse effects of this chapter 11 case on Debtors and result in maximum creditor recoveries while preserving the health and safety of the Properties' tenants. I believe that the sale is in the best interests of creditors and maximize the value of Debtors' assets for the benefit of stakeholders.

**Sale of Properties**

13. The Purchase Agreement provided for the sale of the Properties for a purchase price of $7,020,000.00 (the "Purchase Price").

14. Purchaser has delivered an earnest money deposit of $1,200,000.00 (the "Deposit") as provided for in the Purchase Agreement.

15. Pursuant to the Purchase Agreement, the Purchase Price, less the amount of the Deposit, and subject to appropriate adjustments and prorations as provided for in the Purchase Agreement, will be paid by Purchaser at the time of the closing, following entry of a Court order approving the sale as a component of the Plan, and serve along with any available remaining cash on hand derived from rents at the Properties as the primary funding source of the Plan.

16. Notwithstanding the foregoing, the Purchase Agreement allows for any higher and better offers to be submitted and considered as an alternative transaction up to the date of hearing on confirmation of the Plan.

4

17. Based on my discussions and the representations provided by Purchaser, and my experience with the Properties, I believe Purchaser is willing and able to close this deal and close on the sale of the Properties.

18. In my view, the offer provided by Purchaser is the best offer that could reasonably be obtained for the Properties.

19. It is my view that the sale to Purchaser is in the best interest of Debtors, the bankruptcy estate, and maximizes the recoveries that can be obtained for creditors and parties-in-interest.

20. A sale through the Plan will also have the benefit of allowing the Properties to be sold free of the Tenant Opportunity to Purchase Act ("TOPA"), which would apply to non-bankruptcy sales under D.C. Law. The sale also avoids recordation and transfer taxes that would otherwise apply. Realtor has informed me that avoiding TOPA and recordation and transfer taxes is a major advantage for multifamily property sales in the D.C. market.

**Plan Confirmation**

21. The Plan involves the sale of the Properties following a marketed sales process led by an experienced Realtor. The proposed Purchaser is an arm's length purchaser that will continue to be required to comply with all applicable federal and local regulations, housing laws, and rent control rules applicable to the Properties.

22. I contend the Plan complies with all of the requirements of 11 U.S.C. § 1129[3] and in support, discusses each of the confirmation requirements in detail.

Section 1129(a)(1) – The Plan Complies with the
Applicable Provisions of the Bankruptcy Code

---

[3] All statutory references hereinafter are to 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") unless otherwise noted.

23. Section 1129(a)(1) mandates that "[t]he plan compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The Code does not define the phrase "applicable provisions," however, it is aimed at compliance with 11 U.S.C. §§ 1122 and 1123. *In re Multiut Corp.*, 449 B.R. 323, 333 (Bankr. N.D. Ill. 2011) (citation omitted). I submit that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

    i.    Section 1122(a) — Each class of claims contains only claims that are substantially similar to other claims within that class;

    ii.    Section 1123(a)(1) — The Plan designates for following classes of claims:

Claims of 1416 Eastern Ave NE LLC

> Class A.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).
>
> Class A.2: Allowed Secured Claim of TD Bank (Impaired).
>
> Class A.3: General Unsecured Claims (Impaired).
>
> Class A.4: Interests (Impaired).

Claims of 945 Longfellow St NW LLC

> Class B.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).
>
> Class B.2: Allowed Secured Claim of TD Bank (Impaired).
>
> Class B.3: General Unsecured Claims (Impaired).
>
> Class B.4: Interests (Impaired).

Claims of 2501 Naylor Rd SE LLC

> Class C.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).
>
> Class C.2: Allowed Secured Claim of TD Bank (Impaired).
>
> Class C.3: General Unsecured Claims (Impaired).
>
> Class C.4: Interests (Impaired).

6

Claims of 4303-13 Wheeler Rd SE LLC

    Class D.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class D.2: Allowed Secured Claim of TD Bank (Impaired).

    Class D.3: General Unsecured Claims (Impaired).

    Class D.4: Interests (Impaired).

Claims of 4263 6th St SE Apartments LLC

    Class E.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class E.2: Allowed Secured Claim of TD Bank (Impaired).

    Class E.3: General Unsecured Claims (Impaired).

    Class E.4: Interests (Impaired)

Claims of 4935 NHB Ave NE LLC

    Class F.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class F.2: Allowed Secured Claim of TD Bank (Impaired).

    Class F.3: General Unsecured Claims (Impaired).

    Class F.4: Interests (Impaired)

Claims of 3968 MLK LLC

    Class G.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class G.2: Allowed Secured Claim of TD Bank (Impaired).

    Class G.3: General Unsecured Claims (Impaired).

    Class G.4: Interests (Impaired)

Claims of 4010 9th St SE LLC

    Class H.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class H.2: Allowed Secured Claim of TD Bank (Impaired).

    Class H.3: General Unsecured Claims (Impaired).

    Class H.4: Interests (Impaired)

  Claims of 2440 S St SE LLC

    Class I.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class I.2: Allowed Secured Claim of TD Bank (Impaired).

    Class I.3: General Unsecured Claims (Impaired).

    Class I.4: Interests (Impaired)

  Claims of 4400 Hunt Pl NE LLC

    Class J.1: Secured Claims of Taxing Authorities and Utility Lienholders that Prime TD Bank's Secured Claims (Unimpaired).

    Class J.2: Allowed Secured Claim of TD Bank (Impaired).

    Class J.3: General Unsecured Claims (Impaired).

    Class J.4: Interests (Impaired)

iii. 1123(a)(2): The Plan specifies that Class A.1, Class B.1, Class C.1, Class D.1, Class E.1., Class F.1, Class G.1, Class H.1., Class I.1, and Class J.1 are Unimpaired.

iv. 1123(a)(3): The Plan specifies that Class A.2, Class B.2, Class C.2, Class D.2, Class E.2, Class F.2, Class G.2, Class H.2, Class I.2, and Class J.2; Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3; and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 are Impaired.

v. 1123(a)(4): The Plan provides for the same treatment for each Claim within a particular class.

vi. 1123(a)(5): The Plan provides adequate means for the Plan's implantation. In particular, I intend to fund the Plan through a sale of the Properties.

vii. 1123(a)(6): Insofar as this is a liquidating plan and Debtors are not corporations, I submit that Section 1123(a)(6) does not apply;

viii. 1123(a)(7): The Plan contains only provisions that are consistent with the interests of creditors, equity security holders and public policy.

ix.  1123(a)(8): Section 1123(a)(8) only applies to individual cases and is therefore inapplicable to this chapter 11 case.

Section 1129(a)(2) – Compliance With Applicable
Provisions of the Bankruptcy Code

24. The Trustee has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) and (2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. The solicitation of acceptances of the Plan was in compliance with all applicable rules governing the adequacy of disclosure in connection with such solicitation and pursuant to the *Order and Notice Combining Hearing on Plan and Disclosure Statement Setting Hearing Date and Fixing Deadlines for Filing Objections, Acceptance or Rejecting the Plan* entered by the Court on March 27, 2025 [Docket No. 140].

Section 1129(a)(3) – Proposal of Plan in Good Faith

25. Section 1129(a)(3) requires that the "plan has been proposed in good faith and not by any means forbidden by law." For purposes of determining good faith under section 1129(a)(3), "the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 673 (Bankr. D.D.C. 1992) (citation omitted). "The good faith standard requires a showing that the plan was proposed with 'honesty and good intentions' and with a 'basis for expecting that a reorganization can be effected." *Id.* (citing *In re Koelbl*, 751 F.2d 137, 139 (2d Cir.1984)).

26. The Plan is proposed in good faith and not by any means forbidden by law. Selling the Properties to a purchaser following a Court approved marketing process is consistent with the Bankruptcy Code's objective of maximizing the value of Debtors' assets.

Section 1129(a)(4) – Bankruptcy Court Approval of

9

Certain Payments as Reasonable

27. Section 1129(a)(4) requires that "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Here, the Plan provides that all professional fees and expenses are subject to review by this Bankruptcy Court, which satisfies § 1129(a)(4).

Section 1129(a)(5) — Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Equity Interests of Creditors and Public Policy

28. Section 1129(a)(5) requires that the Plan disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint Plan with the debtor, or a successor to the debtor under the Plan." Section 1129(a)(5)(A)(ii) requires that the appointment to or continuation in office of a director or officer be consistent with the interests of creditors, equity security holders, and public policy. Section 1129(a)(5)(B) requires the Plan proponent to disclose the identity of any insider to be employed by the reorganized debtor.

29. The Plan provides for the wind-up and dissolution of Debtors effective immediately upon the Effective Date of the Plan. [Plan VII.E]. As such, Section 1129(a)(5) is not applicable.

Section 1129(a)(6) — Approval of Rate Changes

30. The Plan does not modify or affect the jurisdiction over the rates of Debtors by any governmental regulatory commission, and therefore Section 1129(a)(6) does not apply.

Section 1129(a)(7) – Best Interests of Creditors and Equity Interest Holders

10

31.     Section 1129(a)(7) requires that with respect to each Impaired Class of Claims, each holder of a Claim has accepted the plan, or will receive or retain under the plan on account of such claim property of a value, that is not less than such holder would receive if Debtors' estates were liquidated under chapter 7.

32.     The Plan shall be funded by the sale of the Properties and paid to Holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code, which satisfies Section 1129(a)(7).

Section 1129(a)(9) – Treatment of Claims Entitled to
Priority Pursuant to Section 507(a) of the Bankruptcy Code

33.     The Plan provides for treatment of Administrative Claims and Priority Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code. TD Bank has agreed to the use of funds serving as TD Bank's collateral for the payment of Allowed Administrative Expense Claims, including Professional Fee Claims. Accordingly, all Allowed Administrative Expense and priority claims will be paid in full on the Effective Date. The Plan complies with Section 1129(a)(9).

1129(a)(10) – Acceptance by at Least One Impaired Class

34.     As required by Section 1129(a)(10), at least one impaired class of creditors for each Debtor has voted to accept the Plan. In particular, Class A.2, Class B.2, Class C.2, Class D.2, Class E.2, Class F.2, Class G.2, Class H.2, Class I.2, and Class J.2 have accepted the Plan.

Section 1129(a)(11) – Feasibility of the Plan

35.     The Plan complies with section 1129(a)(11) of the Bankruptcy Code. The Plan proposes a liquidation of Debtors' assets (including the Properties) and distributions to Creditors under the Plan in accordance with the priority scheme of the Bankruptcy Code. The Plan centers on a sale of Debtors' multifamily apartment buildings to allow the multifamily properties at the

11

center of this case to be acquired and successfully developed. Purchaser has provided a nonrefundable earnest money deposit of $1,200,000.00 and supplied financial information to Realtor to show he is a qualified buyer. The Plan is feasible and complies with Section 1129(a)(11).

### Section 1129(a)(12) – Payment of Bankruptcy Fees

36. In accordance with section 1129(a)(12) of the Bankruptcy Code, Section XI.D of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on or before the Effective Date. The Plan complies with Section 1129(a)(12).

### Section 1129(a)(13) – Retiree Benefits

37. Debtors do not offer Retiree Benefits as that term is defined in Section 1114 of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code is therefore inapplicable to this chapter 11 case.

### Section 1129(a)(14) – Domestic Support Obligations

38. Section 1129(a)(14) of the Bankruptcy Code is inapplicable to this chapter 11 case.

### Section 1129(a)(15) – Objecting Unsecured Creditor in Individual Case

39. Debtors are business entities and not individuals. Section 1129(a)(15) of the Bankruptcy Code is therefore inapplicable to this chapter 11 case.

### Section 1129(a)(16) – Transfers of Property by Non-Moneyed Corporation or Trust

40. Section 1129(a)(16) of the Bankruptcy Code is inapplicable to this chapter 11 case.

### Cramdown
### Section 1129(b)(1) and (2) – Approval of Plan Absent Unanimous Acceptance

41. Compliance with Section 1129(b)(1) of the Bankruptcy Code is required. As described above, the Plan meets all the requirements of § 1129(a), with the exception of § 1129(a)(8). Impaired classes, Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 (General Unsecured Claims of each Debtor) and

Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 (Interests of each Debtor), have not voted to accept the Plan. However, these classes, by virtue of not receiving a distribution, are deemed to reject the Plan and were not entitled to vote. I thus ask the Court to confirm the Plan pursuant to the cramdown provisions of § 1129(b), which are satisfied.

42.     Cramdown requires the Court to determine that, if all of the applicable requirements of Section 1129(a) are met—other than the requirement in 1129(a)(8) that all impaired classes vote in favor of the Plan—the Court, "on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Here, the Plan meets both requirements of (i) not discriminating unfairly; and (ii) is fair and equitable with respect to the impaired, non-accepting interests.

43.     *No Unfair Discrimination*: Although Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 (General Unsecured Claims of each Debtor) are receiving separate classification from the Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 Interests (also unsecured non-priority claims of each Debtor), the treatment of each of these claims is the same. By virtue of their status as general unsecured claims to the extent the holders of Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3 Claims and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4 Interests are Allowable Claims, each is being provided similar treatment under the Plan and is to be paid the same pro rata payment from the proceeds of the sale that remains after payment of higher-priority administrative and secured claims.

44.     *Fair and Equitable (Absolute Priority Rule):* The Plan is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. The non-accepting impaired unsecured claims in Class A.3, Class B.3, Class C.3, Class D.3, Class E.3, Class F.3, Class G.3, Class H.3, Class I.3, and Class J.3, and Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4, are receiving the same, or better treatment, than they are entitled to under the Bankruptcy Code's priority scheme. Under Section 1129(b)(2)(B), a fair and equitable Plan, with respect to unsecured creditors, must either (i) pay the allowed amount of the unsecured claims; or (ii) satisfy the absolute priority rule.

45.     Here, the Plan satisfies the absolute priority rule. All Equity Interests (Class A.4, Class B.4, Class C.4, Class D.4, Class E.4, Class F.4, Class G.4, Class H.4, Class I.4, and Class J.4) will be receiving no payments from the Bankruptcy Estates on account of those interests. No equity interests will remain, and the Plan provides that Debtors are to be wound-up and dissolved on the Effective Date. [Plan VII.E]. The Plan therefore complies with § 1129(b)(2)(B)(ii) and is fair and equitable with respect to each class of claims that is impaired and has not accepted the Plan.

46.     Because I have duly requested the Court to grant confirmation under the Bankruptcy Code's cramdown provisions, and upon the finding of the Court that the Plan does not discriminate unfairly and is fair and equitable to each class of claims that is impaired and has not accepted the Plan, the requirements of § 1129(b) have been met and Confirmation of the Plan is appropriate.

Section 1129(c) – Only One Plan is Before this Court

47.     In accordance with section 1129(c) of the Bankruptcy Code, this is the only chapter 11 plan before the Court.

<u>Section 1129(d) – No Avoidance of Taxes or Avoidance
of the Application of Section 5 of the Securities Act of 1933</u>

48.     As required by section 1129(d) of the Bankruptcy Code, the principal purpose of the Plan is neither to avoid taxes nor to avoid the application of section 5 of the Securities Act of 1933.

* * * *

49.     Based upon the foregoing, all other pleadings, documents, and exhibits filed in connection with confirmation of the Plan, and all arguments to be made, proffered, or evidence or testimony to be introduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in § 1129 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 25, 2025.

*/s/ Marc E. Albert*
Marc E. Albert, Chapter 11 Trustee

15