

**URBAN CITY MANAGEMENT**

2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

## LEASE AGREEMENT

**THIS LEASE**, made this __25__ day of __October__, __2010__ between Urban City Management hereinafter referred to as "landlord", and Rodecia Mason hereinafter referred to as "tenant". Witnessed, that Landlord hereby rents to Tenant, and Tenant does hereby rent from Landlord the premises described as __4309 Wheeler RD Unit 104, Washington Dc 20032__ hereinafter called the "premises". The term of this lease is from __November 1, 2010__ and ending on midnight __October 31, 2011__ and the total rent for the leased premises is, __Thirteen Thousand Two Hundred Sixty Dollars__ ($13,260.00/100 Dollars payable in the amount (__$1105.00.00__) per month **on or before the first day of the month (in advance)** without notice, deduction, set off or demand.

This lease is on the following terms, covenants, rules, and regulations which the Landlord and Tenant agree to keep and perform.

**LANDLORD AND TENANT AGREE THAT:**

**SECURITY DEPOSIT:** 1. The security deposit will be forth coming per assistance thru program and tenant. To Landlord of the amount of __One Thousand One Hundred Five Dollars ($1105.00)__ hereby acknowledges receipt from Tenant of the sum paid prior hereto, to be held as security for the faithful performance by the Tenant of the covenants, conditions, rules and regulations contained herein. The Security Deposit, or any portion thereof, may be withheld for unpaid rent, damage due to breach of Lease or for damage to the Premises by the Tenant, Tenant's family, agents, employees, guests or invitees in excess of ordinary wear and tear to the leased premises, common areas, major appliances and furnishings owned by us It is understood and agreed, however, that irrespective of said Security Deposit, rent shall be paid when due, in accordance with the terms hereof.
The tenant shall have the right to be present when Landlord inspects the Premises after the Tenant quits and surrenders the Premises, if the Tenant notifies the Landlord by certified mail of the Tenant's intention to move, the date of moving, and the Tenant's new address. The notice of attendance at inspection to be furnished by the Tenant shall be mailed to the Landlord at lease fifteen (15) days prior to the date of moving. Upon receipt of the notice, the Landlord shall notify the Tenant by certified mail of the time and date when the Premises are to be inspected. The date of the inspection shall occur within five (5) days before or five (5) days after the date of moving, as designated in the Tenant's notice. In the event of a sale of the Premises by Landlord, the Landlord shall have the right to transfer the Security Deposit to the vendee, or other transferee, and Landlord shall be considered released by Tenant for all liability for the return of such Security Deposit and Tenant shall look to Landlord's transferee solely for the return of said Security Deposit. It is agreed that this shall apply to every transfer or assignment made of the Security Deposit to any such transferee. The Security Deposit shall not be mortgaged, assigned or encumbered by Tenant without the written consent of

1 | Page



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

all costs of collection. If Tenant does not take occupancy of
said premises for any other reason other than the unit not being ready for
occupancy, security deposit will be withheld to cover that month's rent of
unoccupied unit. Tenant will also be responsible for the rent of said unit
until Landlord can re-rent unit.
**DELIVERY DATE OF PREMISES:** 2. The Landlord has not guaranteed a specific
delivery date for the Premises, but the Tenant will only be charged rent
from the date on which the Premises are ready for occupancy and tendered
by Landlord to Tenant by delivery of keys.
**POSSESSION PRIOR TO COMMENCEMENT OF LEASE:** 3. If permission is given to
Tenant to enter into possession of the Premises prior to the date specified
for the commencement of the term of this Lease, and/or to occupy any
apartment/house of Landlord other than the Premises at any time, Tenant
covenants and agrees that such occupancy shall be deemed to be under all
of the terms, covenants, rules and regulations of this Lease, with the rent
provided for under this Lease to be apportioned for such period of occupancy
(as to time, on a daily basis) unless otherwise agreed to between the parties.
**BANK RETURNED CHECKS:** 4. If any check issued by the Tenant to the Landlord
or Agent for payments due hereunder is returned with-out payment for any
reason whatsoever except Landlord's fault, Tenant shall pay to Landlord as
liquidated damages for additional expenses for bookkeeping and clerical
services a charge of Thirty-Five Dollars ($35.00) for each time said check
is returned. Tenant also agrees to pay a late charge (if applicable).
Landlord shall have no obligation to make any further deposit of Tenant's
bank returned check. Future rent will be paid by cashier check and or money
order thereafter
**DEFINITION OF RENT:** 5. All payments from Tenant to Landlord required under
the terms of this Lease, including Court costs, attorney's fees, late
charges, returned check fees, repair charges, utilities and any other
miscellaneous fees shall be deemed rent.
**ADMINISTRATIVE AND ATTORNEY FEES:** 6. In the event Tenant, Tenant's family,
agents, employees or guests violate any term or provision of this Lease
(other than Section 27), or the rules and regulations thereof, Tenant shall
pay to Landlord, in addition to any other damages and expenses incurred by
Landlord as a result thereof, an Administrative Fee in the amount of Fifty
Dollars ($50.00) to help defray Landlord's costs incurred in connection with
having Tenant remedy such Lease violation. Should Landlord employ an
attorney because of any such violation, the Tenant shall pay in addition
to the aforesaid Administrative Fee, and not in lieu thereof, such reasonable
attorney fees as are incurred by the Landlord. Tenant shall be liable for
such attorney fees whether or not Landlord institutes legal proceedings.
However, where legal proceedings are instituted by Landlord against Tenant,
and said proceedings result in a monetary judgment in favor of Landlord,
those reasonable attorney fees for which Tenant shall be liable to Landlord
shall not be less than 15% of said Judgment.
**WAIVER:** 7. The failure of the Landlord to insist upon a strict compliance
with any of the covenants, rules or regulations of this Lease, or to exercise
any option herein contained, shall not be construed as a waiver of such
covenant, rule, regulation or option, but that all covenants, rules,
regulations and options shall remain in full force and effect. Landlord shall



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

not be liable or responsible to Tenant for the violation of any covenant, rule or regulation in any other lease by any other Tenant.

**ALTERATIONS:** 8. The Tenant accepts said premises in their present condition and agrees to keep said premises in a good clean condition. Any alterations, additions or improvements of a permanent nature to the Premises shall not be made by Tenant without Landlord's prior written permission, and any such permanent alterations, additions or improvements made to the Premises shall be the property of the Landlord without payment to the Tenant and shall remain with the Premises.

**COMPLIANCE WITH RULES AND REGULATIONS:** 9. A list of Rules and Regulations is attached and made part of said lease. The Tenant, Tenant's family, employees, agents and guests, will observe and comply with the rules and regulations set forth in this Lease and which are to be considered a part hereof, and with such further rules and regulations as the Landlord may adopt, effective ten (10) days after Landlord gives Tenant written notice thereof. It is further agreed that the Landlord may modify these rules and regulations and that a violation of the rules and regulations after such ten (10) day notice is a default under this lease.

If the Landlord shall at any time deem the tenancy of the Tenant undesirable by reason of repeated failure by Tenant or his family, friends or guests to abide by said Rules and Regulations (including further amendments thereof) or by reason of the Tenant's causing undue or repeated disturbances to the neighbors or the surrounding area, such acts shall constitute a breach of the lease, and the Landlord shall be entitled to enter and take repossession of the premises.

**LEASE VIOLATIONS:** 10. If any of the representations made in Tenants Lease Application are misleading or untrue, or if Tenant, Tenants family, employees, agents or guests violate any provision of this Lease, or any rule or regulation herein imposed, then Landlord may treat such representation or Lease violation as a forfeiture under the terms of this Lease, with Tenant's possession of the Premises terminating on the date specified in Landlord's notice.

Under such circumstances, Landlord may re-enter and take possession of the Premises by utilizing applicable law. If Tenants possession of the Premises should be so terminated, or if the Premises should otherwise become vacant during the term of this Lease, or any renewal or extension thereof, the Tenant will remain liable to the Landlord for the rent through what would have been the expiration date of this Lease, or any renewal or extension thereof, had Tenant's possession not been so terminated; and shall further remain liable for such other damages sustained by the Landlord due to Tenant's breach of Lease and/or Tenant's termination of possession of the Premises as long as such liability is not expressly prohibited by applicable law. Such other damages shall include, but are not limited to, costs incurred in recovering possession of the Premises (such as rental commissions, administrative expenses and an advertising expense of $50.00), utility costs for the Premises while same remain vacant, and costs incurred in redecorating the Premises.

**INTERRUPTION OF SERVICE:** 11. The tenant will receive no rent reduction, nor will Landlord be liable to Tenant, due to repairs or interruption of services to utilities, appliances or equipment in or about the Premises or due to



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

defects in the Premises not caused by Landlord's fault, omission, negligence or other misconduct; or due to the inability of Landlord to obtain proper fuel, utilities, or repair/replacement parts. In case it shall become necessary at any time, from accident or repairs, or to improve the condition or operation of the Premises, or any equipment or utilities appertaining thereto, Landlord may stop or curtail the operation of said equipment or utilities, but in such case due diligence shall be used to complete the work.

**RIGHT OF ENTRY:** 12. Landlord has the right, after 24 hours' informal oral notice (or in the case of emergency, without such informal notice) to enter the Premises at any time by master key or by force if necessary, to inspect the Premises, to make repairs/alterations in the Premises or elsewhere on Landlord's property, to protect the Premises from damage or casualty, to enforce any provision of this Lease or to show the Premises to prospective future tenants or purchasers without being liable to prosecution therefore, or damages by reason thereof. If Landlord cannot reach Tenant by telephone then Landlord shall be permitted to enter the premises without notice for any of the reasons stated above. Tenant is deemed to have given Landlord permission to enter the premises in connection with any request for services, maintenance, or repairs or to respond to housing code complaints. Tenant agrees to cooperate fully in providing Landlord access to the premises for the same without delay or interference.

**RE-ENTRY OF PREMISES:** 13. In the event Tenant abandons the Premises or is required to vacate the Premises due to Landlord exercising its rights upon Tenant's breach of Lease, then the Landlord shall have the right to enter the Premises for the purpose of making alterations and repairs, and may re-let the Premises for a term which may at Landlord's option be less than or exceed the period which would otherwise have constituted the balance of the term of this Lease, or any renewal or extension thereof, all without relieving the Tenant of the liabilities imposed by applicable law and this Lease Agreement. Landlord shall further have the right, without further notice, to sell or otherwise dispose of any personal property left in or about the Premises or storage area by the Tenant, after the Tenant has vacated.

**ABANDONMENT:** 14. Abandonment of the Premises shall be deemed to have occurred when the Tenant has removed the bulk of Tenant's furnishings, including all or most major pieces of Tenant's furniture from the Premises; photographs or written lists by Landlord shall be sufficient proof of such abandonment.

**REPAIRS:** 15. Landlord shall be responsible for repairs to the Premises, its equipment and appliances furnished by Landlord, except that Tenant agrees to pay the cost for all labor and material for repairs or replacement if the damage or malfunction to the Premises, its equipment or appliances or any other part of the apartment building, is due to the acts or omissions of Tenant, Tenant's family, guests, agents or employees. Tenant agrees to immediately pay the cost of the same upon presentation of the bill to the Tenant by the Landlord. Tenant shall immediately notify Landlord of any defective condition that comes to Tenant's attention. Tenant shall indemnify Landlord for any liability, loss or damage incurred by Landlord as a result of Tenant's failure to so notify the Landlord of such defective condition. All damages including, but not limited to doors, locks, windows, siding, address signs, mailboxes, bike racks, etc., etc., by break-in or vandalism,



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

etc., will be paid by the Tenant. Tenants are prohibited from changing locks. Should the Tenant need the locks changed for any reason, this can only be done by Landlord's agent and Tenant agrees to pay the cost of the locks/labor, due and payable when locks are changed. If Tenant locks themselves out of their house, Landlord will send agent out to let Tenant into premises; however, the Tenant agrees to pay $60.00 payable at the time agent lets Tenant into premises.

If damage should occur to the premises, such as broken pipes, due to insufficient heat being maintained by the Tenant, Tenant will be responsible for paying all costs for materials and labor due to the repair of said damage. If a high water bill occurs due to the breaking of such pipes, or the failure of the Tenant to report a leak or other problem to the Landlord's office, Tenant will be responsible for paying the water bill. Should the Tenant have a unit heated by oil heat, Tenant agrees to the following. Tenant agrees that if Tenant has oil heat, Tenant shall contract with an oil company for automatic delivery. Tenant acknowledges that should Tenant run out of oil, or use a low grade oil and it is necessary for the Tenant to send a heating serviceman out to the unit either a) to tell the Tenant that they have no heat because they ran out of oil, or b) it is necessary for the Tenant to send a serviceman out to bleed the lines in the furnace because the Tenant had run out of oil, then Tenant agrees that the Tenant must pay as additional rent, the cost of the service call for the serviceman to the Tenant within fifteen (15) days of receiving a bill from the Landlord. Tenant agrees to have telephone service active at all times during the entire duration of this contract. Failure to do so could result in immediate termination of this contract.

Tenant agrees that if any member of Tenant's household, his agents, guests or visitors shall cause damage to the appliances of Landlord's, Tenant agrees to pay cost of repairing such damage, or if damaged beyond repair, Tenant agrees to pay costs and installation fee, if any, for new appliances. Tenant shall not install any appliance of their own, without the written consent of the Landlord or his agent. The Landlord will furnish and maintain in operation in the leased premises the following appliances: stove, washer, dryer, refrigerator, and central air unit. Tenant acknowledges that should the refrigerator become inoperative for any reason, Tenant is not responsible for the cost of any loss of any food items in the refrigerator. Tenant agrees that he will contact a refrigerator service technician during normal business hours as soon as possible after problem is reported to the Landlord's office.

**DAMAGES TO PREMISES:** 16. In case of injury to the Premises by fire or the elements (not caused by the fault, omission, negligence, or other misconduct of Tenant, Tenant's family, employees, agents or guests), the Landlord will repair the damage, the rent being suspended only for such time as the Premises, in the sole opinion of Landlord, shall remain un-tenantable; but if the Premises are so damaged that the Landlord shall decide that it is not advisable to repair the Premises with the Tenant occupying same, this Lease shall terminate and the Tenant shall only be liable for rent to the date of injury.

**SECTION HEADINGS AND NUMBERS:** 17. Section Headings and Section Numbers appearing in this Lease are inserted only as a matter of convenience and

5 | Page



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

in no way define, construe or describe the scope or intent of such sections or in any way affect this Lease.

**HEIRS AND ASSIGNS:** 18. This Lease, and all covenants, conditions, rules and regulations herein contained, are binding upon and shall inure to the benefit of the successors and assigns of the Landlord and the personal representatives and those assigns of the Tenant who shall have been approved in accordance with Section 28 of this Lease.

**NOTICES:** 19. All notices from Tenant to Landlord shall be sent by certified mail, return receipt requested, and addressed to Landlord at **2700 Texas Ave SE Unit 8, Washington, DC 20020** or to such other address as Landlord may, from time to time, designate in writing. All notices from Landlord to Tenant shall be delivered personally or to the Premises, or sent by First Class or Certified Mail, addressed to Tenant at the Premises. If more than one person shall be Tenant hereunder, notice given to or by any one of them shall bind all. Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease agreement or rules, all residents are considered to have violated the Lease agreement. Notices from requests from any resident or occupant (including notices of lease termination, repair requests and entry to premises) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the unit for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with the Security Deposit and Surrender of Premises section of this lease agreement.

**SUBORDINATION OF LEASE:** 20. This Lease is subject and subordinate to any mortgage or deed of trust now or hereafter covering the property of which the Premises leased hereby is a part and is subject and subordinate, also, to any extension, renewal, modification, replacement or consolidation of any such mortgage or deed of trust. The provisions of this Section shall be self-operative and no further instrument of subordination shall be necessary. However, the Tenant, promptly upon the request of the mortgagee under any such mortgage or any trustee or beneficiary under any such deed of trust, shall execute, acknowledge and deliver such further instrument of subordination, in recordable form, as such mortgagee, trustee or beneficiary may require. Tenant hereby constitutes and appoints Landlord, as Tenant's attorney-in-fact to execute any such instrument for an on behalf of Tenant. Promptly upon the request of any person succeeding to the interest of the interest of the owner of the property of which the Premises hereby leased is a part, whether through the enforcement of any remedy provided for by law or by any such mortgage or deed of trust or as the result of any voluntary or involuntary conveyance or other transfer of such interest in lieu of foreclosure, the Tenant automatically, without the necessity of executing any further document, will become the Tenant of such successor in interest. The Tenant, promptly upon the request of any such successor in interest, shall execute, acknowledge and deliver such instrument or instruments confirming the adornment provided for by this Section, as such successor in interest may require.

**ENTIRE AGREEMENT:** 21. This Lease contains the entire Agreement between Landlord and Tenant, and can only be changed in writing, signed by both parties.

6 | Page



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

**SEVERABILITY:** 22. If any provision of this Lease or application thereof to any person or circumstance is held invalid, that invalidity shall not affect other provisions or applications of this Lease which can be given effect without the invalid provision or application; and to this end, the provisions of this Lease are declared to be severable.

**LANDLORD AGREES THAT:**

**CONDITION OF PREMISES:** 23. The Premises will be made available such that it will not contain conditions which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants. Tenant accepts the premises and fixtures as is, except for conditions materially affecting the life, healthy or safety of ordinary persons. Landlord disclaims all implied warranties.

**EXISTING DAMAGES:** 24. Upon written request of Tenant (sent in accord with Section 19 of this Lease Agreement) within fifteen (15) days of occupancy, Landlord shall furnish to Tenant a written list of all existing damages within the Premises.

**TENANT AGREES THAT:**

**UTILITIES:** 25. Tenant agrees to be responsible for payment and supply of all electric, telephone service (if any), television service (if any), and other utilities. Tenant agrees to be responsible for all related deposits, any charges, fees, or services on such utilities. With the exception of water/sewer/trash removal, all utilities are to be put in Tenant's name. Water, trash removal and sewer remains in the Landlord's name and Tenant agrees to the following in respect to water/sewer If the premises is not located within corporate city limits and does not have city water and sewer, then the Tenant is responsible for the installation and cost of maintaining a water conditioning system at the premises.

For those utilities, the cost of which is the Tenant's responsibility, the Tenant shall promptly pay all charges for their use or consumption in the Premises, together with all taxes, levies or other charges on such utilities. If tenant shall fail to promptly pay, when due, any such charges, taxes or levies, the Landlord, at its option, may pay same for Tenant's account, in which event Tenant shall immediately, as additional rent, reimburse Landlord therefore with interest at a rate of ten (10%) percent.

**PAYMENT OF RENT:** 26. Tenant shall pay the rent at the Landlord's office **2700 Texas Avenue, SE, Suite #8 Washington, DC 20020** or at such other place as may be designated by the Landlord. Except as may otherwise be required by law or by the Landlord, all rental payments made by Tenant to Landlord shall be by check or money order.

Tenant understands and agrees that payments received will be applied as follows: Any arrears from previous month(s) will be credited first. In the current month, payment will first be applied to any court costs, late fees, administrative fees or any other miscellaneous charges owed. Having those paid, the remainder of the payment will then be applied to the basic unit rent for the current month.

In the event that the rental payment and other charge(s) are not received in the office of the Landlord by the due date (the first day of the month in advance), the Landlord shall be entitled to pursue any remedy it may have under this lease. If the Landlord or Landlord's agent deems it necessary to pursue any legal action, Tenant becomes responsible for and agrees to



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

pay any costs incurred by the Landlord upon the filing/serving of such legal action.

**LATE CHARGE:** 27. Tenant will pay, as additional rent, a charge of five (5%) percent of the monthly rental as a late charge in the event that Tenant, both while occupying the Premises and after vacating same, shall fail to pay any rent and/or any charges, payments, expenses, or costs herein reserved within five (5) days beyond the date on which it became due and payable. This shall not constitute a waiver of the Landlord's right to institute proceedings for rent, damages and/or repossession of the Premises for non-payment of any installment of rent.

**ASSIGNMENT AND SUBLETTING:** 28. Tenant covenants that Tenant will use the premises for the purpose of a private dwelling only for the Tenant and not for any office or commercial use and that he will not allow anyone to share said premises or any part thereof without the Landlord's written consent. No person shall reside in the premises on a regular or semi-regular basis other than those named in Tenant's **"Lease Application"** filed with Landlord or Landlord's agent. Tenant agrees and covenants with Landlord that Tenant is forbidden to sublease the premises or assign this agreement directly or indirectly to another person or persons without the expressed written consent of the Landlord.

**NOISE AND BEHAVIOR; NO EXTERIOR SIGNS:** 29. Tenant will not make or permit any unseemly or disturbing noises or conduct by the Tenant, Tenant's family, employees, agents or guests; nor do or permit any illegal or immoral conduct or obstruct or interfere with the rights, comforts or convenience of other tenants or occupants of neighboring buildings. Tenant will not knowingly permit to enter the Premises or to remain therein any person of bad or loose character or of improper behavior. Tenant further agrees not to conduct, give or permit vocal or instrumental instruction or practice in or from the Premises, and Tenant further agrees that Tenant will not place, install or permit any sign on or visible from the exterior of the Premises except a small card with Tenant's name at each entrance to the Premises, or with Landlord's written permission, an exterior "No Trespassing" sign.

**ALTERATIONS TO PREMISES:** 30. Tenant will leave the Premises at the end of the Lease term, or any renewal or extension thereof, in as good condition as received, reasonable wear and tear excepted, and will not, without written permission of the Landlord, make any alterations, additions or improvements (including painting and papering) to the Premises.

**SURRENDER OF PREMISES:** 31. Tenant agrees to surrender the premises at the termination hereof in like condition as when taken, reasonable wear and tear expected. Tenant will surrender all keys to doors and locks and clean the premises thoroughly including the appliances and windows. Tenant agrees to strip, clean and wax all tile floors in the premises. In the event of the failure to do so, Tenant will pay the cost of the replacement keys and the cost of having such cleaning done. Any trash left by the Tenant will be hauled away at the Tenant's expense. Tenant also agrees that upon vacating tenant is responsible for having all the carpet shampooed. If this is not done, tenant understands that Landlord will have the carpets shampooed at the Tenant's expense. If Landlord deems that carpet is damaged in any way (i.e. cigarette burns, pet and/or un-removable odors, un-cleanable stains, tears/rips, etc.) then Tenant understands that Landlord will have the carpet

8 | Page

URBAN CITY MANAGEMENT

2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

replaced at the Tenant's expense. Tenant understands that the walls are to be in the same condition as when the Tenant moved in. Any and all holes must be patched and walls repainted if necessary. If Landlord determines that the premises need painting due Tenant's occupancy, the Tenant agrees to pay for the cost of the painting.

Tenant further covenants and agrees that upon the expiration of the said term, or upon the termination of the Lease for any cause, Tenant will remove all personal property not belonging to the Landlord and at once peacefully surrender and deliver all improvements herein to the Landlord, his agents and assigns; Tenant agrees that any property not removed shall be considered as abandoned and Landlord may dispose of the same without being accountable to Tenant for same. Provided that in case any rent shall be due and unpaid or if default shall be made in any of the covenants herein contained, or if said premises shall be abandoned, deserted or vacated, then it shall be lawful for the said Landlord, his agent, attorneys, successors or assigns to take legal action (e.g. re-enter, repossess, evict distain, or any action in compliance with public local laws and laws of the city of Washington DC), and charge the Tenant any incurred court fees and associated costs. In the event of re-entry by the Landlord as herein provided, Tenant shall be liable for damage to say Landlord for all loss sustained.

If the Tenant does not surrender the Premises at the end of the lease term, or any renewal or extension thereof, the Tenant will make good to the Landlord all of the damages which the Landlord suffers as a result thereof, and will further indemnify the Landlord against all claims made by succeeding Tenant against the Landlord founded upon delay by the Landlord in delivering possession of the Premises to said succeeding Tenant, so far as such delay is caused by the failure of Tenant to surrender the Premises.

**WAIVER OF BREACH:** 32. Receipt by the Landlord of rent with knowledge of the violation of any term or provision of this Lease or the rules or regulations thereof, shall not be deemed a waiver of such breach.

**LEGAL PROCEEDINGS:** 33. It is further agreed that no waiver of any breach or any covenant, condition or agreement herein contained shall operate as a waiver of the covenant, or agreement itself, or any subsequent breach thereof. If proceedings shall at any time be commenced for recovery of possession of the said premises and compromise or settlement shall be affected either before or after judgments, whereby tenant shall be permitted to retain possession of said premises, then such proceedings shall not constitute a waiver of any condition or agreement contained herein or of any subsequent breach thereof or of this agreement, provided however that Tenant agrees to pay Landlord for all attorney's fees and court costs incurred in connection with these proceedings. **In the event tenant declares bankruptcy it is expressly agreed that the damages due as consequences of the lease transaction shall not be included in any such summary bankruptcy. Tenants specifically waive the thirty- (30) day notice to vacate.**

**INDEMNIFICATION:** 34. Tenant will indemnify and save harmless the Landlord against all liability, including liability arising from death or injury to person or property, during the term of this Lease, and any renewal or extension thereof, caused by any act or omission of the Tenant, or the family, guests, agents or employees of the Tenant.

**LIABILITY OF LANDLORD:** 35. Landlord shall not be liable for any damage or

9 | Page



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

loss to person or property caused by other tenants or other persons, or caused by theft, vandalism, fire, water, smoke, explosions or other causes unless the same arises solely from the omission, fault, negligence or other misconduct of the Landlord. Failure or delay in enforcing Lease covenants of other Tenants shall not be deemed to be negligence, omission, fault or other misconduct of the Landlord.

**HOLDING OVER:** 36. The Tenant covenants that his occupancy of the said premises beyond the terms of this lease shall not be deemed as a renewal of this lease for the whole term or any part thereof, but that the acceptance by the Landlord of rent accruing after the expiration of this lease shall be considered a renewal of this lease on a bi-monthly (2 month) basis only. **The rent shall be subject to normal rate increases.** Every other term, covenant, and condition of this lease shall continue in force. Tenant may terminate this lease at the end of said term by giving Landlord written notice thereof at least thirty (30) days prior thereto. Landlord may terminate this lease at the end of said term by giving tenant written notice thereof at least thirty (30) days prior thereto. **Once lease is monthly, neither the Landlord nor the Tenant can give notice during the months of October, November, and December.** Notice must be given prior to the end of the month for the next full monthly rental period. All lease terminations must be for the last day of the month. If notice is given any other day than the last day of the month, then the thirty (30) day notice shall take effect the first day of the next full month (bi-monthly rental period). No months shall be prorated for the purpose of lease termination. i.e. If notice is given on the 1st through the 30th (or 31st) of month "A", then the notice takes effect on the 1st day of month "B" and the lease would terminate on the 30th (or 31st) day of month "C" - a full bi-monthly rental period (Months "A", "B", and "C" referring to any three consecutive months of the year). After Tenant/Landlord notice, Landlord may show the premises during Landlord's regular business hours. If Landlord needs to show after business hours or on Sundays, Landlord will give 24 hour informal notice to the Tenant provided that Tenant is accessible by telephone.

**INSURANCE:** 37. At Tenant's sole cost and expense, Tenant shall purchase renter's form homeowner's insurance coverage providing for personal liability (bodily injury and property damage) coverage with a limit of not less than $100,000.00 each occurrence and, further, to keep Tenant's personal property on and in the Premises insured for the benefit of Tenant, during the term of this Lease, and any renewal or extension thereof, against loss or damage resulting from broad form named perils on a replacement cost basis. **We urge tenant to get their own insurance for losses due to theft, fire, water damage and the like.**

**INDEMNIFICATION:** 38. Tenant shall indemnify and save Landlord harmless from all liability, damage or expense incurred by Landlord as a result of death or injury to persons, or damage to property (including the Premises) where this Lease Agreement required the Tenant to procure insurance for said liability, damage or expense, and Tenant failed to do so.

**PREJUDGMENT INTEREST:** 39. If Tenant violates this Lease Agreement and said violation results in a monetary loss to Landlord, then Landlord shall be entitled to prejudgment interest at the rate of ten percent (10%) per annum, on the amount due Landlord, from the date the Landlord mails its written



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

list of damages to Tenant.
**LEAD PAINT:** 40. Tenant acknowledges that the Landlord has advised Tenant that the Premises may contain lead based paint. Tenant understands that eating or chewing paint; plaster or household dust that contains lead can result in lead poisoning, which can cause serious harm to unborn babies and children particularly less than six (6) years of age. Areas of particular concern are chipping, flaking, loose or peeling paint, plaster or wallpaper on doors, windows, woodwork and wood trim. Tenant agrees to immediately notify Landlord, pursuant to Section 19 - Notices of this Lease Agreement, of any such condition, which Tenant observes within the Premises.
Tenant hereby acknowledges the receipt of the following lead paint information packet from the Landlord containing the following pamphlets:
1. NOTICE OF TENANT'S RIGHTS
2. PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME
3. A COPY OF INSPECTION CERTIFICATE (FORM MDE 330)
**Tenant has hereby provided the names and ages of all persons who will be occupying the property for at least 24 hours per week:**
**Name:**                          **Age:**

Tenant hereby acknowledges that he/she will immediately notify the Landlord in writing of changes (additions or deletions) to this list.
**CITY/COUNTY ORDINANCES/FINES:** 41. The Tenant is responsible for obeying all City, County, State and Federal ordinances and would be responsible for all fines incurred due to the non-compliance of same. If the fine assessed to the Landlord is due to the Tenant's noncompliance of the ordinance, the Tenant is responsible for the prompt reimbursement of the fine to the Landlord and this reimbursement shall be considered as additional rent.
**APPLICATION TO RENT:** 42. In the event that any of the material representations contained in the "Lease Application" shall be found by the Landlord to be misleading, incorrect, or untrue, the Landlord shall have the right to forthwith cancel this lease and to repossess the leased premises. The Tenant agrees to notify Landlord immediately of an change in employment or telephone number and failure to do so will be considered a breach of this lease contract.
I (We) have read all of the pages of this Lease and I (we) fully understand and agree to the above and have received a copy of this agreement.
RULES AND REGULATIONS
**PETS: 1. TENANT WILL NOT keep any pets in or about the Premises without the written permission of the Landlord.** Should the Landlord give written consent to the Tenant to have a pet, Tenant understands that Landlord strictly prohibits Rottweiler and Pit Bulls. Under no circumstance does the Landlord allow these dogs on the premises. Tenant also understand that if the Landlord deems that the carpet is damaged in any way by the pet, then the Landlord has the option to replace the carpet at the Tenant's expense and Tenant agrees to pay for it. **THERE ARE ABSOLUTELY NO PETS ALLOWED ANYWHERE ON THE PREMISES (INSIDE OR OUTSIDE) OF CEDAR CROSSING, VARSITY LANE OR ANY OTHER COLLEGE HOUSING UNITS. THIS WILL BE GROUNDS FOR BREACH OF LEASE AND IMMEDIATE EVICTION. IF YOU ARE CAUGHT WITH A PET IN VIOLATION OF YOUR LEASE, YOU WILL RECEIVE A FINE IN THE AMOUNT OF $100.00. TENANT AGREES TO PAY FINE AS ADDITIONAL RENT. IN ADDITION, IF THE PET IS NOT REMOVED PERMANENTLY FROM**



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

THE PREMISES IN THE TIME FRAME GIVEN BY THE LANDLORD (LAND LORD GIVES TENANT THREE (3) DAYS FROM THE DATE THE PET WAS FOUND TO HAVE THE PET PERMANENTLY REMOVED FROM THE PREMISES, THEN A TWENTY-FIVE ($25.00) PER DAY FINE WILL BE ASSESSED UNTIL SUCH TIME AS THE PET IS REMOVED FROM THE PREMISES. THIS FINE SHALL BE CONSIDERED AS ADDITIONAL RENT HEREUNDER. ONCE TENANT HAS BEEN FOUND WITH A PET IN VIOLATION OF THIS RULE, TENANT UNDERSTANDS AND AGREES THAT LANDLORD MAY ENTER PREMISES WITHOUT NOTICE AT LANDLORD'S DISCRETION TO VERIFY THE PET HAS BEEN REMOVED.

**APPLIANCES:** 2. TENANT WILL NOT install any washing machines, dryers, dishwashers, air conditioners, or other appliances in the premises without the written consent of the Landlord.

**FURNITURE:** 3. TENANT WILL NOT keep any water-containing furniture in the Premises.

**WALLS AND WOODWORK:** 4. TENANT WILL NOT drive nails into the woodwork or walls of the Premises. Only picture hanging tacks are permitted Absolutely NO adhesive tape or material is to be used. Tenant shall be responsible for any damage caused by this negligence. Tenant is responsible for any repairs or damages caused by negligence, carelessness, accident or abuse, including but not limited to stickers, scratches, tears, burns, stains and holes.

**WALLPAPER AND PAINT:** 5. TENANT WILL NOT apply contact paper, wallpaper, or other wall covering to the Premises, and will not change the type or color of paint within the Premises from that utilized by the Landlord without the Landlord's prior written consent.

**PORTABLE HEATERS:** 6. TENANT WILL NOT store, install or operate, in or about the Premises, portable kerosene-fired heaters. *KEROSENE HEATERS ARE ABSOLUTELY NOT ALLOWED!*

**LOCKS:** 7. TENANT WILL NOT change the locks on the doors of the Premises or install additional locks, chains or other fasteners without the prior written permission of the Landlord. Upon termination of the tenancy, all keys to the Premises must be returned to the Landlord. If Tenant shall fail to comply with this rule, **Tenant shall pay Landlord Seventy-Five Dollars ($75.00) for reimbursement of the cost of changing or re-keying the locks.**

**APPLIANCES AND UTILITIES:** 8. TENANT WILL NOT misuse or overload appliances or utilities furnished by the Landlord. TENANT WILL NOT leave water running anywhere on the premises at any time.

**ADVERTISING:** 9. TENANT WILL NOT display any advertisement, sign, or notice, inside or outside the Premises.

**WIRES AND ANTENNAS:** 10. TENANT WILL NOT install any wire, cable, satellite dish or antenna for radio, television or other appurtenances in or on the Premises without the prior written consent of Landlord.

**FIRE RISK:** 11. TENANT WILL NOT store in the Premises or any storage area any material of any kind or description that is combustible, or would increase the risk of fire. Tenant is responsible fro changing batteries in fire detector

**LAW AND INSURANCE:** 12. TENANT WILL NOT do anything that would violate any law or increase the **LEASE AGREEMENT**

**THROWING OF ARTICLES:** 13. TENANT WILL NOT throw, or allow to be thrown, anything out of the windows or doors or down the passages of the building, or from the balconies or patios. TENANT WILL NOT store anything in the hallways, stairways, or common areas of the building. No motorcycles, mopeds



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

or vehicles shall be allowed to be parked on the lawn or porches of any premises. Children shall not play in public hallways.

**WINDOW SILLS:** 14. TENANT WILL NOT place anything on the outer edges of the sills of windows.

**CLEANING OF RUGS, MOPS, ETC:** 15. TENANT WILL NOT shake or clean any tablecloths, rugs, mops or other articles in any of the public halls or from any of the windows, doors or landings of the Premises of the building in which the Premises are situated.

**CANVASSING:** 16. TENANT WILL NOT cause the distribution in common areas of the apartment building, or under apartment doors, of handbills, circulars, advertisements, papers or other matter which, if discarded, would tend to litter such area. Canvassing, soliciting and peddling in the apartment building is prohibited. The foregoing shall not prohibit Tenant from using direct mail solicitation or advertising in the regular communications media.

**STORAGE AND PLAY EQUIPMENT:** 17. TENANT WILL NOT install or erect any permanent or portable swimming or wading pools, playground equipment, storage sheds or other facilities anywhere on the property on which the Premises are located.

**CONSUMPTION OF ALCOHOL/LOUD DISTURBANCES:** 18. TENANT WILL NOT allow the consumption of alcoholic beverages outside the premises (this includes porches, roofs, yards, lawns, etc.) by anyone, whether tenants or visitors. Loud music or any other disturbance that can be heard two feet away from a closed door or ten feet away from an open window or door) will not be tolerated at any time. Landlord may exclude from the premises any guests or others who, in our judgment have been violating the law, violating this Lease agreement, or any rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify him/herself as a resident, occupant, or guest of a specific resident in the community.

**UNTAGGED/INOPERABLE VEHICLES:** 19. TENANT WILL NOT work on any vehicles on the property. Untagged or inoperable vehicles are not allowed on the property and will be towed at Tenant's expense.

**GARBAGE AND RUBBISH:** 20. TENANT WILL place Tenant's garbage and rubbish for disposal only as Landlord directs. Tenant shall keep the premises (this especially includes the immediate exterior around the premises) in a good state of preservation and cleanliness. Allowing trash and debris to accumulate is a breach of this lease. The tenant is responsible for trash & debris accumulating around the exterior of the premises, regardless of who deposited the trash and debris there. If landlord sees trash & debris at the exterior of the property, landlord will remove said trash and charge tenant. Tenant shall obey the city of Washington, DC policy on trash removal. Tenant will place all trash inside of the trashcan; the City will not pick



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

up any trash that is on the curb. Any trash left behind will be your responsibility and must be cleaned up immediately. All trash must be physically inside of the can; you are hereby advised that the trash contractor does not pick up trash that is not inside of the can. The trash receptacle that you have is more than adequate for your needs provided that it is taken to the curb weekly for City pick up. It is the tenant's responsibility to haul away any excess trash, (except if the tenant resides in a multi-unit), that does not fit in the can. If landlord observes any excess-bagged trash not in the trashcan, landlord will have the trash removed and hauled from the premises and tenant will receive a fine in the amount of $65.00 per occurrence. Tenant agrees to pay fine as additional rent.

**STORAGE AREAS:** 21. TENANT WILL only utilize such storage areas, if any, which are assigned to Tenant and shall allow Landlord to enter any storage area improperly utilized by Tenant and to remove the contents thereof and to dispose of or store the same at the expense and risk of Tenant. Tenant will provide a lock for the storage area utilized by Tenant unless Landlord has already provided (i.e. storage units directly attached to premises).

**CONDITION OF PREMISES:** 22. TENANT WILL keep balconies and patios free of all personal belongings, except that Tenant may maintain lawn furniture thereon provided the same is maintained in a neat and orderly manner. Landlord may regulate (1) the use of patios, balconies and porches. **TENANT WILL NOT use outdoor grills on any balconies or at the premises of multi-family dwellings;** (2) the conduct of furniture movers and delivery person; and (3) recreational activities in common areas. Tenant will be responsible to landlord for any damage to the above by tenant, tenant's family, agents, employees, guest or invitees.

**DISPOSAL OF GREASE, ETC:** 23. TENANT WILL dispose of grease or other drain blocking material or waste in a sealed container (i.e. glass jar) and throw away as rubbish. Tenant shall not dispose of grease or other drain blocking material or waste in the plumbing or drains of the Premises, and if Tenant causes blockage of such plumbing of drains, Tenant shall reimburse Landlord for all resulting costs of repair or replacement.

**PAINT:** 24. TENANT WILL notify Landlord, pursuant to Section 19 of this Lease, of any loose, peeling, flaking or chipping paint or wallpaper, or cracked plaster, found either on the inside or on the outside of the Premises.

**HEATING OF PREMISES:** 25. TENANT WILL keep the Premises heated to a minimum temperature of 50 degrees F. during cold weather by using the heating equipment on or at the Premises and not by using the stove or other appliances. Tenant shall reimburse Landlord for all costs incurred by Landlord in repairing or replacing frozen pipes serving the Premises if such freezing is the fault of Tenant, or Tenant's family, employees, agents or guests.

**MISCELLANEOUS:** 26. Landlord WILL keep the cellar, yard and sidewalk clean and the grass cut, the bushes trimmed and weed all flowerbeds; keep the front, rear and any sidewalks and steps clear of ice and snow, and pay the cost of exterminating insects and pests in the Premises. It is agreed that the Landlord does not supply, repair, replace or install storm doors, storm windows, screen doors, window screens or shades, mailboxes, fuses, light bulbs, smoke detectors (except if required by law), bakeries, furnace



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

filters, laundry wash trays, janitor service, garbage collection or any items or services not specifically listed as supplied in this Lease Contract.

**SMOKE DETECTOR TESTING:** 27. If Landlord has installed smoke detector(s) in the Premises, it is Tenant's responsibility to test same periodically and keep same in operating condition at all times.

**NO GROUP MEETINGS, ETC:** 28. No Tenant, family member of Tenant, agent, employee, guest or invitee of Tenant may conduct or participate in, on the grounds of any property owned by the Landlord, any yard sales, carnivals, rallies, or other group meetings or activities without the prior express written permission of the Landlord.

25. **HOLD HARMLESS AND INDEMNIFICATION.** To the fullest extent permitted by law, Tenant shall indemnify and hold harmless Landlord, and its agents from and against all claims, causes of action, damages, losses, and expenses including but not limited to attorney's fees, legal cost, and expenses arising out of, or resulting from, the premises, the Landlord's operations or the condition of the site and all claims or causes of action, damages, losses, expenses, attorneys fees, legal cost, and expenses relating to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting there from, whether arising on or near the site, of third parties or by reason of any claim or dispute of any person or entity, for damages from any cause directly or indirectly related to any breach of statutory duty, or to any willful or negligent act or failure to act by the Landlord, its representatives, employees, servants, agents, subcontractors, delegates, or suppliers and whether or not its alleged that the Landlord, in any way contributed to a portion of any damages, losses and expenses not attributed to the negligence of the Tenant.

**TELEPHONE SERVICE:** 29. Tenant understands that Tenant is required to have a telephone installed at the premises within two weeks of taking possession of the premises and to provide Landlord with telephone number to premises. Should Tenant not get a telephone at premises, fail to provide Landlord with telephone number or change number and fail to notify Landlord, Tenant understands that Tenant will then be in breach of contract and Landlord may seek possession of premises under breach of contract. Landlord is not responsible for inside wiring should Tenant require additional phone connections inside of premises.

**PARKING:** 30. TENANT WILL only park in areas designated by the Landlord for parking (i.e. driveway, parking lot/spaces, off street parking). Tenant understands that the tenant is responsible for making sure that the Tenant's family, agent, employee, guest or invitee of Tenant knows where the designated parking areas are. Tenant understands that if any vehicles are parked in non-parking areas, such as grass, sidewalks, or in front of mailboxes, or in the neighbors' yards, then the vehicle will be towed at the Tenant's expense. Landlord may regulate the time, manner and place of



2700 Texas Avenue S.E.
Suite 8
Washington, DC 20020
Phone: 202.584.0190
Fax: 202.584.0192

parking cars, trucks, motorcycles, bicycles, boats, trailer and recreational vehicles. We may have unauthorized illegally parked vehicles towed. A vehicle is unauthorized or illegally parked if it:

- Has a flat tire or other condition rendering it inoperable; or
- Is on jacks, blocks or has wheel(s) missing; or
- Has no current license or no current inspection sticker; or
- Is taking up more than one parking space; or
- Belongs to a resident or occupant who has surrendered or abandoned the unit; or
- Blocks another vehicle from exiting; or
- Is parked in a fire lane or designated "no parking" area; or
- Is parked on the grass, sidewalk, or patio; or
- Blocks garbage trucks form access to a dumpster

**IN WITNESS WHEREOF** the parties hereto have set their hands and seal the day and year first above written.

ATTEST:
BY: _____
            (LANDLORD)

BY: _____Rodecia Mason_____
            (TENANTS)



The Community Partnership
For The Prevention
of Homelessness

## Security Deposit Refund Agreement

All undersigned parties listed below hereby understand and agree that the security deposit provided for the tenant and address listed below will be issued by The Community Partnership for the Prevention of Homelessness (TCP).

All parties agree that at the termination of the lease agreement, the security deposit will be returned to TCP at the location listed below:

The Community Partnership
801 Pennsylvania Avenue SE Suite 360
Washington, DC 20003
Attention: Housing Department

All parties understand and agree that the signed lease may state that the security deposit will be refunded to the tenant after lease termination. Signature of this document relinquishes all rights and obligations of lease pertaining to the security deposit.

A security deposit will be processed only after TCP has received a copy of the signed lease agreement following the lease up at the District of Columbia Housing Authority or at TCP.

The Security Deposit amount will be:        $ _1,105_

_4309 WHEELER RD #104_
Property Address

_Thomas Bateman_
Landlord/Representative (Print)

_[signature]_
Landlord/Representative Signature              Date

_RODECIA MASON_
Tenant Name (Print)

_Mason_                                       _10-25-10_
Tenant Signature                              Date

Revised 5/10