Bradley D. Jones, No. VA68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Attorneys for Marc E. Albert,*
*Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 24-00180-ELG |
| 1416 Eastern Ave NE LLC, *et al.*,[1] | ) Chapter 11 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**TRUSTEE'S RESPONSE TO MOTION OF RODECIA MASON**

Marc E. Albert, the chapter 11 trustee ("Trustee") of the bankruptcy estates of 1416 Eastern NE LLC, *et al.* ("Debtors"), by and through his undersigned attorneys, Stinson LLP, hereby files this response ("Response") to the Motion of Rodecia Mason ("Ms. Mason") requesting an emergency hearing (the "Motion"). The Motion was entered on the docket at Dkt. Nos. 181 and 184.

**Background**

1. The Debtors filed their voluntary Chapter 11 petitions on May 29, 2024 (the "Petition Date"). The Debtors' cases are jointly administered, with the case of 1416 Eastern Ave

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184- ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

1

NE LLC, 24-00180-ELG serving as the main case. *See Order Directing Joint Administration*, [Dkt. 64].

2. The case involves ten multifamily apartment buildings in the District of Columbia that were affiliated with Ali "Sam" Razjooyan. The properties suffered significant mismanagement and have significant housing code violations affecting the safety and health of the residents.

3. Shortly into the case, on June 20, 2024, the United States Trustee filed a Motion for the Appointment of a Chapter 11 Trustee and alternative relief. [Dkt. No. 28]. The U.S. Trustee sought a Trustee due to alleged false and fraudulent testimony allegedly made by Mr. Razjooyan, the sudden withdrawal of the Debtors' counsel in the course of a contested hearing on pending sales motions, and the U.S. Trustee's claim that the Mr. Razjooyan presented forged certificates of insurance to the Office of the United States Trustee, in addition to other improprieties.

4. Following a contested hearing, the Court directed the appointment of a Chapter 11 Trustee. [Dkt. No. 61].

5. On July 24, 2024, this Court entered an order approving appointment of Marc E. Albert as Chapter 11 trustee of the Debtors' estates. [Dkt. No. 71]. Marc E. Albert serves as the duly appointed and qualified chapter 11 trustee for the Debtors' estates.

6. Each of the ten jointly administered Debtors is a single asset real estate entity owning a 100 percent fee simple interest in a corresponding multifamily apartment complex located in the District for Columbia. The Debtors rent apartments to low income tenants, many of whom receive housing subsidies through various federal and state voucher programs. Address for the Debtor properties are as follows:

a)   1416 Eastern Avenue Northeast, Washington, DC 20019 (6 Units)

b)   945 Longfellow Street Northwest, Washington, DC 20011 (13 units)

    c)    2501 Naylor Road Southeast, Washington, DC 20020 (8 units)

    d)    4301-4313 Wheeler Road Southeast, Washington, DC 20032 (42 units)

    e)    4263-67 6th Street Southeast, Washington, DC 20032 (2 units)

    f)    4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019 (4 units)

    g)    3968 Martin Luther King Junior Avenue SE, Washington, DC 20032 (4 units)

    h)    4010 9th Street Southeast, Washington, DC 20032 (12 units)

    i)    2440 S Street Southeast, Washington, DC 20020 (11 units)

    j)    4400 Hunt Place Northeast, Washington, DC 20019 (15 units)

(collectively, the "Properties").

7. There were limited rents and available funds for the Properties. The Trustee, through his property management company, was able to utilize such funds to generally maintain the existing status of the Properties until they were sold. But the Trustee never possessed sufficient cash on hand to invest into the Properties or fully rehabilitate their condition. Maintaining the condition at the Properties was only achievable for a limited time.

8. The Trustee filed budgets and obtained orders permitting the use of cash collateral for the Properties. [Dkt. Nos. 90, 101, 111, 143]. But the Properties generated very little rental income and the budgeted expenses only allowed the Trustee to pay basic expenses while the Trustee was seeking to sell the Properties to a new owner.

9. On March 5, 2025, the Trustee entered into a Purchase Agreement ("Purchase Agreement") with a proposed purchaser, Craig London (the "Purchaser"), providing for a portfolio sale of all ten Properties for a proposed purchase price of $7,020,000.00. In support of that sale, Mr. London provided a deposit of $1,200,000.00 (the "Stalking Horse Deposit"), which was held by the Trustee.

3

10. On March 21, 2025, the Trustee filed a proposed chapter 11 plan (the "Plan"), under which the Properties would be sold (the "Sale"), any liens senior to T.D. Bank's lien would be paid, a carve out would be provided to pay administrative professional fees and United States Trustees fees, and the remainder of funds paid to T.D. Bank on account of its secured claim. [Dkt. No. 132].

11. As a result of the need for an expeditious sale of the Properties, the Bankruptcy Court entered an order combining the hearing on the Disclosure Statement and Plan and expediting the applicable timelines. [Dkt. No. 140].

12. A confirmation and sale hearing was held on April 29, 2025 at 10:00 a.m. [Dkt. No. 158]. A competing bid for the purchase of the properties was provided by Michael Taylor at a total purchase price of $7,550,000.00 (the "Purchase Price") with Mr. Taylor providing a deposit of $750,000.00 (the "Purchaser Earnest Money Deposit").

13. Mr. Taylor testified about his ability, willingness to close, and fitness as a purchaser in support of his bid. The Trustee accepted Mr. Taylor's bid as the highest and best bid, entitling Mr. London to a break-up fee of $250,000.00 (the "Break-Up Fee") from the proceeds of sale when the sale to Mr. Taylor closes.

14. At the Confirmation Hearing, the Court heard testimony by Michael Taylor regarding his familiarity with District of Columbia Housing Law, the relevant building inspection agencies, and his knowledge that existing building infractions exist with respect to the Properties. [Dkt. No. 161, ¶D].

15. A Confirmation Order was entered on May 8, 2025. [Dkt. No. 161].

16. Based on the factual record providing in support of Confirmation, the Court found that Michael Taylor "provided adequate assurance of his ability to perform the obligations required

4

with respect to the tenant leases and housing assistance payment contracts should those executory contracts be assumed at Closing." [Dkt. No. 161, ¶D]. Following the Sale, the Court further provided that the new owners of the Properties would continue to be responsible to comply with federal or District of Columbia law and regulations regarding the operation of the Properties after the Closing. [Dkt. No. 161, ¶¶JJ, 21].

17. Pursuant to the Confirmation Order, the Trustee diligently pursued closing of the Sale of the Properties, which included filing an emergency motion and obtaining an order to provide for the escrow of certain funds in connection with the Sale. [Dkt. Nos. 174–77].

18. The Sale of the Properties Closed on June 24, 2025. [Dkt. No. 179].

19. The Plan became effective on June 25, 2025. [Dkt. No. 180].

20. As a result of the Closing of the Sale and the transfer of ownership of the Properties, the Trustee is no longer the owner of the Properties, and has no further ability to make, require, or dictate repairs or make any management decisions related to the Properties.

**Response**

The Bankruptcy Estate no longer owns the Properties and has no ability to make repairs or improvements. Michael Taylor through his entity, Wheeler RE LLC, is the owner of the building in which Ms. Mason resides. As a result, this matter is moot.

The Trustee does not have the ability to control PEPCO or have the ability to compel PEPCO to correct the billing address in PEPCO's records. The Trustee and his Property Manager, Noble Realty, have worked diligently with Ms. Mason over the course of this case and informed her about the sale process. To the extent Ms. Mason alleges the Trustee and/or Noble Realty engaged in any misconduct or discriminated against her in any way, the Trustee denies these allegations. The issues Ms. Mason raises focus on billing issues with PEPCO, repair and

5

maintenance issues, and questions about the bankruptcy sales process. The Trustee responds to each as follows:

PEPCO: Ms. Mason alleges that she receive electricity from PEPCO; however, she alleges there are outlets that do not work and the billing statements she receive reference Unit 104 at Wheeler and not Unit 102, which is the unit Ms. Mason resides in. In the course of managing the Properties, personnel from Noble Realty and contractors they hired to provide repairs or maintenance visited her apartment on a number of occasions, though often had difficulty getting access to her unit. In fact, Ms. Mason's response references repairs made to her unit by maintenance personnel and interactions with Suzanne Moore, David Brocklebank, and Mario Lloyde regarding her unit.

While Noble does not control PEPCO's billing system or have the ability to require PEPCO to restore service to malfunctioning wall outlets, during the course of the case, Noble worked with attorneys at LegalAid and a Tenant Services Specialist at Housing Counseling Services, Inc. to assist in correcting the PEPCO records for another tenant[2] at the Wheeler Road property. Those service providers or the individuals working with Ms. Mason at the D.C. Department of Human Services' Permanent Supportive Housing Program may also be able to assist Ms. Mason with this issue.

Ms. Mason may be advised that the contact information for the personnel Noble worked with on this issue is below:

---

[2] Ms. Mason alleges that Noble provided a new lease to another tenant at the Wheeler Road Property. That is not correct and the Trustee was not able to enter into new leases for residents of these properties due to the limitations of the Bankruptcy Code and the sales process. Noble did provide a Resident Ledger at a tenant's request, which was sufficient for PEPCO to address the billing issue for the tenant who contacted Noble.

6

| | |
|---|---|
| Sarah Reichenbach | Dara Canchester |
| Staff Attorney, Housing Unit | Tenant Services Specialist |
| Legal Aid DC | Direct Phone: 202-350-1721 |
| 1331 H Street, NW \| Suite 350 | Tenant Services Info Line: 202-900-9464 |
| Washington, DC 20005 | Housing Counseling Services, Inc. |
| P: (202) 975-2254 \| F: (202) 727-2132 | 2410 17th Street, NW, Suite 100 |
| Email: sreichenbach@legalaiddc.org | Washington, DC 20009 |
| | Email: daracanchester@housingetc.org |

Noble worked specifically with Dara Canchester to attempt to resolve the electric issues affecting Ms. Mason, including scheduling an electrician to visit Ms. Mason's apartment in September 2024. *See* Exhibit A (email exchange from David Brocklebank to Dara Canchester regarding electrician visit).

However, Ms. Mason was hostile to the electrician who was sent, demanded another electrician, used threatening language, and locked the door in the electrician's face. *Id.* She then refused to return multiple calls by Mr. Brocklebank to reschedule an electrician appointment. Ms. Mason's actions prevented Noble from addressing her issue.

<u>Repair and Maintenance</u>: Ms. Mason alleges had water leaks, mold, and drywall issues. She reports that Noble through Suzanne Moore investigated these issues and took pictures of the bathroom of her unit, but repairs were not completed to Ms. Mason's satisfaction.

Noble in April 2025 scheduled a time with Ms. Mason to perform drywall work in her unit and attempt to re-glaze her tub. However, Ms. Mason only provided limited availability to Noble staff to access her unit with a strict limitation on when work in her unit was to cease. *See* Exhibit B. This complicated efforts to address her issues.

Noble reports it engaged in the following completed or attempted repairs associated with Ms. Mason's unit:

7

- **Major Leak Repair:**
  In February 2025, a significant water line leak was identified originating from the neighboring unit and affecting Ms. Mason's apartment. The leak was repaired.

- **Stove Replacement:**
  After multiple attempts to access the unit and assess partial electricity, an inspection revealed that while the stove was functional, the oven required a new burner. To ensure full functionality, the entire stove was replaced.

- **Refrigerator inoperable:**
  After inspecting the GFI outlet needed to be replaced and the fridge was operating properly.

- **Bathroom Inspection:**
  Inspected the bathroom tub and ceiling during our most recent visit.- Repair and re-glazing was needed. (During this process no one should be home for at least (24 hours) – Ms. Mason refused service on several attempts.

Noble reported access challenges, including the need to make multiple attempts to re-enter Ms. Mason's unit to complete scheduled repairs with maintenance staff facing resistance. During some of these attempts, Ms. Mason hindered the repair team's progress and accused the repair team of theft. As a result, several repair items do remain unfinished due to access problems. During the time Noble was managing the Properties, Noble worked to request assistance through social services, trusted contacts, and coordinated outreach to assist in resolving these efforts and to allow the repair team to complete the necessary repairs safely and respectfully.

The Trustee does not dispute that each of the ten Properties associated with Mr. Razjooyan were challenging properties with condition issues, including the Wheeler Road Property. That is why the Trustee focused on selling these Properties as quickly as possible so a new owner could invest the money needed to remediate mold, repair drywall, fix water leaks, and undertake other steps necessary to conform the conditions in the property to the applicable D.C. Housing Code and federal/D.C. regulations. *See e.g.,* [Dkt. No. 134, ¶13] (seeking expedited Court approval for the Sale and Plan because significant condition and security issues are present at the Properties, that existing funds are limited, and the Trustee does not possess sufficient funds to rehabilitate the conditions).

8

<u>Notice Regarding the Sale Status and New Owner</u>. Ms. Mason alleges that she was not informed about the sale status and who the new owner would be. This is not correct. Not only was she served with copies of pleadings in this case[3] related to the sale, [Dkt. Nos. 137, 144], including hand delivery of documents related to the a motion affecting tenant units [Dkt. No. 147], but Noble, the Trustee, and attorneys and staff representing the Trustee had numerous conversation with Ms. Mason throughout this case. *See e.g.,* Exhibit C.

While these discussions have mainly focused on access and repair issues, the Trustee through his counsel have informed Ms. Mason of the sale and providing the name and contact information for Michael Taylor as the new buyer. In any case, Ms. Mason may be advised that the contact information for the purchaser, Michael Taylor (through his entity Wheeler RE LLC) and his attorney are below:

Wheeler RE LLC
c/o Michael Taylor, Manager
1811 1st Street NW, Washington, DC 20001
Email: mtaylor@amtdevelopment.com

Philip J. Collins
Protas, Spivok & Collins, LLC
4330 East-West Highway, Suite 900
Bethesda, Maryland 20814
Direct Dial: (301) 469-3604

WHEREFORE, the Trustee respectfully requests that this Court enter an order resolving the Motion filed by Ms. Mason as moot.

Dated: July 22, 2025

Respectfully submitted,

*/s/ Bradley D. Jones*
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006

---

[3] This included service copies sent to the Alexandria, Virginia P.O. Box, which Ms. Mason requested in her Motion to be used for sending documents or responses to her, in addition to the Wheeler Road Address. *Compare* [Dkt. No. 144 at 5, 10] *with* [Dkt. No. 181 at 5–6].

Tel. (202) 785-9100  
Fax (202) 572-9943  
brad.jones@stinson.com  
joshua.cox@stinson.com  
ruiqiao.wen@stinson.com  
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2025, I served a copy of the foregoing via CM/ECF upon all parties receiving notice thereby. A copy was also served by first-class mail on the following:

Ms. Rodecia Mason  
Post Office Box 151614  
Alexandria, VA 22315  
*Creditor*

Ms. Rodecia Mason  
4309 Wheeler Road SE  
Apt. No. 102  
Washington D.C. 20032  
*Creditor*

Michael D. Nord  
Gebhardt & Smith LLP  
One South Street  
Suite 2200  
Baltimore, Maryland 21202  
*Counsel for T.D. Bank, N.A.*

Phillip Collins  
Protas, Spivok & Collins, LLC  
4330 East-West Highway, Suite 900  
Bethesda, Maryland 20814  
*Counsel for the Purchaser*

Stephon D. Woods  
Assistant Attorney General  
Commercial Division, Land Acquisition & Bankruptcy Section  
Office of the Attorney General for the District of Columbia  
400 6th St. NW  
Washington, D.C. 20001  
*Counsel for the District of Columbia*

Kristen S. Eustis  
Trial Attorney  
Department of Justice  
Office of the United States Trustee  
1725 Duke Street, Suite 650  
Alexandria, VA 22314  
*Counsel for the Acting U.S. Trustee for Region 4*

/s/ Bradley D. Jones  
Bradley D. Jones

CORE/3516991.0007/230015648.1