Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert,
Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>1416 Eastern Ave NE LLC, *et al.*,[1]<br><br>                Debtors. | Case No. 24-00180-ELG<br>Chapter 11<br>Jointly Administered |

**CONSENT MOTION TO APPROVE COMPROMISE OF CONTROVERSY PURSUANT TO FED. R. BANKR. P. 9019 BETWEEN THE TRUSTEE, THE DISTRICT OF COLUMBIA GOVERNMENT, T.D. BANK, N.A., AND <u>WASHINGTON GAS LIGHT COMPANY</u>**

TO THE HONORABLE ELIZABETH L. GUNN, BANKRUPTCY JUDGE:

COMES NOW, Marc E. Albert (the "Trustee"), the Chapter 11 Trustee for the bankruptcy estates of 1416 Eastern Ave NE LLC, et al. (the "Debtors"), by counsel, moves pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for entry of an order approving a compromise between the Trustee, the District of Columbia Office of the Attorney General (the "District"), T.D.

---

[1] The Debtors in these jointly administered chapter 11 cases are 1416 Eastern Ave NE LLC (Case No. 24-00180-ELG), 945 Longfellow St NW LLC (Case No. 24-00181-ELG), 2501 Naylor Rd SE LLC (Case No. 24-00182-ELG), 4303-13 Wheeler Rd SE LLC (Case No. 24-00183-ELG), 4263 6th St SE Apartments LLC (Case No. 24-00184-ELG), 4935 NHB Ave NE LLC (Case No. 24-00185-ELG), 3968 MLK LLC (Case No. 24-00186-ELG), 4010 9th St SE LLC (Case No. 24-00187-ELG), 2440 S St SE LLC (Case No. 24-00188-ELG), and 4400 Hunt Pl NE LLC (Case No. 24-00189-ELG).

1

Bank, N.A. ("T.D. Bank"), and Washington Gas Light Company ("Washington Gas"). In support hereof, the Trustee states as follows:

## INTRODUCTION

This consent motion seeks to approve a multi-party settlement agreement between the Trustee; the District; T.D. Bank; and Washington Gas (together, the "Parties") regarding the $1,200,000.00 (the "Escrow") held by the Trustee in escrow pursuant to the emergency order entered by the Court on June 13, 2025. The proposed settlement agreement provides for the final distribution of the Escrow among the Parties in full and complete settlement of their respective claims thereto.

## BACKGROUND

1.  The Debtors filed their voluntary Chapter 11 petitions on May 29, 2024 (the "Petition Date"). The Debtors' cases are jointly administrated, with the case of 1416 Eastern Ave NE LLC, 24-00180-ELG serving as the main case. *See Order Directing Joint Administration*, [Dkt. No. 64].

2.  Each of the ten jointly administered Debtors is a single asset real estate entity that, at the time of the filing of the Bankruptcy Cases, owned a 100 percent fee simple interest in a corresponding multifamily apartment complex located in the District of Columbia. The Debtors rented apartments to low-income tenants, many of whom receive housing subsidies through various federal and state voucher programs. Addresses for the Debtors' Properties are as follows:

    a) 1416 Eastern Avenue Northeast, Washington, DC 20019 (6 Units);
    b) 945 Longfellow Street Northwest, Washington, DC 20011 (13 units);
    c) 2501 Naylor Road Southeast, Washington, DC 20020 (8 units);
    d) 4301-4313 Wheeler Road Southeast, Washington, DC 20032 (42 units);
    e) 4263-67 6th Street Southeast, Washington, DC 20032 (2 units);
    f) 4935 Nannie Helen Burroughs Avenue Northeast, Washington, DC 20019 (4 units);
    g) 3968 Martin Luther King Junior Avenue SE, Washington, DC 20032 (4 units);

      h)        4010 9th Street Southeast, Washington, DC 20032 (12 units);

      i)        2440 S Street Southeast, Washington, DC 20020 (11 units);

      j)        4400 Hunt Place Northeast, Washington, DC 20019 (15 units);

(collectively, the "Properties").

3. Each of the ten Properties and the rents derived therefrom, were subject to certain Deeds of Trust for the benefit of T.D. Bank.

4. On March 21, 2025, the Trustee filed a proposed chapter 11 plan (the "Plan"), under which the Properties would be sold through a combined portfolio sale (the "Sale"), any liens senior to T.D. Bank's liens would be paid, and a carve out would be provided by T.D. Bank to pay administrative professional fees and United States Trustees fees, with the remaining estate funds paid to T.D. Bank on account of its secured claims. [Dkt. No. 132].

5. Following the filing of the Trustee's Plan, a confirmation and sale hearing was held on April 29, 2025 at 10:00 a.m. [Dkt. No. 158]. A competing bid for the purchase of the Properties was provided by Michael Taylor at a total purchase price of $7,550,000.00 (the "Purchase Price") with Mr. Taylor providing a deposit of $750,000.00 (the "Purchaser Earnest Money Deposit"). Mr. Taylor testified about his ability, willingness to close, and fitness as a purchaser in support of his bid. The Trustee and the Court accepted Mr. Taylor's bid as the highest and best bid for the Properties, entitling the Trustee's previous stalking horse bidder to a break-up fee of $250,000.00 (the "Break-Up Fee") from the proceeds of sale when the sale to Mr. Taylor closed.

6. On May 8, 2025, the Bankruptcy Court entered an order confirming the Trustee's Plan, including approval of the sale of the Properties to Mr. Taylor upon the terms presented at the April 29, 2025 hearing (the "Confirmation Order"). [Dkt. No. 161]. The Confirmation Order further provided that the Trustee was "authorized and directed to sell and transfer the Properties free and clear of all Liens, Claims and Encumbrances, with such Liens, Claims and Encumbrances

3

transferring to and attaching to the proceeds of such sale in the same priority as they attached to the Properties." [Dkt. No. 161, ¶14].

7. Following entry of the Confirmation Order, the Trustee, in consultation with Mr. Taylor, agreed to close the sale of the Properties with a targeted closing date of June 13, 2025. Mr. Taylor further selected Pinnacle Title & Escrow, Inc. ("Pinnacle") as its Title Company for the sale closings.

8. In the course of moving towards closing sale of the Properties, a dispute (the "Dispute") arose in regards to the treatment of various payment obligations for the Properties including the priority of various fines and penalties owing to the District associated with Notices of Infraction issued by the Department of Buildings (or its predecessor, the Department of Consumer and Regulatory Affairs), and other unpaid fines and penalties issued by the Department of Health. While working to resolve the dispute over what payments should be issued by Pinnacle to the District upon closing of the Sale, the District provided the Trustee and T.D. Bank with a spreadsheet summarizing the recorded lien, Department of Buildings Case, and Notice of Infraction numbers related to the Properties and provided that the purported liability owing towards those various items totaled $1,397,537.22. In that spreadsheet, the Department of Buildings identified eight DOB liens, providing the Lien Filed Date. For thirty-two other DOB case numbers, the District's spreadsheet identified the fine or Special Assessment as "UNSECURED," with no accompanying recorded lien.

9. In an effort to resolve this dispute to the extent that the Sales could proceed to closing, the Trustee, on June 13, 2025, filed his *Trustee's Emergency Motion to Compel Pinnacle Title & Escrow, Inc. to Close Property Sale and to Authorize the Trustee to Hold Funds in Escrow* (the "Escrow Motion") [Dkt. No. 174]. Prior to holding a hearing on the Escrow Motion, however,

4

the Trustee reached agreement with the District regarding the relief sought in the Escrow Motion and terms for an agreed order.  As a result, on June 13, 2025, the Bankruptcy Court entered its *Order Granting Trustee's Emergency Motion to Compel Pinnacle Title & Escrow, Inc. to Close Property Sale and to Authorize the Trustee to Hold Funds in Escrow* (the "Escrow Order") [Dkt. No. 177].

10. The Escrow Order provided that the Sale to Mr. Taylor would be allowed to proceed to closing, with the Trustee "authorized and directed to escrow funds in the amount of $1,200,000.00 to reserve for sums potentially owed to the D.C. Government and Washington Gas, and subject to a priority dispute with the senior secured lender, T.D. Bank," with the Trustee "required to hold the escrowed funds in his fiduciary account in escrow pending further order of the Court or until agreement among the parties claiming an interest in the funds is reached." *Id.*

11. Following entry of the Escrow Order, on June 24, 2025, Pinnacle completed closing of Sale of the Properties to Mr. Taylor, who took title to the Properties through various single purpose entity assignees. *See Report of Sale*, [Dkt. No. 179].  As a result of completion of the Sale, on June 24, 2025, the Trustee received a wire from Pinnacle of remaining proceeds of Sale not otherwise paid or held by Pinnacle for the closing, including the agreed $1,200,000.00 in funds to be held by the trustee in escrow pursuant to the Escrow Order. The Trustee continues to hold these funds in a fiduciary account established for the Bankruptcy Cases as provided in the Escrow Order.

12. The Trustee has engaged in discussions and negotiations with the Parties to resolve the Dispute regarding the final distribution of the Escrow and has received approval, evidenced through e-mail acknowledgment from counsel for each of the parties involved, to the agreement

5

regarding the distribution of the Escrow pursuant to the terms outlined in the present Motion and more specifically described below.

## THE AGREEMENT

13.     The Parties entered into arms-length negotiations and reached an agreement (the "Agreement"), subject to Court approval, regarding the distribution of the Escrow, in the total amount of $1,200,000.00. Pursuant to the Agreement, the Parties have agreed to the following allocation of the Escrow:

a) the District shall receive $137,741.00 in full and final settlement of its claim against the Escrow;

b) Washington Gas shall receive $18,195.47 in full and final settlement of its claim against the Escrow; and

c) T.D. Bank shall receive $1,014,263.53 in full and final settlement of its claim against the Escrow.

14.     T.D. Bank further agrees, subject to Court approval of the Agreement, to increase the professional fee carve-out[2] by an additional $25,000.00 to compensate the Trustee and his counsel Stinson LLP for the additional work performed in connection with the negotiation and documentation of this Agreement. The Parties agree that the Trustee and his counsel shall be paid $25,000.00 from the Escrow once the Agreement is approved by this Court.

---

[2] The Trustee and T.D. Bank's previous agreement presented in the Trustee's Plan set the total cap for the Trustee's commission and Trustee's counsel's legal fees at $647,760.44 ($372,760.44 based on the original transfer and tax savings estimate, plus $275,000 for 11 months of operating the ten properties at $2,500/month/property). *See Plan*, Sec. VI.D [Dkt. No. 132]

6

15.     In addition, the Parties also agree that the United States Trustee fees arising from the distribution of the Escrow, estimated in the amount of $4,800.00[3], shall also be paid by the Trustee.

16.     As a material term of the Agreement, the Parties have agreed that the distribution of the Escrow funds as set forth herein constitutes a full and final settlement and satisfaction of any and all claims, rights, interests, and causes of action that any Party has or may have against the Escrow or any proceeds derived from the sale of the Properties.  Upon the distribution of the Escrow funds in accordance with the terms of the Agreement, each of the Parties — T.D. Bank, the District, Washington Gas, and the Trustee — shall be deemed to have irrevocably and unconditionally released, acquitted, and forever discharged each other, and each of their respective current and former officers, directors, employees, agents, representatives, attorneys, successors, and assigns, from any and all claims, demands, liabilities, obligations, actions, causes of action, suits, rights, or damages of any nature whatsoever, whether known or unknown, contingent or fixed, liquidated or unliquidated, matured or unmatured, that arise from, relate to, or are in any way connected with the Escrow, the proceeds of the sale of the Properties, or the Dispute resolved by the Agreement.

17.     For the avoidance of doubt, the Parties expressly acknowledge and agree that, upon consummation of the distribution of the Escrow contemplated by the Agreement, (a) no Party shall have any further claim or entitlement to any portion of the Escrow or to any proceeds generated from the sale of the Properties, (b) no additional amounts shall be due or payable to any Party on

---

[3] The estimated United States Trustee fees are calculated based on 0.4% of the amounts disbursed in each case.  The amount disbursed in each of the ten cases is below $999,999 although the total disbursement amount across the ten cases is $1,200,000.  Therefore, the estimated total United States Trustee fees are $4,800 = 0.4%*$1,200,000.

account of the Escrow or the sale of the Properties, and (c) such distribution and releases shall be final, binding, and conclusive upon all Parties and their respective successors and assigns.

## LEGAL STANDARD AND BENEFIT TO THE BANKRUPTCY ESTATES

18. The Agreement is contingent upon Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 and all other applicable bankruptcy rules and provisions.

19. The United States District Court for the District of Columbia has explained the applicable legal standard for determining when a bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019(a) as follows:

> "A bankruptcy court's decision to approve a settlement must be an informed one based upon an objective evaluation of developed facts. Indeed, a bankruptcy judge cannot accept the proponent's word that the settlement is reasonable, nor may the judge merely 'rubber stamp' a proposal." *Advantage Healthplan*, 391 B.R. at 554 (citations and quotations omitted). Rather, a bankruptcy judge must "determine that a proposed compromise . . . is fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). In determining whether a settlement is "fair and equitable," "the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection, (3) the complexity of the litigation, including the expense, inconvenience, and delay attendant to the litigation; and (4) the interest of creditors." *Advantage Healthplan*, 391 B.R. at 554 (citing *TMT Trailer Ferry*, 390 U.S. at 424). "The experience and knowledge of the bankruptcy court judge is of significance in assessing the propriety of the settlement." *Id.* at 553.

*In re Andrew Chreky, Inc.*, 448 B.R. 596, 609 (D.D.C. 2011). These same factors have been applied consistently by other bankruptcy courts. *See e.g., In re Bowman*, 181 B.R. 836 (Bankr. D. Md. 1995); *In re Media Cent., Inc.*, 190 B.R. 316 (E.D. Tenn. 1994); *Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994); *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37 (Bankr. N. D. Ohio 1990); *In re Anolik*, 107 B.R. 426 (D. Mass. 1989); *In re Del Grosso*, 106 B.R. 165 (Bankr. N.D. Ill. 1989); *In re Kaiser Steel Corp.*, 105 B.R. 971 (D. Colo. 1989); *In re Erickson*, 82 B.R. 97 (D. Minn. 1987); *In re Hallet*, 33 B.R. 564 (Bankr. D. Me. 1983).

20. Those Circuit Courts of Appeal that have considered approval of a settlement over an objection have used a similar approach. The Court need not conclusively determine the issues subject to the settlement, nor find that the compromise constitutes the best result obtainable. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied* 464 U.S. 822 (1983). Instead, the court need only canvass the issues to determine that the settlement does not fall "below the lowest point in the range of reasonableness." *Id.*, at 608; *see also Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 604 (5th Cir. 1980) (applying this approach under the Bankruptcy Act). "[A]pproval of a proposed settlement does not depend on establishing as a matter of legal certainty that the subject claim . . . is or is not worthless or valuable." *Id.*, at 604.

21. This Court should reach an "informed and independent" judgment as to whether the compromise is in the best interests of the estate. *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) *cert. denied* 479 U.S. 854 (1986) ("[T]he law favors compromise and not litigation for its own sake").

22. An objection to a settlement should not be fatal to the settlement approval process if "it is found to be in the best interests of the estate as a whole." *St. Paul Fire and Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1010 (4th Cir. 1985) (citing *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1138 (8th Cir. 1985) *cert. denied* 105 S.Ct. 1169 (1985)).

23. The Trustee believes that the Agreement represents a fair compromise in settlement of the Dispute, considering the following factors (consistent with the analysis set forth by the U.S. District Court for the District of Columbia):

    a. The Agreement is an arms-length agreement negotiated by the Parties, with counsel; and

  b. The Agreement avoids the risk, time, cost, and expense of litigating the Dispute regarding the distribution of the Escrow and allows the case to be brought to a close and funds to be distributed in an agreed manner between the Parties.

24. The Trustee believes that the Agreement is in the best interest of the creditors and the bankruptcy estate and requests that the *Consent Motion to Approve Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019 Between the Trustee, The District of Columbia Government, T.D. Bank, N.A. and Washington Gas Light Company* be granted.

25. The Trustee has received approval to the Agreement presented in this Motion from T.D. Bank, Washington Gas, and the District through written acknowledgement delivered from counsel for each of the parties via e-mail to counsel for the Trustee.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

 a. approving the compromise of controversy under Fed. R. Bankr. P. 9019 upon the terms established in the Agreement; and

 b. granting such other and further relief as this Court may deem just, equitable and proper.

Dated: October 17, 2025          Respectfully submitted,

*/s/ Bradley D. Jones*
Marc E. Albert, No. 345181
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: 202-785-9100
Fax: 202-572-9943
marc.albert@stinson.com
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert, Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

      I certify that on October 17, 2025, I caused a true and correct copy of the foregoing Consent Motion to Approve Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019 Between the Trustee, The District of Columbia Government, T.D. Bank, N.A. and Washington Gas Light Company to be served via the Court's CM/ECF system upon all parties receiving notice thereby, and a copy was sent by first class mail, postage prepaid, upon the following:

Kristen S. Eustis  
Office of the United States Trustee  
1725 Duke Street  
Ste 650  
Alexandria, VA 22314  

Emil Hirsch  
Carlton Fields, P.A.  
1625 Eye Street NW  
Suite 800  
Washington, DC 20006  

Michael D. Nord  
Elizabeth Drayden Peters  
Gebhardt & Smith LLP  
One South Street  
Suite 2200  
Baltimore, MD 21202  

Nancy L. Alper  
Laura C. Beckerman  
Stephon Woods  
Office of Attorney General For D.C.  
400 6th Street, NW  
9th Floor  
Washington, DC 20001  

John Ernest Tsikerdanos  
Nagle & Zaller, P.C.  
8840 Stanford Boulevard  
Suite 1800  
Columbia, MD 21045  

                                        */s/ Bradley D. Jones*  
                                        Bradley D. jones